<table>
<tr><td>1</td><td>

XAVIER BECERRA<br>
Attorney General of California

</td><td>

DELFINO, MADDEN, O'MALLEY, COYLE &<br>
KOEWLER LLP

</td></tr>
<tr><td>2</td><td>

MICHAEL P. CAYABAN<br>
Supervising Deputy Attorney General

</td><td>

MONICA HANS FOLSOM, SBN 227379<br>
KRISTIN IVANCO, SBN 294993

</td></tr>
</table>

1    XAVIER BECERRA
     Attorney General of California
2    MICHAEL P. CAYABAN
     Supervising Deputy Attorney General
3    PHILLIP M. HOOS, SBN 288019
     MICHAEL S. DORSI, SBN 281865
4    M. ELAINE MECKENSTOCK, SBN 268861
     Deputy Attorneys General
5      1515 Clay Street, 20th Floor
       Oakland, CA  94612-1492
6      Telephone:  (510) 879-0299
       Fax:  (510) 622-2270
7      E-mail:  Elaine.Meckenstock@doj.ca.gov
     *Attorneys for State Defendants*[1]
8

DELFINO, MADDEN, O'MALLEY, COYLE &
KOEWLER LLP
MONICA HANS FOLSOM, SBN 227379
KRISTIN IVANCO, SBN 294993
  500 Capitol Mall, Suite 1550
  Sacramento, CA  95814
  Telephone:  (916) 661-5700
  Fax:  (916) 661-5701
  E-mail:  mfolsom@delfinomadden.com
           kivanco@delfinomadden.com
*Attorneys for WCI, Inc. Defendants*[2]

9                    IN THE UNITED STATES DISTRICT COURT

10              FOR THE EASTERN DISTRICT OF CALIFORNIA

11   THE UNITED STATES OF AMERICA,              2:19-cv-02142-WBS-EFB

12                               Plaintiff,     **DEFENDANTS' NOTICE OF MOTION
                                                AND MOTION TO TAKE PLAINTIFF'S**
13        v.                                    **MOTION FOR SUMMARY JUDGMENT
                                                OFF CALENDAR OR, IN THE**
14   THE STATE OF CALIFORNIA; GAVIN C.          **ALTERNATIVE, TO CONTINUE
     NEWSOM, in his official capacity as        PLAINTIFF'S MOTION**
15   Governor of the State of California; THE
     CALIFORNIA AIR RESOURCES BOARD;
16   MARY D. NICHOLS, in her official capacity  Date:       TBD
     as Chair of the California Air Resources Board  Time:       TBD
17   and as Vice Chair and a board member of the  Courtroom:   5
     Western Climate Initiative, Inc.; WESTERN  Judge:      Hon. William B. Shubb
18   CLIMATE INITIATIVE, INC.; JARED            Trial Date:
     BLUMENFELD, in his official capacity as    Action Filed:  October 23, 2019
19   Secretary for Environmental Protection and as
     a board member of the Western Climate
20   Initiative, Inc.; KIP LIPPER, in his official
     capacity as a board member of the Western
21   Climate Initiative, Inc., and RICHARD
     BLOOM, in his official capacity as a board
22   memberof the Western Climate Initiative, Inc.,

                                 Defendants.
23

24   _____

25        [1] The State Defendants are State of California; Gavin C. Newsom, in his official capacity
     as Governor of the State of California; the California Air Resources Board; Mary D. Nichols, in
     her official capacity as Chair of the California Air Resources Board; and Jared Blumenfeld, in his
26   official capacity as Secretary for Environmental Protection.
          [2] The WCI Defendants are the Western Climate Initiative, Inc. ("WCI, Inc."), Mary D.
27   Nichols, in her official capacity as Vice Chair and a board member of WCI, Inc., and Jared
     Blumenfeld, Kip Lipper, and Richard Bloom, in their official capacities as board members of
28   WCI, Inc.

                                          1

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that, on the date and time established by the Hon. William B.

3    Shubb in his ruling on Defendants' Ex Parte Application to Shorten Time on Scheduling Motion

4    and Extend Time to Respond to Motion for Summary Judgment, in Courtroom 5 of the Robert T.

5    Matsui Courthouse at 501 I Street, Sacramento CA, Defendants will and hereby do respectfully

6    move that this Court grant Defendants' Motion to Take Plaintiff's Motion for Summary Judgment

7    Off Calendar or, in the Alternative, to Continue Plaintiff's Motion ("Scheduling Motion").

8    Defendants' Scheduling Motion is brought on the grounds that Plaintiff's Motion for

9    Summary Judgment is premature because: (1) Defendants intend to file a motion to dismiss

10    multiple Defendants from this case on or before January 6, 2020, and that motion should be heard

11    prior to briefing the merits of Plaintiff's claims; and (2) Defendants need substantially more time

12    to prepare and present a thorough defense to Plaintiff's complex and novel constitutional claims.

13    Plaintiff will not be prejudiced if Defendants' Scheduling Motion is granted.

14    This Scheduling Motion is based on this Notice of Motion and Motion, the accompanying

15    Memorandum of Points and Authorities, Defendants' Request for Judicial Notice, and the

16    Declarations of M. Elaine Meckenstock and Monica Hans Folsom, the pleadings and papers on

17    file herein, and such other matters as may be presented to the Court at the time of the hearing.

18

19

20

21

22

23

24

25

26

27

28

1  Dated:  December 13, 2019                    Respectfully submitted,

2                                               XAVIER BECERRA
                                                Attorney General of California
3                                               MICHAEL P. CAYABAN
                                                Supervising Deputy Attorney General
4

5                                               /s/ M. Elaine Meckenstock
                                                M. ELAINE MECKENSTOCK
6                                               Deputy Attorney General
                                                Attorneys for State Defendants
7

8

9                                               DELFINO, MADDEN, O'MALLEY, COYLE &
10                                              KOEWLER LLP

11                                              /s/ Monica Hans Folsom (as authorized on
                                                December 13, 2019)
12                                              MONICA HANS FOLSOM
                                                Attorneys for WCI, Inc. Defendants
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<table>
<tr><td>

1
2
3
4
5
6
7
8
9
10

</td><td>

XAVIER BECERRA
Attorney General of California
MICHAEL P. CAYABAN
Supervising Deputy Attorney General
PHILLIP M. HOOS, SBN 288019
MICHAEL S. DORSI, SBN 281865
M. ELAINE MECKENSTOCK, SBN 268861
Deputy Attorneys General
 1515 Clay Street, 20th Floor
 Oakland, CA  94612-1492
 Telephone:  (510) 879-0299
 Fax:  (510) 622-2270
 E-mail:  Elaine.Meckenstock@doj.ca.gov
*Attorneys for State Defendants*[1]

