JEFFREY BOSSERT CLARK
Assistant Attorney General
JONATHAN D. BRIGHTBILL
Principal Deputy Assistant Attorney General
PAUL E. SALAMANCA
R. JUSTIN SMITH
PETER J. MCVEIGH
STEVEN W. BARNETT
Attorneys
Environment & Natural Resources Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W., Room 2139
Washington, D.C. 20530

Attorneys for the United States

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:19-cv-02142-WBS-EFB |
| Plaintiff, | |
| v. | **PLAINTIFF UNITED STATES OF AMERICA'S RESPONSE TO DEFENDANTS' EX PARTE APPLICATION** |
| THE STATE OF CALIFORNIA; GAVIN C. NEWSOM, in his official capacity as Governor of the State of California; THE CALIFORNIA AIR RESOURCES BOARD; MARY D. NICHOLS, in her official capacities as Chair of the California Air Resources Board and as Vice Chair and a board member of the Western Climate Initiative, Inc.; WESTERN CLIMATE INITIATIVE, INC.; JARED BLUMENFELD, in his official capacities as Secretary for Environmental Protection and as a board member of the Western Climate Initiative, Inc.; KIP LIPPER, in his official capacity as a board member of the Western Climate Initiative, Inc., and RICHARD BLOOM, in his official capacity as a board member of the Western Climate Initiative, Inc., | |
| Defendants. | |

**INTRODUCTION**

This Court should deny Defendants' *ex parte* application for an "initial" extension of time. Defendants have known for some time—since November 12, in fact—that the United States would move swiftly for summary judgment. The United States repeatedly attempted to negotiate a global schedule for potentially dispositive motions. But Defendants refused. They chose to make the United States file the motion when it did so to avoid further delay. This Court should not now endorse Defendants' tactics by granting their *ex parte* application.[1]

Last Friday, the day after learning of Defendants' intended application, the United States again offered to negotiate a schedule on its motion with Defendants. *See* Exhibit J to Declaration of M. Elaine Meckenstock at 25 (ECF # 15-2) (hereinafter "Exhibit J"). The United States unilaterally offered Defendants extensions of time so as not to disrupt the holidays. *See id.* And the United States remains available to discuss the schedule with Defendants and to stipulate to extensions. *Ex parte* relief is therefore not "necessary" as per Local Rule 144(c).

If, however, this Court should choose to address Defendants' application on the merits, the United States respectfully submits that Defendants do not need until February 10—six more weeks than they have under the current schedule—to respond to its motion. At most, the Court should allow: (1) a response by Defendants on or before Friday, January 10, 2020; (2) a reply by the United States on or before Friday, January 17; and (3) a hearing before this Court on Monday, January 27, as per this Court's calendar.

This proposed schedule would give Defendants almost a month to respond to the United States' motion. This is more than enough time, and certainly much more than the

---

[1]As this Court is aware, Defendants have also asked that the hearing on the United States' motion for summary judgment be taken "off calendar" or moved until June. *See* Motion to Take Plaintiff's Motion for Summary Judgment off Calendar or, in the Alternative, to Continue Plaintiff's Motion (ECF # 15). This only emphasizes the dilatory nature of Defendants' approach to this case.

1    Local Rules require.  *See* Local Rule 230.  As explained more fully herein, most of the

2    United States' exhibits are *Defendants'* own public documents and materials.  Moreover,

3    Defendants—*by their own admission*—have had lawyers preparing legal opinions and

4    theories for the defense of this case for years.  This refutes any claim that these claims are

5    "novel" or that Defendants need six extra weeks to conduct "research" to respond.

6           The United States would be greatly prejudiced by any delay in this matter.  It has

7    moved for summary judgment on issues of law and undisputed facts.  And, although

8    Defendants tell this Court that they need time "to develop legal theories" in response to

9    purportedly "novel" claims, Defendants themselves say other things to the press.  Defendant

10   Nichols told an audience at Stanford back in October that:

11          *We've . . . had legal opinions at all levels* that what we're doing doesn't
            interfere with the federal prerogative on treaties.  We don't have a treaty.
12          We're not entering into treaties.  But we do have many different
            memorandums of understanding that allow us to work on cross boundary
13          problems with other states in other countries.  And this is one of those
            programs.
14

15   Kevin Stark, California's Top Air Regulator Is Scathing in Response to DOJ Climate Suit,

16   KQED Science, *available at* https://www.kqed.org/science/1949823/doj-sues-california-

17   over-its-climate-agreement-with-quebec (last visited Dec. 16, 2019) (emphasis added).  Ms.