</td><td>

DELFINO, MADDEN, O'MALLEY, COYLE &
KOEWLER LLP
MONICA HANS FOLSOM, SBN 227379
KRISTIN IVANCO, SBN. 294993
 500 Capitol Mall, Suite 1550
 Sacramento, CA  95814
 Telephone:  (916) 661-5700
 Fax:  (916) 661-5701
 E-mail:  mfolsom@delfinomadden.com
  kivanco@delfinomadden.com
*Attorneys for WCI, Inc. Defendants*[2]

</td></tr>
</table>

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>                          Plaintiff,<br><br>      v.<br><br>THE STATE OF CALIFORNIA; GAVIN C. NEWSOM, in his official capacity as Governor of the State of California; THE CALIFORNIA AIR RESOURCES BOARD; MARY D. NICHOLS, in her official capacity as Chair of the California Air Resources Board and as Vice Chair and a board member of the Western Climate Initiative, Inc.; WESTERN CLIMATE INITIATIVE, INC.; JARED BLUMENFELD, in his official capacity as Secretary for Environmental Protection and as a board member of the Western Climate Initiative, Inc.; KIP LIPPER, in his official capacity as a board member of the Western Climate Initiative, Inc., and RICHARD BLOOM, in his official capacity as a board member of the Western Climate Initiative, Inc.,<br><br>                          Defendants. | 2:19-cv-02142-WBS-EFB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO TAKE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OFF CALENDAR OR, IN THE ALTERNATIVE, TO CONTINUE PLAINTIFF'S MOTION**<br><br>Date:          TBD<br>Time:          TBD<br>Courtroom:  5<br>Judge:         Honorable William B. Shubb<br>Trial Date:   Not Set<br>Action Filed:  10/23/2019 |

---

[1] The State Defendants are State of California; Gavin C. Newsom, in his official capacity as Governor of the State of California; the California Air Resources Board; Mary D. Nichols, in her official capacity as Chair of the California Air Resources Board; and Jared Blumenfeld, in his official capacity as Secretary for Environmental Protection.
[2] The WCI, Inc. Defendants are the Western Climate Initiative, Inc. ("WCI, Inc."), Mary D. Nichols, in her official capacity as Vice Chair and a board member of WCI, Inc., and Jared Blumenfeld, Kip Lipper, and Richard Bloom, in their official capacities as board members of WCI, Inc.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 3

    A.    How Cap-and-Trade Programs, Including California's, Work ............................. 3

    B.    California's Cap-and-Trade Program's Linkage to Quebec's Program ................ 4

    C.    Western Climate Initiative, Inc. .................................................................. 5

    D.    The Brief Procedural History of This Case ................................................... 5

    E.    The Parties' Communications Regarding Scheduling ..................................... 6

LEGAL STANDARD .......................................................................................... 8

ARGUMENT ...................................................................................................... 8

I.    Defendants' Request Is Made in Good Faith, and Plaintiff Will Not Be Prejudiced by the Requested Delay ....................................................................... 8

II.    Defendants Require Substantial Additional Time to Adequately Develop Their Responses to Plaintiff's Novel Claims ................................................................... 10

III.    This Court Should Decide Whether Certain Defendants Should Be Dismissed Before Defendants Brief the Merits of the Case ........................................................ 13

    A.    There Are Significant Questions as to Whether the WCI, Inc. Defendants Are Proper Defendants .......................................................................... 13

    B.    The Court Should Decide Whether to Dismiss the WCI, Inc. Defendants Before Those Defendants Are Subject to Further Burdens of Litigating This Case ................................................................................................. 15

CONCLUSION ................................................................................................... 16

i

MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO TAKE PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT OFF CALENDAR OR TO CONTINUE IT (2:19-cv-02142-WBS-EFB)

**TABLE OF AUTHORITIES**

**Page**

Cases

*Ahanchian v. Xenon Pictures, Inc.*
624 F.3d 1253 (9th Cir. 2010)..................................................................8

*Arcadia Gardens Mgmt. Corp. v. Great Am. Ins. Co. of New York*
No. 2:13-cv-08635, 2014 WL 457949 (C.D. Cal. Feb. 4, 2014) ............16

*Autotek Inc. v. Cty. of Sacramento*
No. 216-cv-01093, 2017 WL 3149923 (E.D. Cal. July 25, 2017)...........14

*Ball v. Union Carbide Corp.*
No. 07-cv-2392, 2008 WL 11508641 (S.D. Cal. Mar. 13, 2008) ...........16

*California Chamber of Commerce v. State Air Resources Board*
10 Cal. App. 5th 604 (2017) ...................................................................12

*Clark v. Goodwill Indus. of Hawaii, Inc.*
No. CV 09-00184 DAE-LEK, 2009 WL 10702877, at *1 (D. Haw. July 28,
2009). .......................................................................................................10

*Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH*
No. C 08-4909 SI, 2009 WL 1313193 (N.D. Cal. May 12, 2009)...........16

*Ingemi v. Pelino & Lentz*
866 F. Supp. 156 (D.N.J. 1994) ..............................................................15

*Lee v. Katz*
276 F.3d 550 (9th Cir. 2002)....................................................................15

*Mourning v. Gore*
No. 318-cv-02245-WQH-RBM, 2019 WL 776855, at *2 (S.D. Cal. Feb. 21,
2019), *report and recommendation adopted,* 2019 WL 1858501 (S.D. Cal.
Apr. 25, 2019) ............................................................................................9

*Moyle v. Liberty Mut. Ret. Benefit Plan*
No. 10-cv-2179, 2016 WL 7242021 (S.D. Cal. Dec. 15, 2016) ..............15

*Ochoa v. Serv. Employees Int'l Union Local 775*
No. 2:18-CV-0297-TOR, 2019 WL 1601361 (E.D. Wash. Apr. 15, 2019)............15

*Rodgers v. Watt*
722 F.2d 456 (9th Cir. 1983).................................................................8, 9

*Schuman v. Microchip Tech. Inc.*
302 F. Supp. 3d 1101 (N.D. Cal. 2018) ..................................................15

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

*Simon v. E. Kentucky Welfare Rights Org.*
    426 U.S. 26 (1976) ................................................................................14

4

5

*U. S. Steel Corp. v. Multistate Tax Comm'n*
    434 U.S. 452 (1978) ...............................................................................11