18   Nichols' legal conclusions are incorrect.  But they demonstrate that Defendants' pretensions

19   to this Court that the United States' claims are too "novel" for prompt response are less than

20   fully credible.  Defendant Nichols and others in California have been preparing—"at all

21   levels"—to defend the legality of the Agreement for some time.

22                                    **BACKGROUND**

23          The United States filed its complaint in this action on October 23, 2019.  (*See* ECF

24   # 1.)  Between that time and December 11, when the United States moved for summary

25   judgment, the parties attempted to agree on a schedule.[2]  More than once, the United States

26   _____

27   [2]Plaintiff gave extensive advance notice of its intention to seek expedited relief in this
     matter.  As Ms. Meckenstock accurately states, counsel for the United States advised
28

1   proposed a global schedule that would include the simultaneous filing of dispositive briefs,

2   with a hearing in February. *See* Declaration of M. Elaine Meckenstock at 2, ¶ 4 ECF # 15-

3   1) (hereinafter "Meckenstock Declaration"); id. at 3, ¶ 9.  Defendants, however, would not

4   agree.[3]  With no alternative, the United States brought its motion for summary judgment on

5   December 11.  It set a hearing date for January 13, 2020, as per Local Rule 230(b) and this

6   Court's calendar.

7         On December 12, the day after the United States brought its motion for summary

8   judgment, Defendants advised that they intended to seek *ex parte* relief from the schedule.

9   The United States responded, advising:  (1) that the United States was fully available to

10  discuss the schedule; and (2) that *ex parte* relief was therefore not "necessary" as per Local

11  Rule 144(c).  *See* Exhibit J at 25.  Without further consultation, Defendants submitted the

12  instant application.

13                                **ARGUMENT**

14         This Court should deny Defendants' application for *ex parte* relief.  According to

15  Local Rule 144(c), such relief is only appropriate "upon the affidavit of counsel that a

16  stipulation extending time *cannot reasonably be obtained*, explaining the reasons why such

17  a stipulation cannot be obtained and *the reasons why the extension is necessary*." (Emphasis

18  added.)  As noted above, the United States offered to discuss the schedule with Defendants

19  on the very day that Defendants made this application.  *See* Exhibit J at 25.  Because

20  Defendants have not availed themselves of the opportunity to "meet and confer" with the

21

22

23  Defendants during the parties' very first call, on November 7, 2019, that it intended to file

24  an amended complaint.  *See* Declaration of M. Elaine Meckenstock at 3, ¶ 6 (ECF # 15-1).
    Similarly, counsel for the United States advised Defendants that it intended to move for

25  summary judgment in the parties' second call, which took place on November 12.  *See id.*
    at 3, ¶ 9.

26  [3]Ultimately, the parties were only able to agree on two grounds: (1) the United States

27  agreed to extend the time for Defendants to answer or move to dismiss the complaint until
    January 6, 2020; and (2) Defendants agreed to waive any objection to the adequacy and

28  propriety of service.  *See* Stipulation and Order (Nov. 22, 2019) (ECF # 11).

1  United States before seeking relief from the Court, *ex parte* relief is not "necessary." It

2  should be denied.

3  Regardless, Defendants do not need an extra *six weeks*—the elapsed time between

4  December 30, 2019, and February 10, 2020—to respond to the United States' motion. At

5  most, this Court should allow Defendants eleven more days, with (1) responses due on or

6  before Friday, January 10, 2020; (2) a reply due on or before Friday, January 17; and (3) a

7  hearing on Monday, January 27, as per this Court's calendar. This would give Defendants

8  a total of 30 days to respond to the motion for summary judgment, while leaving the United

9  States with seven days to write its reply. This would also give the Court ten days to review

10 the full file before the hearing.

11 Defendants should not be heard to argue that responding to the United States' motion

12 in 27 days presents insuperable burdens. This case presents no genuine issues of material

13 fact and Defendants, by their own admission, have been preparing their legal case for years.

14 **I.    Defendants Do Not Deny That The Federal Rules Allow a Plaintiff to Move for**

15 **Summary Judgment as Early as Commencement of The Action.**

16 Under Federal Rule of Civil Procedure 56(a) and Local Rule 260(a), "a party [may]

17 move for summary judgment at any time, *even as early as the commencement of the action*."

18 Fed. R. Civ. P. 56 (Advisory Committee Notes to 2009 Amendment) (emphasis added).

19 This is exactly the kind of case where this is appropriate. That matter involves important

20 issues of law and lacks any factual dispute. Given the propriety of the United States' motion,

21 Defendants should not be heard to argue that it is either untimely or premature. It is entirely

22 proper for a party seeking legal relief to do so within the four corners of the rules,

23 particularly if something important is at stake. Moreover, this Court should bear in mind

24 that the United States asked only for a declaratory judgment on the applicable law in its

25 motion. At this time, the United States has not moved for injunctive relief, recognizing that

26 the equities relating to proper relief might require separate attention.