6

*Virginia v. Tennessee*
    148 U.S. 503, 519 (1893) ......................................................................11

7

8

*Waters v. Experian Info. Sols., Inc.*
    No. 12CV308 AJB RBB, 2012 WL 1965333 (S.D. Cal. May 31, 2012) ........... 10, 16

9

REGULATIONS

10

California Code of Regulations, Title 17
    §§ 95801 to 96022 ..................................................................................3

11

    § 95802(a) ............................................................................................3, 4

12

    § 95821 ....................................................................................................4
    § 95841 ....................................................................................................3

13

    § 95850(b) ...............................................................................................4

14

    § 95851(b) ...............................................................................................3
    § 95854 ....................................................................................................4

15

    § 95856(a) ...............................................................................................4
    § 95910 ....................................................................................................4

16

    § 95911 ....................................................................................................4

17

    § 95940 ................................................................................................4, 5
    §§ 95940-95945 ......................................................................................4

18

    § 95943 ..................................................................................................14
    § 95943(a) ............................................................................................5, 9

19

COURT RULES

20

Federal Rules of Civil Procedure

21

    6(b)(1)(a) .................................................................................................8

22

    56 Advisory Committee's Notes (2010 Amendments Subdivision (b)) ....................9

23

24

25

26

27

iii

28

**INTRODUCTION**

In this case, the United States (Plaintiff) challenges the California Air Resources Board's decision to link its cap-and-trade program to a similar program adopted independently by the Canadian province of Quebec. The linkage between the programs does nothing more than create additional flexibility in trading allowances—providing regulated entities with increased cost-reduction opportunities—and allow for coordinated allowance auctions. Plaintiff nonetheless alleges that the linkage between the two programs is unconstitutional. And, now, before any defendant has filed a responsive pleading, Plaintiff has moved for summary judgment on two of its four causes of action—claims that the linkage constitutes a prohibited treaty or a compact within the meaning of the Article I Treaty Clause or the Compact Clause, respectively, of the Constitution of the United States.

Plaintiff's Motion for Summary Judgment is premature. Good cause exists to either 1) take Plaintiff's motion off calendar until this Court decides the motion(s) to dismiss that will be filed on or before January 6, 2020, or 2) continue the hearing on Plaintiff's motion until June 1, 2020. The United States cannot credibly claim any prejudice from this requested extension of time, particularly because it has had years to prepare and bring this case. The decisions to link the California and Quebec programs were made in 2013, and the programs have been operating with the linkage in place since January 1, 2014. Yet, Plaintiff chose not to file its Complaint until October 23, 2019. Having waited almost six years to file this lawsuit, Plaintiff should not now be permitted to rush Defendants' preparation of their case.

Moreover, Defendants require substantial time to prepare a thorough defense—far more time than the 18 days, including holidays, that Plaintiff's proposed hearing date allows. Plaintiff's Motion for Summary Judgment raises multiple questions of first impression under the Treaty and Compact Clauses, rarely explored areas of constitutional law, and Defendants require a more than typical amount of time to assess these unusual and novel claims. Defendants also require time to review the evidence submitted by Plaintiff, which was so voluminous it could not be electronically filed. As noted above, Plaintiff has had years to develop its case. Defendants require sufficient time to do the same, including time to develop legal theories, as well as time to

1

determine whether discovery will be needed and whether to file a cross-motion with their opposition.  The importance of providing Defendants with adequate time to prepare is only underscored by the fact that Plaintiff seeks to invalidate a long-standing component of a vital state program.

Finally, Defendants plan to move to dismiss multiple Defendants from this case on or before January 6, 2020.  Defendants who believe that they are not proper parties in this case should have the opportunity to have those issues decided before being forced to brief the merits of Plaintiff's claims.  This is especially true, here, where one entire group of Defendants is represented by outside, private counsel and has strong arguments that they should be dismissed. These Defendants—the Western Climate Initiative, Inc. (WCI, Inc.) Defendants—should not have to shoulder the expense and burden of reviewing Plaintiff's voluminous submissions and preparing a substantive defense to novel questions of constitutional law, unless and until this Court decides that they are properly named defendants.

Accordingly, Defendants respectfully request that this Court take Plaintiff's Motion for Summary Judgment off calendar, until the motions to dismiss are resolved, at which time the parties could confer on a schedule for Plaintiff's Motion.  In the alternative, Defendants respectfully request that this Court continue the hearing on Plaintiff's Motion for Summary Judgment to June 1, 2020 to provide Defendants with sufficient time to prepare their factual and legal cases.  With a simultaneously filed ex parte application, Defendants are seeking to have this motion heard on shortened time, given the imminence of their December 30, 2019 deadline to respond to Plaintiff's Motion for Summary Judgment.  Defendants are also seeking, in the same ex parte application, a short, initial extension of their December 30, 2019 response deadline (to February 10, 2020) to allow the parties and the Court time to address this motion, to allow Defendants to prepare their responsive pleadings by the January 6, 2020 deadline, and to accommodate other workload demands and planned absences around the holidays.

//

//

**BACKGROUND**

**A.    How Cap-and-Trade Programs, Including California's, Work**

As the United States Environmental Protection Agency (EPA) recognized in 2003, "governments are increasingly using market-based pollution control approaches, such as emission trading, to reduce harmful emissions."  Defendants' Request for Judicial Notice (RJN), Exh. A at 1-1.  Cap-and-trade programs are one type of emissions trading program.  *Id.*  They control emissions by "establish[ing] an aggregate emission cap that specifies the maximum quantity of emissions authorized from sources included in the program."  *Id.* at 1-1, 1-2.  The implementing agency then issues compliance instruments, often called "allowances," each one of which represents authorization "to emit a specific quantity (e.g., 1 ton) of a pollutant."  *Id.* at 1-2.  To ensure emissions do not exceed the cap, "[t]he total number of allowances equals the level of the cap," and regulated entities "must surrender allowances equal to [their] actual emissions."  *Id.* Allowances may be traded.  *Id.*  Regulated entities with inexpensive ways to "reduce their emissions" may sell "excess allowances," while other entities may choose to purchase allowances when the cost of doing so "is lower than the cost to reduce a unit of pollution at their facility."  *Id.* at 1-3.  In this way, each regulated entity has the flexibility to "design its own compliance strategy," using whatever combination of "emission reductions and allowance purchases or sales … minimize[s] its compliance cost."  *Id.* at 1-2.