27 //

28

1  **II.    This Case Presents Important Issues of Constitutional Law and International**
2         **Relations.**

3         By Defendants' own admission, they are seeking to create their own foreign policy.
4  *See* Plaintiff United States of America's Notice of Motion, Motion for Summary Judgment,
5  and Brief in Support Thereof at 16 (ECF # 12) (hereinafter "United States' Motion") at 5,
6  20-21.   This entails important issues of federal authority under the Constitution.
7  Specifically, Defendants and the Canadian province of Quebec have entered into a binding,
8  multi-billion-dollar, thoroughly integrated regulatory alliance.  *See* United States' Motion
9  at 7-10, 16-18 (describing the Agreement's moving parts). The Constitution flatly forbids
10 this.  As the Supreme Court held in *Massachusetts v. EPA*—with words that could not be
11 more directly applicable to California's emissions treaty with Quebec—"*[w]hen a State*
12 *enters the Union, it surrenders certain sovereign prerogatives*.  Massachusetts cannot
13 invade Rhode Island to force reductions in greenhouse gas emissions [and] *it cannot*
14 *negotiate an emissions treaty with China or India . . . .*" 549 U.S. 497, 519 (2007) (emphasis
15 added).  This and other Supreme Court cases that are controlling on these facts make this a
16 straightforward set of legal claims to adjudicate.  It should be done expeditiously.

17 **III.    The United States' Motion Does Not Require Discovery.**

18        This case warrants expedited relief not only because of clear and controlling
19 precedent, but also because it presents no genuine issue of material fact.  Although
20 Defendants inaccurately describe the *legal* issues herein as "rarely visited," *cf.*
21 *Massachusetts*, 549 U.S. at 519, they fail to identify even a single disputed material fact in
22 their application for *ex parte* relief.  *See* Ex Parte Application to Shorten Time on Scheduling
23 Motion and Extend Time to Respond to Motion for Summary Judgment at 2 ("rarely
24 visited") (ECF # 17) (hereinafter "*Ex Parte* Application").  The same can be said for their
25 Motion to Take Plaintiff's Motion for Summary Judgment off Calendar or, in the
26 Alternative, to Continue Plaintiff's Motion and its 17-page supporting memorandum (ECF

27

28

1   # 15) (hereinafter "Defendants' Motion").  That, too, does not advert to a single unresolved

2   issue of material fact relevant to the two legal claims presented by the United States' motion.

3        Moreover, close examination of Defendants' own description of a cap-and-trade

4   program will reveal that it is almost identical in every material respect to the United States'

5   description of such a program.  *Compare* Defendants' Motion at 7-8 *with* United States'

6   Motion at 4, 7-9.  Nor could Defendants reasonably deny the authenticity of their own

7   words, of the United Nations Framework Convention on Climate Change (often referred to

8   as the "Rio Treaty"), of the Senate's approval of Rio, of the Paris Agreement of 2015 (often

9   referred to as the "Climate Accord" or "Paris Accord"), of an Executive Order, of a speech

10   by the President, of the United States' notice of withdrawal from the Paris Agreement, of a

11   press statement by the Secretary of State, of testimony before a committee of Congress, or

12   of Quebec's regulations.  In other words, the parties have a near-perfect—and near-perfectly

13   identical—appreciation of the relevant facts.  The live issues here are legal.

14        Moreover, Defendants' claim that they need extra time to review the United States'

15   exhibits because they were "so extensive that they could not be submitted via electronic

16   filing," *Ex Parte* Application at 4, is both factually inaccurate and ironic.  It is factually

17   inaccurate because this Court require parties, "if possible," to lodge documents in the "100's

18   or 1,000's of pages" with the Court via CD or flashdrive.  Standard Procedures, *available*

19   *at* http://www.caed.uscourts.gov/caednew/assets/File/!!!WEBSITE%20INFORMATION

20   %20FOR%20WBS.pdf (last visited Dec. 16, 2019).  As far as the United States knows, the

21   ECF system could have accommodated its exhibits.  Also, Defendants' claim is ironic

22   because, of the 35 exhibits the United States submitted to the Court via flashdrive, 21 were

23   created *by Defendants*.  In fact, of the 1493 *pages* of exhibits that the United States provided

24   to the Court via flashdrive, 812 are Defendants' materials.  And, as discussed in the motion

25   for summary judgment, California is intimately familiar with an additional 511 pages of

26   Quebec cap-and-trade regulations since it in fact collaborated with Quebec to develop those

27

28

1    regulations and subsequently re-verified regulatory compatibility before entering the

2    linkage agreement.