California's cap-and-trade program for greenhouse gas emissions, adopted in 2011 by the California Air Resources Board (CARB), reflects this basic structure.  *See* Cal. Code Regs., tit. 17, §§ 95801 to 96022.  CARB establishes yearly "budgets" for the total greenhouse gas emissions of all regulated sources (called "covered entities").  *Id.* §§ 95841, 95802(a).  The emission budgets decline each year in order to require emission reductions from covered entities. *See id.* § 95841.[3]  CARB issues allowances—"authorization[s] to emit up to one metric ton of carbon dioxide equivalent" greenhouse gases—in quantities equal to the emissions budget for a given year.  *Id.* §§ 95802(a), 95820(a)(1).  The majority are made available through quarterly

---

[3] What appears to be an increase in emissions budgets between 2014 and 2015 reflects the inclusion of suppliers of natural gas and transportation fuels in the program (and the budget) beginning in 2015.  *See* Cal. Code of Regs., tit. 17, §§ 95841, 95851(b).

3

1   auctions.  *See id.* § 95910.  Covered entities are required to acquire and surrender allowances or

2   other eligible compliance instruments equivalent to the metric tons of greenhouse gases they emit.

3   *Id.* §§ 95850(b), 95856(a).[4]  The declining cap (i.e., decreasing annual allowance budget),

4   combined with an increasing price signal established by the auctions, ensure that statewide

5   emissions are reduced.

6   **B.   California's Cap-and-Trade Program's Linkage to Quebec's Program**

7   As noted above, cap-and-trade programs utilize markets—specifically, the trade in

8   compliance instruments—to increase flexibility for regulated parties, allowing them to design and

9   implement the most cost-effective compliance strategy for their individual businesses.  This

10   flexibility is generally greater in programs with more regulated sources and larger markets where

11   there are likely to be more lower-cost opportunities to abate emissions.  *See* RJN, Exh. A at 2-2 –

12   2-3.

13   Recognizing this well-understood economic principle, CARB designed California's cap-

14   and-trade program so that it could be linked to similar programs in other jurisdictions.  *See* Cal.

15   Code Regs., tit. 17, § 95940.  This linkage would simply mean that CARB would accept the

16   allowances (or other compliance instruments) issued by the other jurisdiction as essentially

17   equivalent to CARB-issued allowances and may conduct coordinated allowance auctions with the

18   other jurisdiction.  *Id.*; *see also id.* § 95911.  In other words, linkage would expand the size of the

19   markets and the potential pool of available allowances, while ensuring that covered entities in

20   both linked programs continue to reduce emissions under their respective, declining emission

21   caps.  Linkage would not change anything else about California's program, including the State's

22   emissions budget (or cap), the businesses in California that have compliance obligations, or the

23   way those compliance obligations are determined.  *See id.* §§ 95940-95945.

24

25   ───────────────────
      [4] For purposes of brevity and simplicity, the discussion here focuses on allowances
      because those are the primary compliance instruments.  However, covered entities may surrender
      "offsets" for a small portion (four to eight percent) of their compliance obligation.  Cal. Code of
26   Regs., tit. 17, §§ 95821, 95854.  As with allowances, each "offset" authorizes a metric ton of
      emissions, but, unlike allowances, offsets correspond to emissions reductions by sources that are
27   not covered entities.  *See* Cal. Code Regs., tit. 17, § 95802(a).  In essence, an offset is a
      mechanism that allows a covered entity to pay a non-covered entity to reduce or remove
28   emissions to offset an equivalent amount of emissions from the covered entity.

                                                    4

1    In 2013, CARB completed a rulemaking proceeding to link its cap-and-trade program with

2    that of Quebec.  *See* Cal. Code Regs., tit. 17, § 95943(a)(1).  That linkage took effect January 1,

3    2014.  *Id.*  As a result, CARB accepts Quebec-issued compliance instruments for compliance with

4    CARB's cap-and-trade program.  *Id.*; *see also id.* § 95940.  A similar linkage with Ontario's cap-

5    and-trade program took effect on January 1, 2018 but was terminated on June 15, 2018 when a

6    newly elected Ontario government withdrew.  *See id.* § 95943(a)(2).

7    ## C.   Western Climate Initiative, Inc.

8    In addition to naming state entities and officials as Defendants, Plaintiff also named WCI,

9    Inc., a non-profit corporation created to provide services to jurisdictions with cap-and-trade

10   programs, and four of its board members—two voting members and two non-voting members.

11   *See* Amended Compl., ¶ 14; Exh. 3 (ECF Doc. 7-3) at 3; *see also* RJN, Exh. B at 4.  WCI, Inc.'s

12   Board is comprised of members from the jurisdictions to which it provides services—currently

13   California, Quebec, and Nova Scotia.  RJN, Exh. B at 5-6.  WCI, Inc. provides administrative and

14   technical services to support implementation of member jurisdiction cap-and-trade programs,

15   including through a technical platform for joint allowance auctions and a technical platform for

16   CARB to track compliance instruments in entity accounts.  *See id.* at 4; *see also* Amended Compl.

17   ¶ 14; Exh. 3 (ECF Doc. 7-3) at 1, 3.  WCI, Inc. performs these services for CARB for

18   remuneration under an agreement between WCI, Inc. and CARB (Agreement 11-415).  Amended

19   Compl., Exh. 3 at 1, 3, 5.  WCI, Inc. has no policy-making, regulatory, or enforcement authority,

20   and plays no role in deciding whether California or Quebec will accept each other's compliance

21   instruments.  *See id.* (describing services WCI, Inc. provides to CARB); *see also* Cal. Code of

22   Regs., tit. 17, §§ 95940, 95943(a).

23   ## D.   The Brief Procedural History of This Case

24   The United States filed its Complaint on October 23, 2019, alleging that the linkage

25   between California's cap-and-trade program and Quebec's is unconstitutional.  ECF Doc. 1.  The

26   Complaint names multiple defendants, including the State of California, CARB, WCI, Inc.,

27   several California officials in their official capacities, and four members of the WCI, Inc.

28   Board—two voting members and two non-voting members.

1    On October 23, 2019, this Court issued a Minute Order setting the initial scheduling

2    conference for March 2, 2020.  ECF Doc. 3.

3    On November 19, 2019, the United States filed an Amended Complaint, adding a number

4    of new factual allegations.  *See* ECF Doc. 7.