3    **IV.    Defendants Have Been Preparing to Defend This Case for Years.**

4            The argument that Defendants did not see this case coming and that the United States

5    has therefore caught them flatfooted does not bear weight.  On October 23, the very day that

6    the United States brought this action, Defendant Mary Nichols (the head of the California

7    Air Resources Board) admitted that Defendants have *long* had an army of lawyers drafting

8    legal opinions and preparing California's defense to these claims.  Defendant Nichols told

9    an audience at Stanford back in October that:

10           *We've . . . had legal opinions at all levels* that what we're doing doesn't
             interfere with the federal prerogative on treaties.  We don't have a treaty.
11           We're not entering into treaties.  But we do have many different
             memorandums of understanding that allow us to work on cross boundary
12           problems with other states in other countries.  And this is one of those
             programs.
13

14   Kevin Stark, California's Top Air Regulator Is Scathing in Response to DOJ Climate Suit,

15   KQED Science, *available at* https://www.kqed.org/science/1949823/doj-sues-california-

16   over-its-climate-agreement-with-quebec (last visited Dec. 16, 2019) (emphasis added). Ms.

17   Nichols' legal conclusions are incorrect.  But they demonstrate that Defendants' assertions

18   that the United States' claims are too "novel" for prompt response are widely off the mark.

19   Defendant Nichols and others in California have been preparing—"at all levels"—to defend

20   the legality of the Agreement for some time.

21           Reports elsewhere in the press suggest something else might be happening.  Even as

22   Defendants were preparing their *ex parte* application, Defendant Governor Newsom met

23   with the Premier of Quebec just last week—on the very day the United States moved for

24   summary judgment.  This highest-level contretemps was "to discuss ***protecting*** their cross-

25   border climate deal."  Jeremy B. White & Adam Blatchford, How California and Quebec

26   are trying to Trump-proof their climate effort, Politico, Dec. 11, 2019, *available at*

27   https://www.politico.com/news/2019/12/11/california-quebec-climate-change-082237 (last

28

1  visited Dec. 16, 2019) (bold emphasis added).  This Court should not allow Defendants to

2  manipulate the legal process.

3  **V.    There Is No Cause to Resolve WCI's Motions to Dismiss Before Addressing The**

4  **United States' Motion for Summary  Judgment.**

5      Defendants argue that this Court should  defer addressing the United States' motion

6  for summary judgment  until after resolving  certain Defendants' anticipated motions to

7  dismiss.  *See Ex parte* Application at 2; Defendants' Motion at 13-16.  There is no grounds,

8  however, for the Court to accede to this argument.  Contrary to Defendants' representations,

9  the Western Climate Initiative, Inc. ("WCI") plays a critical role in the operation of the

10  Agreement and is in no sense a mere private vendor.  *See* Letter from Robert W. Byrne,

11  Senior Assistant Attorney General, to Peter Krause, Legal Affairs Secretary, Mar. 16, 2017,

12  at 9 (emphasis added) ("*Any jurisdiction that wishes to link with the California Program . .*

13  *. will need to be a member of WCI, Inc.* and will use the California-developed  infrastructure

14  for the combined  Programs."), *available at* https://ww3.arb.ca.gov/cc/capandtrade/linkage

15  /linkage.htm  (Attorney General's Advice to Governor Concerning  Program Linkage) (last

16  visited Dec. 16, 2019).

17      To be sure, WCI could be replaced by another entity.  *See* Defendants' Motion at

18  14. So too could the United States be replaced by another country, or California  by another

19  state. The key point, however, is not whether some other entity could operate as the buckle

20  for California's  and Quebec's belt, but instead  whether WCI, in real time, is in fact that

21  buckle.  By Defendants' own representations, it is.

22                                    **CONCLUSION**

23      The Agreement is facially unconstitutional.   None of Defendants' papers disputes a

24  material fact—indeed, those same papers admit many.  This case need not linger on the

25  Court's docket.  By Defendants' own words, we know that teams of lawyers know these

26  issues well, and have been preparing California's  putative defense for years.  Any other

27  assertions are demonstrably untrue.  The application  should be denied.

28

1   Dated:  December 16, 2019.

2                                        Respectfully  submitted,

3                                        /s/_Paul E. Salamanca_____
                                         JEFFREY BOSSERT CLARK
4                                        Assistant Attorney General
                                         JONATHAN D. BRIGHTBILL
5                                        Principal Deputy Assistant Attorney
                                         General
6                                        PAUL E. SALAMANCA
                                         R. JUSTIN SMITH
7                                        PETER J. MCVEIGH
                                         STEVEN W. BARNETT
8
                                         Attorneys
9                                        Environment  & Natural Resources
                                         Division
10                                       U.S. Department of Justice

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28