5    Also on November 19, 2019, the parties filed a stipulation and proposed order to set

6    January 6, 2020 as the deadline for Defendants' responsive pleadings.  ECF Doc. 8.  As the good

7    cause required to grant that extension of time, the stipulation stated that Defendants had only just

8    finalized their representation arrangements on November 15, 2019; that the State Defendants

9    required additional time to coordinate among multiple clients and to complete internal and client

10    reviews; and that all Defendants would need additional time because of the need to coordinate

11    with separately represented Defendants and because of "busy schedules and personal

12    commitments during the upcoming holiday season."  *Id.*  The Court (Judge Mendez) signed the

13    proposed order on November 22, 2019, setting Defendants' responsive pleading deadline as

14    January 6, 2020.  ECF Doc. 11.

15    No previous continuances or extensions of time have been sought or obtained regarding

16    Plaintiff's Motion for Summary Judgment, other than the initial extension of time Defendants

17    seek simultaneously by ex parte application pursuant to Local Rule 144(c).

18    **E.    The Parties' Communications Regarding Scheduling**

19    The parties have had two telephone calls, both initiated by counsel for State Defendants, to

20    discuss scheduling and other issues and have also had a series of email exchanges.  Declaration of

21    M. Elaine Meckenstock (Meckenstock Decl.) ¶¶ 3-19.  Despite multiple offers from defense

22    counsel to negotiate briefing and hearing schedules, the parties were only able to reach agreement

23    on January 6, 2020 as the deadline for Defendants' responsive pleading.  *Id.* ¶¶ 11-12, 14, 16.

24    Plaintiff's counsel first indicated his intent to file an early summary judgment motion on a

25    phone call on November 12, 2019.  Meckenstock Decl. ¶ 9.  Plaintiff's counsel suggested he

26    would like to have that motion for partial summary judgment heard alongside any motion(s) to

27    dismiss because he anticipated there would be substantive overlap in the motions.  *Id.*  Defendants

28    could not agree to that proposal both because the fairly compact schedule the parties had been

6

1    discussing for motion(s) to dismiss would be unworkable for summary judgment motions, and

2    because Defendants had not yet seen Plaintiff's Amended Complaint and could not determine

3    whether there might be substantive overlap between any motion to dismiss and Plaintiff's

4    summary judgment motion.  *Id.* ¶ 10.

5         On November 15, 2019, State Defendants' counsel communicated all Defendants'

6    willingness to resume the scheduling negotiations after Defendants had an opportunity to review

7    the Amended Complaint (which was due four days later).  Meckenstock Decl., Exh. D.  In

8    response, Plaintiff conveyed his "intent to proceed [with a summary judgment motion] per the

9    schedule in the local rules" and his "expectation that [Defendants] will do the same." *Id.*

10   Defendants responded by reiterating their willingness to negotiate schedules for all anticipated

11   motions, after Defendants had a chance to review Plaintiff's Amended Complaint.  *Id.*, Exh. E.

12        On December 2, 2019, after reviewing the Amended Complaint and conferring with their

13   clients and each other, Defendants informed Plaintiff that the motion(s) to dismiss would likely be

14   limited to arguments to dismiss certain Defendants and thus would not substantively overlap with

15   Plaintiff's anticipated summary judgment motion.  Meckenstock Decl., Exh. G.  Defendants also

16   conveyed their view that it would conserve party resources for the Court to resolve the motion(s)

17   to dismiss—thereby determining the proper Defendants—*before* the parties had to brief the

18   substantive merits of the claims.  *Id.*  Plaintiff's counsel responded by stating his intention to file

19   a motion for partial summary judgment on December 9, 2019 and to request a hearing date of

20   January 13, 2020 for that motion.  *Id.*

21        On December 9, 2019, Plaintiff's counsel informed Defendants that Plaintiff's Motion

22   would not be filed that day but would be filed "soon."  Meckenstock Decl., Exh. I.  On December

23   10, 2019, State Defendants' counsel sought an update on the timing of Plaintiff's Motion;

24   indicated that Defendants remained willing to negotiate regarding scheduling; and confirmed

25   prior communications that, if Plaintiff set a January 13, 2020 hearing for its Motion, Defendants

26   would seek scheduling relief from the Court.  *Id.*  Plaintiff's counsel confirmed his intent to seek

27   a January 13, 2019 hearing date and declined to negotiate.  *Id.*  Plaintiff filed its Motion on

28   December 11, 2019, with the hearing set for January 13, 2020.  ECF Doc. 12.

On December 12, 2019, one day after Plaintiff filed its Motion for Summary Judgment, defense counsel informed Plaintiff that, as previously indicated, Defendants would be seeking scheduling relief from the Court—specifically, the relief Defendants seek here and in their related ex parte application.  Meckenstock Decl., Exh. J.  Plaintiff responded on December 13, 2019, indicating it opposes all the relief Defendants seek, offering to agree to a two-week extension for the summary judgment motion if Defendants would agree to forego any additional extensions of time, and offering to confer on the schedule for Defendants' responsive pleadings.  *Id.*  In light of Plaintiff's refusal to confer *before* filing the summary judgment motion, despite Defendants' repeated invitations to do so, the failure of Plaintiff's proposal to address any of Defendants' concerns, and the impending and untenable deadlines to which Defendants are presently subject, Defendants seek relief from the Court.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 6(b)(1)(a), courts "may, for good cause, extend the time" for a party to act, "if a request is made, before the original time or its extension expires." "'Good cause' is a non-rigorous standard that has been construed broadly across procedural and statutory contexts."  *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (9th Cir. 2010).  Accordingly, "requests for extensions of time made before the applicable deadline has passed should 'normally ... be granted in the absence of bad faith on the part of the party seeking relief or prejudice to the adverse party.'"  *Id.* (quoting Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1165 (3d ed. 2004)).  Further, when considering such requests, "courts should be mindful that the rules are to be construed to achieve the just determination of every action."  *Rodgers v. Watt*, 722 F.2d 456, 459 (9th Cir. 1983) (citing Fed. R. Civ. P. 1); *see also Ahanchian*, 624 F.3d at 1259.

## ARGUMENT

### I.  DEFENDANTS' REQUEST IS MADE IN GOOD FAITH, AND PLAINTIFF WILL NOT BE PREJUDICED BY THE REQUESTED DELAY

This motion easily satisfies the good cause standard described above.  There is no remotely colorable argument that Defendants are acting in bad faith.  Defendants seek relief from

8

1   Plaintiff's attempt to rush Defendants' preparation of their case unnecessarily, as discussed

2   further below in Section II.  Defendants also seek to have this case proceed in a logical and

3   reasonable manner that conserves party resources—namely, by having this Court decide who the

4   proper Defendants are before any of those Defendants must expend the resources necessary to

5   litigate the merits of Plaintiff's claims.  *See, infra,* Section III.  In other words, Defendants are

6   simply asking that the "rules … be construed to achieve the *just* determination of" this action.

7   *See Rodgers*, 722 F.2d at 459 (citing Fed. R. Civ. P. 1) (emphasis added).

8       Moreover, there is demonstrably no need for the rush Plaintiff seeks to impose unilaterally.

9   Plaintiff has had *many years* to develop and bring these challenges.  Plaintiff alleges that it was

10   2013 when Quebec and California "entered into the predecessor of the Agreement" Plaintiff

11   challenges.  Amended Compl. ¶ 57.  That is the same year CARB adopted amendments to its cap-

12   and-trade regulation to link with Quebec's program.  *See* Cal. Code Regs., tit. 17, § 95943(a)(1).

13   That linkage became operational on January 1, 2014, *id.*, and Plaintiff alleges that "twenty joint

14   auctions" have already "taken place under the terms of the Agreement and its predecessor,"

15   Amended Compl. ¶ 97.  In other words, the United States waited almost six years to challenge the

16   linkage that it now claims is unconstitutional.  Plaintiff's multi-year delay in bringing this lawsuit

17   demonstrates that no prejudice will flow to Plaintiff from allowing Defendants sufficient time—a

18   matter of months, not years—to prepare their response to Plaintiff's Motion for Summary

19   Judgment.

20       The absence of any prejudice to Plaintiff from some delay on its motion is further

21   underscored by the prematurity of the motion.  "Although [Federal Rule of Civil Procedure 56]

22   allows a motion for summary judgment to be filed at the commencement of an action, *in many*

23   *cases the motion will be premature* until the nonmovant has had time to file a responsive pleading

24   or other pretrial proceedings have been had."  Fed. R. Civ. P. 56 Advisory Committee's Notes

25   (2010 Amendments Subdivision (b)) (emphasis added).  Accordingly, "courts have denied pre-

26   answer and pre-discovery motions for summary judgment as premature despite technical

27   compliance with the timing provisions of Rule 56."  *Mourning v. Gore*, No. 318-cv-02245-WQH-

28   RBM, 2019 WL 776855, at *2 (S.D. Cal. Feb. 21, 2019), *report and recommendation adopted,*

9

2019 WL 1858501 (S.D. Cal. Apr. 25, 2019) (collecting illustrative orders from multiple district courts, including this one); *see also Waters v. Experian Info. Sols., Inc.*, No. 12CV308 AJB RBB, 2012 WL 1965333, at *4 (S.D. Cal. May 31, 2012) ("This Court typically finds pre-answer summary judgments premature and unhelpful.").  Alternatively, some courts have stricken premature motions for summary judgment filed "prior to the filing of an answer or commencement of discovery."  *Clark v. Goodwill Indus. of Hawaii, Inc.*, No. CV 09-00184 DAE-LEK, 2009 WL 10702877, at *1 (D. Haw. July 28, 2009).  The concerns that underlie these decisions are heightened here where Plaintiff seeks a rush to judgment on claims that, as shown below, raise questions of first impression in largely unexpored areas of constitutional law.

The limited relief Defendants seek here—several months' delay, rather than outright denial or striking—will not prejudice Plaintiff, given Plaintiff's multi-year delay in filing this suit.

## II. DEFENDANTS REQUIRE SUBSTANTIAL ADDITIONAL TIME TO ADEQUATELY DEVELOP THEIR RESPONSES TO PLAINTIFF'S NOVEL CLAIMS

This motion also satisfies the good cause standard because Defendants will require substantial time to prepare to address the merits of the case—to assess Plaintiff's legal claims, which are based on novel theories concerning rarely address constitutional provisions, and to evaluate the voluminous exhibits submitted in support of those theories.  Especially as Plaintiff is challenging a long-standing component of an indisputably important state program, Defendants should not be rushed in their defense, particularly when the challenged linkage between programs has been operating for almost six years.  In addition, this Court would benefit from a robust presentation of the relevant facts and law, in light of the novel and potentially consequential legal theories Plaintiff advances.

Indeed, Plaintiff's Treaty Clause claim appears to be the first of its kind, as evident from Plaintiff's failure to identify a single case in which a plaintiff claimed, as the United States does here, that a State's actions constituted a treaty within the meaning of the Treaty Clause.  *See* Plaintiff's Motion for Summary Judgment (MSJ) at 14:22-25 (citing Supreme Court cases deciding <u>Compact Clause</u> challenges and *Made in the USA Found. v. United States*, 242 F.3d 1300 (11th Cir. 2001) in which plaintiffs challenged a <u>federal</u> trade agreement).  Plaintiff's Treaty

10

1   Clause claim appears to rest heavily on Plaintiff's contention that California has entered into an

2   agreement "of a political character." *Id.* at 13-15.  But, as noted, Plaintiff identifies no case

3   applying that as a legal test to any particular agreement.  *See id.*  Rather, Plaintiff's "test" is a

4   quotation from Justice Story's Commentaries on which the Supreme Court relied, in an 1893

5   Compact Clause decision, to support the Court's application of *noscitur a sociis* as a rule of

6   construction.  *Virginia v. Tennessee*, 148 U.S. 503, 519 (1893).  Given the utterly novel nature of

7   Plaintiff's constitutional claim, Defendants should not be deprived of adequate time to fully

8   review original source materials, academic commentary, and other necessary information in order

9   to develop its own legal theories.  The additional time Defendants seek will benefit the Court by

10  allowing Defendants, and possibly expert amici, to present a more thorough analysis of this

11  unexplored area of law.

12      Plaintiff's Compact Clause claim likewise raises unusual and unfamiliar issues.  Notably, in

13  1978, when the Supreme Court decided one of the leading Compact Clause cases, the Court

14  observed that it had identified "difficulties" in interpreting this Clause in 1893 but "did not have

15  occasion expressly to apply" its holding from 1893 until 1976.  *U. S. Steel Corp. v. Multistate Tax*

16  *Comm'n*, 434 U.S. 452, 459-60 (1978).  Plaintiff also invokes Congress' consideration of

17  interstate compacts dating back more than sixty years.  MSJ at 22:18-24:5.  As with Plaintiff's

18  Treaty Clause claim, the interests of the Court, and of justice, would be best served by Defendants

19  having sufficient time to review relevant materials, including these decades of historical practices,

20  and to develop thorough and well-considered legal theories.

21      Defendants also need time to evaluate the practical consequences of the rulings Plaintiff

22  seeks—an evaluation that would also aid the Court.  Indeed, the potential consequences of this

23  Court's decision extend well beyond the linkage of the two cap-and-trade programs at issue in

24  this case.  States enter into all kinds of arrangements with other jurisdictions, including foreign

25  ones.  This Court's consideration of Plaintiff's novel constitutional theories could have

26  implications for any number of those arrangements, especially in light of the dearth of precedent

27  on these issues.  Defendants, and other interested parties (including potential amici), should have

28  an opportunity to develop and present sufficient information to aid the Court in issuing a decision

11

1   that does not give rise to unintended, unnecessary and unwarranted questions about other state

2   actions.

3        Defendants also need time to examine the extensive factual material that Plaintiff has

4   submitted.  Although Plaintiff asserts that its Motion for Summary Judgment is based exclusively

5   on legal arguments, ECF Doc. 12-1, p. 2:5–13, the motion is supported by voluminous

6   documents, including 34 exhibits delivered separately on a flash drive because they are too

7   voluminous for submission via the Court's electronic filing system.  ECF Doc. 12-3, p. 2.

8   Plaintiff's Motion relies extensively on these documents.  *See, e.g.*, Motion for Summary

9   Judgment (ECF Doc. 12), pp. 17:22–18:4.  Defendants must be permitted adequate time to review

10  these documents and determine whether there are any factual disputes and also whether they need

11  to conduct any discovery relating to the documents.

12       The United States has had many years to develop its case.  Defendants should be provided

13  with at least some months to assess that case and prepare to defend against it.

14       Finally, it would be particularly burdensome to force Defendants to prepare their response

15  to Plaintiff's pre-answer summary judgment motion while briefing motion(s) to dismiss.  As

16  acknowledged in the stipulation to extend the time for Defendants' responsive pleadings,

17  Defendants' briefing in this case will generally require more time than usual due to State

18  Defendants' internal review processes and the need to confer with multiple Defendants.  *See* ECF

19  Doc. 8 at 2.  In addition, State Defendants' counsel, including their lead counsel, Ms.

20  Meckenstock, have very busy case loads and calendars, providing further good cause for a

21  substantial extension of time.  Ms. Meckenstock was chosen as lead counsel for the State

22  Defendants because she has substantial knowledge of the cap-and-trade program due to her work

23  defending it in *California Chamber of Commerce v. State Air Resources Board*, 10 Cal. App. 5th

24  604, 613 (2017), *review denied* June 28, 2017, and because she has substantial experience

25  defending state programs against constitutional challenges, including unusual ones.  Meckenstock

26  Decl. ¶ 2.  But Ms. Meckenstock is also lead counsel, or co-lead counsel, on several other

27  complex matters that are currently active, many of which involve coordination with large

28  coalitions of other States.  *Id.* ¶ 20.  And the other attorneys representing Defendants likewise

12

have substantial, active caseloads.  *Id*.; Declaration of Monica Folsom ¶ 3.  The workload demands of this case and of Defendants' counsel, combined with the absence of any need to rush this case into premature summary judgment motions, provide further good cause to take Plaintiff's motion off calendar until after any motions to dismiss are decided or to continue the hearing on Plaintiff's motion until June 1, 2020.

In sum, Defendants have more than met the good cause standard to extend the briefing and hearing schedule for Plaintiff's Motion for Summary Judgment.

### III.   THIS COURT SHOULD DECIDE WHETHER CERTAIN DEFENDANTS SHOULD BE DISMISSED BEFORE DEFENDANTS BRIEF THE MERITS OF THE CASE

Further good cause exists to grant this motion because this Court should determine whether certain Defendants are properly named before those Defendants are required to shoulder the substantial burden of responding to novel constitutional claims and reviewing voluminous evidentiary materials.  Defendants intend to raise these very questions in their motion(s) to dismiss, due on or before January 6, 2020.  Specifically, Defendants will seek to dismiss a number of the Defendants, including Jared Blumenfeld in his official capacity as Secretary of the California Environmental Protection Agency and all of the WCI, Inc. Defendants (WCI, Inc. and all of four of its named board members).  The WCI, Inc. Defendants are represented separately from the State Defendants, and the propriety of their presence in this case, in particular, should be decided before further briefing is required on Plaintiff's Motion for Summary Judgment.[5]

#### A.   There Are Significant Questions as to Whether the WCI, Inc. Defendants Are Proper Defendants

While Defendants are not asking this Court to decide, on this motion, whether certain Defendants belong in this case, the weight of the arguments Defendants intend to raise in their motion to dismiss is substantial and supports the relief Defendants seek here—namely, a resolution of the motion(s) to dismiss *before* Defendants must respond to Plaintiff's summary judgment motion.  Defendants' motion to dismiss the WCI, Inc. Defendants will be based on several grounds, any one of which constitutes an independent basis for dismissal.

---

[5] Because the dismissal of Jared Blumenfeld would not obviate the involvement of the California Department of Justice in this case, Defendants focus here on the WCI, Inc. Defendants who, if dismissed, would no longer have a need to pay their separate, private litigation counsel.

13

First, the WCI, Inc. Defendants do not cause Plaintiff's alleged injury and cannot provide Plaintiff with redress.  The United States objects to an agreement between California and Quebec. *See, e.g.,* Amended Complaint at ¶ 5 (alleging "the Agreement [between California and Quebec], together with certain related provisions of California law, violate the Constitution" and asking "this Court [to] declare them unlawful and enjoin their operation").  WCI, Inc. and its board members are not parties to that Agreement, and, thus, any injury stemming from that Agreement was not caused by WCI, Inc. and cannot be redressed by any relief provided by WCI, Inc.  The United States also seeks to declare invalid and enjoin California's acceptance of Quebec-issued allowances and other compliance instruments. *E.g.*, Amended Compl. ¶¶ 61-62, 72-80, 85-85, 91-93, 115-117, 126, 131-133, 135.  But the decision to accept Quebec-issued instruments was and is California's to make, not WCI, Inc.'s. *See* Cal. Code of Regs., tit. 17, § 95943.  No injunction against WCI, Inc. could stop the conduct to which Plaintiff objects.  Further, the services that WCI, Inc. does provide to CARB (which do not involve the acceptance of Quebec-issued allowances) could be provided by another organization or by CARB itself, so, again, no injunction against WCI, Inc. would necessarily stop *any* conduct to which Plaintiff objects.

Accordingly, Plaintiff lacks standing to bring its claims against the WCI, Inc. Defendants. *See Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 41 (1976) ("[Article III] requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant.").  And the WCI, Inc. Defendants are unnecessary to this litigation. *See, e.g., Autotek Inc. v. Cty. of Sacramento*, No. 216-cv-01093, 2017 WL 3149923, at *4 (E.D. Cal. July 25, 2017) (dismissing one defendant because the "operative complaint attributes each alleged wrong" to other actors and other defendants who did "not afford plaintiffs any additional claims or remedies").

Second, Plaintiff's causes of action are all constitutional claims that can only be brought against States. *See* Amended Compl. ¶ 21 ("The Constitution prohibits *states* from 'enter[ing] into any Treaty, Alliance, or Confederation.'") (emphasis added, alteration original, quoting Art. I, § 10); ¶ 23 ("The Constitution prohibits *states*, 'without the Consent of Congress,' from 'enter[ing] into any Agreement or Compact . . . with a foreign Power . . . .'" (emphasis added,

14

1  alteration original, quoting Art. I, § 10); ¶ 32 (alleging "actions by *states*" can be preempted)

2  (emphasis added); ¶ 25 (alleging "*state laws*" can violate the foreign dormant Commerce Clause)

3  (emphasis added).

4        But WCI, Inc. and its board members are not States.  Rather, WCI, Inc. is a non-profit

5  corporation, incorporated under the laws of Delaware.  Amended Compl. ¶ 14.  And contrary to

6  Plaintiff's conclusory allegations, WCI, Inc. and its board members are not "state actors" or

7  "instrumentalities of the state."  *See id.* ¶ 15.  That two of six voting WCI, Inc. board members

8  are California officials does not change this, as is self-evident from the fact that a minority of

9  members cannot control the Board.  RJN, Exh. B at 6 (identifying the six voting board members

10  and their home jurisdictions, including two from California).  Nor does a contract for services,

11  like the one between CARB and WCI, Inc., automatically transform a private organization into a

12  state actor or instrumentality of the state.  Indeed, that is "a dubious proposition that would

13  convert every contractor into a state actor."  *Ochoa v. Serv. Employees Int'l Union Local 775*, No.

14  2:18-CV-0297-TOR, 2019 WL 1601361, at *5 (E.D. Wash. Apr. 15, 2019).  Further, even if

15  WCI, Inc. could somehow be a state actor, that could only be true for the functions WCI, Inc.

16  performs.  *See Lee v. Katz*, 276 F.3d 550, 555 (9th Cir. 2002) ("It is important to identify the

17  function at issue because [a]n entity may be a State actor for some purposes but not for others.")

18  (internal quotation marks omitted, modification original).  And, as discussed above, the actions to

19  which the United States objects here are not those of WCI, Inc.  Plaintiff's constitutional claims

20  cannot stand against the WCI, Inc. Defendants.

21        **B.    The Court Should Decide Whether to Dismiss the WCI, Inc. Defendants
              Before Those Defendants Are Subject to Further Burdens of Litigating**

22  **This Case**

23        The Court should consider whether to dismiss the WCI, Inc. Defendants before those

24  Defendants are forced to expend resources to further litigate a case in which they were likely

25  improperly named.  Courts routinely do just that, determining whether defendants are improperly

26  named on motions to dismiss that precede merits briefing.  *E.g., Schuman v. Microchip Tech. Inc.*,

27  302 F. Supp. 3d 1101, 1112 (N.D. Cal. 2018); *Moyle v. Liberty Mut. Ret. Benefit Plan*, No. 10-cv-

28  2179, 2016 WL 7242021, at *2 (S.D. Cal. Dec. 15, 2016) (describing procedural history).

15

1   Indeed, courts have recognized that "mov[ing] to dismiss" is "the most efficient and cost-

2   effective way to resolve" questions about "whether [certain] defendants were properly named in

3   the suit. *Ingemi v. Pelino & Lentz*, 866 F. Supp. 156, 163 (D.N.J. 1994).  And, of course, courts

4   can and do exercise their equitable discretion to stay, defer, or continue proceedings, including

5   entire cases, in order to conserve party and judicial resources, as the relief requested here would

6   do.  *E.g.*, *Arcadia Gardens Mgmt. Corp. v. Great Am. Ins. Co. of New York*, No. 2:13-cv-08635,

7   2014 WL 457949, at *1 (C.D. Cal. Feb. 4, 2014); *Genentech, Inc. v. Sanofi-Aventis Deutschland

8   GMBH*, No. C 08-4909 SI, 2009 WL 1313193, at *1 (N.D. Cal. May 12, 2009); *Ball v. Union

9   Carbide Corp.*, No. 07-cv-2392, 2008 WL 11508641, at *1 (S.D. Cal. Mar. 13, 2008).

10      These principles and practices fully support taking Plaintiff's Motion for Summary

11   Judgment off calendar, until resolution of Defendants' motion(s) to dismiss.  As one district court

12   explained, "resolving the pleading issues [before summary judgment] … was determined to be

13   the best course.  If the plaintiff's complaint withstood the challenge, then a focus on the summary

14   judgment motions could proceed.  To do otherwise was determined not conducive to the best use

15   of the Court's time or resources." *Waters v. Experian Info. Sols., Inc.*, No. 12-cv-308, 2012 WL

16   1965333, at *4 (S.D. Cal. May 31, 2012).

17                                **CONCLUSION**

18      Defendants respectfully request that this Court take Plaintiff's motion off calendar until

19   after the Court decides the motion(s) to dismiss defendants and that the Court then require the

20   parties to propose, preferably jointly, how Plaintiff's Motion for Summary Judgment should

21   proceed.  Alternatively, Defendants respectfully request that the Court continue the hearing on

22   Plaintiff's motion until June 1, 2020.  For the reasons discussed above, good cause exists for

23   either of these requests.

24      //

25      //

26      //

27      //

28

16

1    Dated:  December 13, 2019                 Respectfully Submitted,

2                                              XAVIER BECERRA
                                               Attorney General of California
3                                              MICHAEL P. CAYABAN
                                               Supervising Deputy Attorney General
4

5

6                                              */s/ M. Elaine Meckenstock*
                                               M. ELAINE MECKENSTOCK
7                                              Deputy Attorney General
                                               *Attorneys for State Defendants*
8

9
                                               DELFINO, MADDEN, O'MALLEY, COYLE &
10                                             KOEWLER LLP

11                                             */s/ Monica Hans Folsom* (as authorized on
                                               December 13, 2019)
12                                             MONICA HANS FOLSOM
                                               *Attorneys for WCI, Inc. Defendants*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        17