1  MATTHEW D. ZINN (State Bar No. 214587)
   SHUTE, MIHALY & WEINBERGER LLP
2  396 Hayes Street
   San Francisco, California 94102
3  Telephone:    (415) 552-7272
   Facsimile:    (415) 552-5816
4  Zinn@smwlaw.com

5  Attorneys for [Proposed] Defendant-Intervenors
   ENVIRONMENTAL DEFENSE FUND and
6  NATURAL RESOURCES DEFENSE COUNCIL

7  TIMOTHY J. O'CONNOR (SBN 250490)
   ERICA A. MOREHOUSE MARTIN (State Bar No. 274988)
8  ENVIRONMENTAL DEFENSE FUND
   123 Mission Street, Floor 28
9  San Francisco, California 94105
   Telephone:    (415) 293-6050
10 Facsimile:    (415) 293-6051
   Toconnor@edf.org
11 Emorehouse@edf.org

12 Attorneys for [Proposed] Defendant-Intervenor
   ENVIRONMENTAL DEFENSE FUND

13
   (additional counsel listed on the following page)
14

15                    **UNITED STATES DISTRICT COURT**
           **EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION**
16

17 THE UNITED STATES OF AMERICA,          Case No. 2:19-cv-02142-WBS-EFB

                   Plaintiff,              **NOTICE OF UNOPPOSED MOTION AND**
18                                         **MOTION TO INTERVENE;**
        v.                                 **MEMORANDUM OF POINTS AND**
19                                         **AUTHORITIES IN SUPPORT THEREOF**
   THE STATE OF CALIFORNIA; GAVIN C.
20 NEWSOM, in his official capacity as     Date:      January 27, 2020
   Governor of the State of California; THE Time:      1:30 p.m.
21 CALIFORNIA AIR RESOURCES BOARD;        Crtrm.:    5, 14th Floor
   MARY D. NICHOLS, in her official capacity
22 as Chair of the California Air Resources Board
   and as Vice Chair and board member of the The Hon. William B. Shubb
23 Western Climate Initiative, Inc.; JARED
   BLUMENFELD, in his official capacity as
24 Secretary for Environmental Protection and as
   a board member of the Western Climate
25 Initiative, Inc.; KIP LIPPER, in his official
   capacity as a board member of the Western
26 Climate Initiative, Inc., and RICHARD
   BLOOM, in his official capacity as a board
27 member of the Western Climate Initiative,
   Inc.,
28                 Defendants.

---

1      (additional counsel)

2  DAVID R. PETTIT (State Bar No. 67128)
NATURAL RESOURCES DEFENSE COUNCIL
3  1314 2nd Street
Santa Monica, California 90401
4  Telephone: (310) 434-2300
Facsimile: (310) 434-2399
5  Dpettit@nrdc.org

6  Attorneys for [Proposed] Defendant-Intervenor
NATURAL RESOURCES DEFENSE COUNCIL

# TABLE OF CONTENTS

NOTICE OF MOTION AND RELIEF REQUESTED ...................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................1

INTRODUCTION .................................................................................................................1

BACKGROUND ...................................................................................................................2

ARGUMENT ........................................................................................................................4

    I.      EDF and NRDC may intervene in this case as a matter of right. .........................4

          A.      Proposed Intervenors' motion is timely. ...................................................5

          B.      Proposed Intervenors have significant protectible interests in this action that may be impaired by the disposition of this case. ...............................5

          C.      Proposed Intervenors' interests are not adequately represented by existing parties. ...................................................................................................9

    II.     The Court should allow permissive intervention. ...........................................13

          A.      Proposed Intervenors meet the threshold criteria for permissive intervention. ...........................................................................................13

          B.      Other discretionary factors weigh in favor of allowing intervention....................14

CONCLUSION....................................................................................................................15

UNOPPOSED MOTION TO INTERVENE
Case No. 2:19-cv-02142-WBS-EFB

# TABLE OF AUTHORITIES

**CASES**

*Abdurahman v. Alltran Fin., LP,*
  330 F.R.D. 276 (S.D. Cal. 2018) .................................................................. 11

*Arakaki v. Cayetano,*
  324 F.3d 1078 (9th Cir. 2003) ........................................................... 9, 10, 11

*Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.,*
  309 F.3d 1113 (9th Cir. 2002) .................................................................. 5

*Cal. Dump Truck Owners Ass'n v. Nichols,*
  275 F.R.D. 303 (E.D. Cal. 2011) ........................................................... 10, 11

*Cal. ex rel. Lockyer v. United States,*
  450 F.3d 436 (9th Cir. 2006) ..................................................................... 6

*Cal. ex rel. State Lands Comm'n v. United States,*
  805 F.2d 857 (9th Cir.1986) ..................................................................... 13

*Cal. Trucking Ass'n v. Becerra,*
  No. 318CV02458BENBLM, 2019 WL 202313 (S.D. Cal. Jan. 14, 2019) .................................. 10

*Californians For Safe & Competitive Dump Truck Transp. v. Mendonca,*
  152 F.3d 1184 (9th Cir. 1998) ................................................................... 11

*Cascadia Wildlands v. Kitzhaber,*
  No. 3:12-CV-00961-AA, 2012 WL 13055400 (D. Or. Aug. 29, 2012) ..................................... 12

*CEP Emery Tech Inv'rs LLC v. JPMorgan Chase Bank, N.A.,*
  No. 09-04409 SBA, 2010 WL 1460263 (N.D. Cal. Apr. 12, 2010) ...................................... 11

*Citizens for Balanced Use v. Mont. Wilderness Ass'n,*
  647 F.3d 893 (9th Cir. 2011) ..................................................................... 11

*City of Emeryville v. Robinson,*
  621 F.3d 1251 (9th Cir. 2010) .................................................................... 6

*Ctr. for Biological Diversity v. Gould,*
  No. CV11501329WBSGSA, 2015 WL 6951295 (E.D. Cal. Nov. 10, 2015) .......................... passim

*Ctr. for Biological Diversity v. U.S. Army Corps of Eng'rs,*
  No. CV 03-29-M-DWM, 2006 WL 8435850 (D. Mont. July 31, 2006) ..................................... 13

*Cty. of Fresno v. Andrus,*
  622 F.2d 436 (9th Cir. 1980) ..................................................................... 6

*Emp. Staffing Servs., Inc. v. Aubry,*
  20 F.3d 1038 (9th Cir. 1994) ..................................................................... 14

*Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*,
    983 F.2d 211 (11th Cir. 1993) .................................................................. 10

*Forest Conservation Council v. U.S. Forest Serv.*,
    66 F.3d 1489 (9th Cir. 1995) .................................................................... 11

*Freedom from Religion Found., Inc. v. Geithner*,
    644 F.3d 836 (9th Cir. 2011) .................................................................... 13

*Furia v. McGrew*,
    No. 219CV00942JAMKJN, 2019 WL 6321202 (E.D. Cal. Nov. 26, 2019) ................ 14

*Idaho Farm Bureau Fed'n v. Babbitt*,
    58 F.3d 1392 (9th Cir. 1995) ............................................................... 1, 5, 9

*Missouri v. Harris*,
    No. 2:14-CV-00341-KJM-KJ, 2014 WL 2506606 (E.D. Cal. June 3, 2014) ........ 13, 14

*Nw. Forest Res. Council v. Glickman*,
    82 F.3d 825 (9th Cir. 1996) ...................................................................... 5, 9

*Pac. Merch. Shipping Ass'n v. Witherspoon*,
    No. CIV S-06-2791 WBSKJM, 2007 WL 1080789 (E.D. Cal. Apr. 4, 2007) ......... 4, 13

*Perry v. Proposition 8 Official Proponents*,
    587 F.3d 947 (9th Cir. 2009) .................................................................... 14

*Sagebrush Rebellion, Inc. v. Watt*,
    713 F.2d 525 (9th Cir. 1983) .............................................................. 9, 10, 15

*SEC v. Navin*,
    166 F.R.D. 435 (N.D. Cal. 1995) ................................................................. 6

*Sierra Club v. U.S. Envtl. Prot. Agency*,
    995 F.2d 1478 (9th Cir. 1993) ..................................................................... 4

*Spangler v. Pasadena City Bd. of Ed.*,
    552 F.2d 1326 (9th Cir. 1977) ................................................................... 15

*Sw. Ctr. for Biological Diversity v. Berg*,
    268 F.3d 810 (9th Cir. 2001) ........................................................... 4, 9, 11, 12

*Trbovich v. United Mine Workers*,
    404 U.S. 528 (1972) .................................................................................. 9

*United States v. Alisal Water Corp.*,
    370 F.3d 915 (9th Cir. 2004) ...................................................................... 5

*United States v. City of L.A.*,
    288 F.3d 391 (9th Cir. 2002) ............................................................ 4, 9, 10, 11

*Venegas v. Mitchell*,
    495 U.S. 82 (1990) .................................................................................. 13

iii

*Venegas v. Skaggs*,
    867 F.2d 527 (9th Cir. 1989) ........................................................................ 13, 14

*Wash. State Bldg. & Constr. Trades v. Spellman*,
    684 F.2d 627 (9th Cir. 1982) ............................................................................... 9

*Wilderness Soc'y v. U.S. Forest Serv.*,
    630 F.3d 1173 (9th Cir. 2011) ................................................................... 4, 6, 11


**FEDERAL STATUTES**

28 U.S. C. § 1345 .......................................................................................................... 14

28 U.S.C. § 1331 ........................................................................................................... 14


**STATE STATUTES**

Cal. Health & Safety Code § 38500 *et seq*. (Stats. 2006, c. 488) ............................... 2

Cal. Health & Safety Code § 38550 ............................................................................... 2

Cal. Health & Safety Code § 38560 ............................................................................... 2

Cal. Health & Safety Code § 38562 ............................................................................... 2

Cal. Health & Safety Code § 38566 ............................................................................... 2

Cal. Health & Safety Code § 38570 ............................................................................... 2


**RULES**

Fed. R. Civ. P. 24 ................................................................................................... passim


**REGULATIONS**

Cal. Code Regs., tit. 17, §§ 95801-96022 ..................................................................... 2

Cal. Code Regs., tit. 17, § 95802 ................................................................................... 2

Cal. Code Regs., tit. 17, §§ 95811-95812 ..................................................................... 2

Cal. Code Regs., tit. 17, §§ 95820-95821 ..................................................................... 2

Cal. Code Regs., tit. 17, § 95841 ................................................................................... 2

Cal. Code Regs., tit. 17, §§ 95910-95923 ..................................................................... 2

Cal. Code Regs., tit. 17, §§ 95940-45 ........................................................................ 3

**MISCELLANEOUS**

Civil Code of Québec,
   *Regulation Respecting a Cap-and-Trade System for Greenhouse Gas Emission*
   *Allowances* (chapter Q-2, r. 46.1) ....................................................................... 2

Partnership for Market Readiness and International Carbon Action Partnership, World Bank
   Group,
   *Emissions Trading in Practice: A Handbook on Design and Implementation* 154-
   156 (2016)................................................................................................... 7, 8

v

1

**NOTICE OF MOTION AND RELIEF REQUESTED**

2    TO ALL PARTIES AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE that on

3  January 27, 2020, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 5 of the

4  United States District Court for the Eastern District of California, at 501 I Street, Sacramento,

5  California, Proposed Defendant-Intervenors Environmental Defense Fund, Inc. and Natural Resources

6  Defense Council, Inc. will move this Court for an order granting Proposed Intervenors leave to intervene

7  pursuant to Rule 24 of the Federal Rules of Civil Procedure. This motion is based on this Motion and

8  Notice of Motion, the following Memorandum of Points and Authorities, the declarations and answer

9  filed herewith, all pleadings and papers filed in this action, and such arguments as counsel may offer at

10  the hearing on this motion.

11    Proposed Intervenors are informed that the existing parties will not oppose this request for

12  intervention.

13

**MEMORANDUM OF POINTS AND AUTHORITIES**

14

**INTRODUCTION**

15    The Environmental Defense Fund ("EDF") and Natural Resources Defense Council ("NRDC")

16  seek to intervene as defendants in this action. Proposed Intervenors have a well-established interest in

17  California's landmark regulatory programs to address climate change. They were active in advocating

18  for the State's development of those programs and particularly the cap-and-trade program challenged in

19  this suit. They (individually or collectively) have intervened in support of the State in each of the four

20  previous lawsuits challenging California's climate programs.

21    The existing parties have stated that they will not oppose this motion. Regardless, Proposed

22  Intervenors satisfy the test for intervention as of right. The motion is timely, as Plaintiff has only

23  recently filed an amended complaint, and Defendants' answer is not yet due. Proposed Intervenors have

24  interests that may be impaired if they are unable to participate. As just noted, they have been deeply

25  involved in the development and defense of the regulatory program challenged in this action. As the

26  Ninth Circuit has held, "[a] public interest group is entitled as a matter of right to intervene in an action

27  challenging the legality of a measure it has supported." *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d

28  1392, 1397 (9th Cir. 1995). Proposed Intervenors' support for California's program advances the interest

1

of their hundreds of thousands of members throughout the United States and beyond in avoiding the threat of climate change. And Proposed Intervenors have been working with other states and nations in developing their own cap-and-trade programs. If successful, this lawsuit would undermine Proposed Intervenors' interests by preventing the coordination of those programs. That could reduce the efficiency and cost-effectiveness of the existing programs and deter other jurisdictions from adopting new programs. And because Proposed Intervenors are national organizations that seek to develop and coordinate greenhouse gas ("GHG") emission regulation outside California's borders, the existing Defendants do not adequately represent Proposed Intervenors' interests.

Finally, if the Court determines that Proposed Intervenors are not entitled to intervene as of right, it should nonetheless grant permissive intervention. The same considerations that justify intervention as of right support this Court's exercising its discretion to allow Proposed Intervenors to participate in the defense of a crucial program for which they have long advocated.

### BACKGROUND

California's cap-and-trade program was first adopted in 2011 by the California Air Resources Board ("CARB") under the Global Warming Solutions Act of 2006 (AB 32). Cal. Health & Safety Code § 38500 *et seq.* (Stats. 2006, c. 488); Cal. Code Regs., tit. 17, §§ 95801-96022. AB 32, as amended, requires a statewide reduction in greenhouse gas emissions to 1990 levels by 2020 and to 40 percent below 1990 levels by 2030. Cal. Health & Safety Code §§ 38550, 38566. The program imposes a statewide cap on GHG emissions from a defined group of large GHG sources. Cal. Health & Safety Code §§ 38550, 38560, 38562; Cal. Code Regs., tit. 17, §§ 95802(a), 95811-95812, 95841. Those sources must hold compliance instruments—effectively permits—approved under the program in a quantity sufficient to authorize their emissions. Cal. Code Regs., tit. 17, §§ 95802(a), 95820-95821, 95850. Sources may trade those instruments in a market overseen by CARB. Cal. Health & Safety Code § 38570; Cal. Code Regs., tit. 17, §§ 95910-95923. The Canadian province of Quebec also launched a similar cap-and-trade program in 2012, which took effect in 2013. Civil Code of Québec, *Regulation Respecting a Cap-and-Trade System for Greenhouse Gas Emission Allowances* (chapter Q-2, r. 46.1), *available at* <http://legisquebec.gouv.qc.ca/en/pdf/cr/Q-2,%20R.%2046.1.pdf>.

---

2

1   California's cap-and-trade regulations include provisions authorizing linkage of the State's

2 carbon market under the cap-and-trade program with those of other jurisdictions. *See* Cal. Code Regs.

3 tit. 17, §§ 95940-45. In 2013, under those provisions, California entered into an agreement with Quebec

4 memorializing coordination of their cap-and-trade programs ("Agreement"). Dkt. 7 ¶ 57. Through

5 independent regulations, each jurisdiction determined it would accept allowances from either program

6 for compliance purposes, allowing covered sources in each jurisdiction to trade compliance instruments

7 with each other. The governments of California and Quebec rely on administrative services provided by

8 Western Climate Initiative, Inc., a nonprofit organization, to track compliance instruments and monitor

9 the program. The Agreement lays out the parties' expectations for the coordination of their programs.

10 The connection of the two emissions trading markets took effect in 2014. California and Quebec entered

11 into a new Agreement with the Canadian province of Ontario in 2017 after Ontario adopted compatible

12 cap-and-trade laws, but Ontario unilaterally withdrew from the Agreement in 2018. *See* Dkt. 7-2.

13   On October 23, 2019, over seven years after California and Quebec finalized cap-and-trade

14 regulations and over six years since they entered the original Agreement, Plaintiff United States filed

15 this lawsuit, naming the State of California, several state officials, the Western Climate Initiative, Inc.,

16 and four of its board members as defendants. The suit seeks declaratory relief and a permanent

17 injunction to invalidate the Agreement and portions of California's cap-and-trade regulations that enable

18 coordination of the program with that of Quebec. Dkt. 1 at 17. Plaintiff alleges that these provisions of

19 California law and the Agreement violate the Treaty Clause, the Compact Clause, and the Foreign

20 Commerce Clause of the United States Constitution, and that they are preempted by the federal

21 government's power over foreign affairs. Dkt. 1 at 14-16. On November 19, Plaintiff filed an amended

22 complaint adding a variety of allegations for their existing claims. Dkt. 7. On December 13, Defendants

23 indicated that several of the individual Defendants were planning to seek their dismissal from the action.

24 Dkt. 15 at 2, 9, 20; Dkt. 17 at 4. On December 16, this Court reiterated that, pursuant to a prior

25 stipulation, Defendants would respond to the amended complaint by January 6, 2020. Dkt. 19.

26   On December 11, Plaintiff filed a motion for partial summary judgment, which it noticed for

27 hearing on January 31, 2020. Dkt. 12. In response to a motion by the State defendants, *see* Dkt. 15, 17,

28 the Court continued the hearing to February 24, Dkt. 19.

UNOPPOSED MOTION TO INTERVENE
Case No. 2:19-cv-02142-WBS-EFB

1    Plaintiff represented that it would not oppose this motion to intervene if Proposed Intervenors

2 agreed not to seek to alter the Court's timeline for Plaintiff's motion for summary judgment. Declaration

3 of Matthew D. Zinn in Support of Motion to Intervene ("Zinn Decl.") ¶ 3 & Ex. 1. Proposed Intervenors

4 accepted that condition. *Id.* ¶ 4. Defendants have similarly indicated that they do not oppose this motion.

5 *Id.* ¶ 5.

6                                              **ARGUMENT**

7 **I.      EDF and NRDC may intervene in this case as a matter of right.**

8    EDF and NRDC are entitled to intervene as a matter of right because they claim interests relating

9 to the subject of the action, the disposition of the action may impede their ability to protect those

10 interests, and their interests are not adequately represented by existing parties. Fed. R. Civ. P. 24(a)(2).

11 Courts apply a four-part test in evaluating intervention as a matter of right under Rule 24(a)(2):

12          (1) the motion must be timely; (2) the applicant must claim a "significantly protectable"
            interest relating to the property or transaction which is the subject of the action; (3) the
13          applicant must be so situated that the disposition of the action may as a practical matter
            impair or impede its ability to protect that interest; and (4) the applicant's interest must be
14          inadequately represented by the parties to the action.

15 *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (quoting *Sierra Club v. U.S.*

16 *Envtl. Prot. Agency*, 995 F.2d 1478, 1481 (9th Cir. 1993)); *see also Pac. Merch. Shipping Ass'n v.*

17 *Witherspoon*, No. CIV S-06-2791 WBSKJM, 2007 WL 1080789, at *1 (E.D. Cal. Apr. 4, 2007). Courts

18 must construe the rule "broadly in favor of proposed intervenors." *Id.* at 1179 (quoting *United States v.*

19 *City of L.A.*, 288 F.3d 391, 397 (9th Cir. 2002)); *see also Sw. Ctr. for Biological Diversity v. Berg,* 268

20 F.3d 810, 818 (9th Cir. 2001); *Ctr. for Biological Diversity v. Gould*, No. CV11501329WBSGSA, 2015

21 WL 6951295, at *1 (E.D. Cal. Nov. 10, 2015). This is because "[a] liberal policy in favor of intervention

22 serves both efficient resolution of issues and broadened access to the courts." *Wilderness Soc'y*, 630

23 F.3d at 1179 (quoting *City of L.A.,* 288 F.3d at 397–98).

24    Proposed Intervenors here meet the test for intervention as of right. First, their motion to

25 intervene is timely, as the case is not yet at issue. Second, they have longstanding interests in advocating

26 for and defending California's innovative programs to reduce GHG emissions, and their members are

27 threatened by the climate change that those programs are designed to arrest. Third, the disposition of this

28 action may impede Proposed Intervenors' ability to protect those interests, as an adverse ruling would

UNOPPOSED MOTION TO INTERVENE
Case No. 2:19-cv-02142-WBS-EFB

implicate the viability of both foreign and domestic inter-jurisdictional coordination of cap-and-trade programs and could chill cooperation on the GHG emission regulation critical to respond to climate change. Finally, Proposed Intervenors' interests are not adequately represented by existing parties. As national organizations, EDF and NRDC have different interests from that of the State of California. They also have substantial expertise apart from that of the present parties, and a materially different perspective on the issues at stake in the case, and it is uncertain whether the existing defendants will make all of Intervenors' arguments.

### A. Proposed Intervenors' motion is timely.

Courts consider three criteria to determine whether a motion to intervene is timely: (1) the stage of the proceedings, (2) potential for prejudice to other parties, and (3) the reason for any delay in moving to intervene. *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004) (citing *Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002)). This motion is timely under that test.

This case was filed on October 23, 2019, and the United States filed an amended complaint on November 19, 2019. Dkt. 7. Defendants have until January 6, 2020 to respond to the amended complaint. Dkt. 19. There is thus no reason to believe that the existing parties would be prejudiced if the motion were granted. Proposed Intervenors' prompt motion to intervene, the early stage of the proceedings, and the lack of any prejudice to existing parties all weigh heavily in favor of intervention. *See, e.g., Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996) (holding that a "motion to intervene does not appear to have prejudiced either party in the lawsuit, since the motion was filed before the district court had made any substantive rulings"); *Idaho Farm Bureau Fed'n*, 58 F.3d at 1397 (allowing environmental groups to intervene four months after the complaint was filed, even though plaintiff had already moved for a preliminary injunction).

### B. Proposed Intervenors have significant protectible interests in this action that may be impaired by the disposition of this case.

Rule 24(a)(2) requires the proposed intervenor to assert "an interest relating to the property or transaction that is the subject of the action." The Ninth Circuit has explained that this requirement is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons

as is compatible with efficiency and due process." *Wilderness Soc'y*, 630 F.3d at 1179 (quoting *Cty. of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980)). Intervention as of right under Rule 24(a)(2) "does not require a specific legal or equitable interest." *Id.*; *see also Gould*, 2015 WL 6951295, at *1. Rather, "[i]t is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Wilderness Soc'y*, 630 F.3d at 1179; *accord City of Emeryville v. Robinson*, 621 F.3d 1251, 1259 (9th Cir. 2010).

A prospective intervenor "has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *Wilderness Soc'y*, 630 F.3d at 1179 (quoting *Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006)); *see also Gould*, 2015 WL 6951295, at *1. The proposed intervenor need only show that the disposition of the action "*may* as a practical matter impair or impede the movant's ability to protect its interest" in the subject of the action. Fed. R. Civ. P. 24(a)(2) (emphasis added); *see SEC v. Navin,* 166 F.R.D. 435, 440 (N.D. Cal. 1995) (holding that only a showing of "*potential* adverse impact" on the would-be intervenor is required (emphasis added)).

Here, Proposed Intervenors have a significantly protectible interest in the subject of the action, which may be practically impaired by the disposition of this suit. Proposed Intervenors and their members have interests in avoiding climate change and thus in protecting the authority of sub-national jurisdictions to coordinate their respective regulatory programs in pursuing the most ambitious and cost-effective emission reductions. These interests may be impaired if EDF and NRDC are not permitted to intervene in this lawsuit.

First, as national membership organizations, Intervenors have hundreds of thousands of individual members throughout the United States and abroad who are concerned about and threatened by climate change. Declaration of Alex Jackson in Support of Motion to Intervene ("Jackson Decl.") ¶ 3; Declaration of James Fine in Support of Motion to Intervene ("Fine Decl.") ¶ 2. These members have significant, direct, and personal interests in promoting actions that reduce GHG emissions and thus mitigate the threats posed by climate change. Jackson Decl. ¶ 4; Fine Decl. ¶ 2. To further these interests, Proposed Intervenors have been active in advocating for and defending California's regulation of GHG emissions, including the State's cap-and-trade program and cooperation with Quebec.

UNOPPOSED MOTION TO INTERVENE
Case No. 2:19-cv-02142-WBS-EFB

1  Intervenors thus have an interest in ensuring that California's cap-and-trade system is as effective as

2  possible in reducing the emissions that contribute to the harmful effects of climate change.

3          These interests may be impaired if the provisions in California's cap-and-trade program

4  governing coordination with Quebec's program are invalidated, as this could interfere with the smooth

5  operation of the programs in both jurisdictions and potentially deter other jurisdictions in the United

6  States from developing and coordinating their own cap-and-trade programs. Jackson Decl. ¶ 16. Linking

7  carbon markets across jurisdictional boundaries generates several administrative, economic, and

8  environmental benefits that could be lost if California and Quebec are forced to disassociate their

9  emissions markets and other jurisdictions are precluded from participating in coordinated markets. *See*

10  Partnership for Market Readiness and International Carbon Action Partnership, World Bank Group*,*

11  *Emissions Trading in Practice: A Handbook on Design and Implementation* 154-

12  156 (2016), *available at,* <http://documents.worldbank.org/curated/en/353821475849138788/pdf/10887

13  9-WP-P153285-PUBLIC-ABSTRACT-SENT-PMRICAPETSHandbookENG.pdf>. Linked emissions

14  trading markets can lower the overall cost of emissions reductions, as reductions can occur in the

15  locations with the lowest marginal cost of emissions abatement. This reduces the cost of compliance for

16  regulated entities in markets with higher carbon prices, which can buy emissions allowances or offsets,

17  and generates revenue for markets with lower carbon prices, where market participants that reduce

18  emissions can sell emissions allowances or offsets. *Id.* at 154. Cost-effectiveness is an important benefit

19  for Proposed Intervenors because it creates opportunities to advocate for even more ambitious climate

20  action when costs are lower than otherwise expected. Fine Decl. ¶ 10. Participating markets can also

21  reap co-benefits such as job growth and improved local air quality because of investment in local

22  emissions reductions. World Bank Group*, Emissions Trading in Practice* at 20. Linked markets also

23  enhance administrative efficiency because regulatory agencies in linked jurisdictions can share the

24  administrative effort of tracking, auctioning, and monitoring the market for allowances. *Id*. at 156.

25  Further, a larger emissions trading market increases liquidity, meaning it is easier for potential buyers

26  and sellers of emissions allowances to find each other, given the increased pool of participants. *Id.* at

27  155. That enhanced liquidity is particularly important for smaller jurisdictions that may have a limited

28  number of market participants. *Id.*

7

1   If California is forced to disassociate its emissions trading program from that of Quebec, these

2   benefits will be lost, and compliance costs for regulated entities in California may increase as those

3   entities will no longer be able to purchase emissions allowances from the Canadian market, potentially

4   reducing the cost-effectiveness of the cap-and-trade programs.

5   Proposed Intervenors also have an interest in expanding and strengthening regulation of GHG

6   emissions at the state, national, and international levels and in promoting the coordination of cap-and-

7   trade programs among jurisdictions beyond California and Quebec. Indeed, Intervenors have been active

8   throughout the United States in working with state governments to develop cap-and-trade programs and

9   other regulatory tools to reduce emissions of GHGs. Jackson Decl. ¶ 16; Fine Decl. ¶ 13. With Proposed

10   Intervenors' encouragement, several states are actively looking to California's cap-and-trade system as a

11   potential model. At the international level, Proposed Intervenors advocate for the creation of a network

12   of emissions trading markets via cooperative agreements between jurisdictions and believe that the

13   participation of subnational jurisdictions could be important to expanding such a network. Jackson Decl.

14   ¶ 15; Fine Decl. ¶¶ 12-13.

15   This case may impair Proposed Intervenors' interests in promoting the national and international

16   expansion and coordination of cap-and-trade programs. If the Court were to invalidate California's

17   cooperation with Quebec, it could discourage other states and Canadian provinces from adopting their

18   own cap-and-trade programs. Jackson Decl. ¶ 16. While a purely intrastate emissions trading market

19   may be economically viable in a large state like California, smaller states and provinces may be unable

20   to sustain an emissions trading system on their own. *Id.*; *see* World Bank Group, *Emissions Trading in*

21   *Practice* at 155. Similarly, the costs of unilaterally administering a cap-and-trade program may be

22   prohibitive for some smaller jurisdictions. *See* World Bank Group, *Emissions Trading in Practice* at

23   156. An adverse ruling in this case thus could impair the expansion of subnational GHG emissions

24   regulation in the United States and Canada and impede subnational jurisdictions from cooperating in

25   operating their carbon markets, threatening Proposed Intervenors' efforts to advance climate change

26   mitigation policies.

27   Proposed Intervenors' longstanding involvement in advocating for the California cap-and-trade

28   program and their support for the program's coordination with Quebec also independently justify

8

intervention as of right. The Ninth Circuit has repeatedly recognized that "[a] public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported." *Idaho Farm Bureau Fed'n*, 58 F.3d at 1397 (citing *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir. 1983), and *Wash. State Bldg. & Constr. Trades v. Spellman*, 684 F.2d 627, 630 (9th Cir. 1982)).

Here, Proposed Intervenors worked with the California Legislature in advocating for AB 32, the statute under which CARB adopted the cap-and-trade program. Jackson Decl. ¶ 6; Fine Decl. ¶ 9. They were also deeply involved as advocates and policy experts as CARB developed California's cap-and-trade program (and other components of CARB's regulatory program under AB 32) and in advocating for California's cooperation with other jurisdictions. Jackson Decl. ¶¶ 6-10, 13-14; Fine Decl. ¶¶ 9-10. Accordingly, they intervened in four other lawsuits in which plaintiffs attacked California's cap-and-trade program and other climate-regulatory initiatives. Jackson Decl. ¶ 11; Fine Decl. ¶ 11. Proposed Intervenors' longstanding support for the cap-and-trade program and its coordination with other jurisdictions independently support intervention as of right.

### C.     Proposed Intervenors' interests are not adequately represented by existing parties.

No existing party adequately represents Proposed Intervenors' interests in preserving the ability of jurisdictions beyond California to cooperate in achieving emission reductions through cap-and-trade programs. In assessing the adequacy of representation by an existing party, courts consider whether: (1) "the interest of a present party is such that it will undoubtedly make all the intervenor's arguments"; (2) "the present party is capable and willing to make such arguments"; and (3) "the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect." *City of L.A.*, 288 F.3d at 398 (citing *Nw. Forest Res. Council*, 82 F.3d at 838). Proposed intervenors' "burden . . . in showing inadequate representation is minimal" and is "satisfied" where applicants "demonstrate that representation of their interests [by existing parties] 'may be' inadequate." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (citing *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n.10 (1972)); *see also Gould*, 2015 WL 6951295, at *2 (citing *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823). "The most important factor in determining the adequacy of representation is how the [intervenor's] interest compares with the interests of existing parties." *Arakaki*, 324 F.3d at 1086. "Any doubt as to

UNOPPOSED MOTION TO INTERVENE
Case No. 2:19-cv-02142-WBS-EFB

whether the existing parties will adequately represent the intervenor should be resolved in favor of intervention." *Cal. Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303, 307 (E.D. Cal. 2011) (citing *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993)).

Here, Proposed Intervenors meet the criteria for inadequacy of representation because their interests differ from those of the Defendants. First, it is far from clear that the present Defendants "will undoubtedly make all the intervenor[s'] arguments." *City of L.A.*, 288 F.3d at 398. As noted above, Proposed Intervenors have repeatedly intervened in actions challenging California's GHG regulations. Their experience has been that their arguments have not always fully aligned with those of the State, and indeed Proposed Intervenors have advanced arguments that Defendants have not. Jackson Decl. ¶ 12.

Further, Proposed Intervenors will add necessary elements to the proceedings that might otherwise be neglected. *Arakaki*, 324 F.3d at 1086. A proposed intervenor "offers a necessary element to the proceedings" if they have "expertise apart from that" of the current parties or "a perspective which differs materially from that of the present parties." *Sagebrush Rebellion*, 713 F.2d at 528; *see also Cal. Trucking Ass'n v. Becerra*, No. 318CV02458BENBLM, 2019 WL 202313, at *4 (S.D. Cal. Jan. 14, 2019). Here, EDF and NRDC both have substantial "expertise apart from that" of the present parties, and a materially different perspective on the issues at stake in the case. For example, given their work in other states, Proposed Intervenors can present the perspective of smaller states on the role of linked carbon markets that may not be shared by the State of California. Jackson Decl. ¶¶ 15-16; Fine Decl. ¶ 13.

Proposed Intervenors have developed expertise during their longstanding advocacy during the design of California's cap-and-trade program and in the development of other similar programs.[1] Jackson Decl. ¶¶ 6-10, 13-16; Fine Decl. ¶¶ 9-10. Proposed Intervenors employ in-house attorneys, economists, and scientists who have considerable expertise in the design and implementation of cap-and-trade systems for GHG regulation generally and California's program in particular, as well as technical knowledge about the coordination of emissions trading markets.

---

[1] EDF was an early advocate for market-based regulatory tools like cap-and-trade. It was involved in the development of the trading program for sulfur dioxide—the source of acid rain—adopted as part of the 1990 federal Clean Air Act amendments. *See* Fine Decl. ¶ 12; *see also* 42 U.S.C. §§ 7651-7651o.

Proposed intervenors typically need only show that representation by existing parties "may be" inadequate, and this burden is generally "minimal." *Arakaki*, 324 F.3d at 1086. However, "[i]f an applicant for intervention and an existing party share the same ultimate objective, a presumption of adequacy of representation arises" and a "compelling showing" of inadequacy is required to rebut it. *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011). Nevertheless, the intervenor may overcome this presumption by showing that the parties "do not have sufficiently congruent interests" despite sharing an ultimate objective. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823; *see also Cal. Dump Truck Owners Ass'n*, 275 F.R.D. at 308. Where an applicant seeks to intervene as a defendant, courts have found inadequate representation if the proposed intervenor's interest is "broader" than that of the defendant. *See, e.g., Abdurahman v. Alltran Fin., LP*, 330 F.R.D. 276, 283 (S.D. Cal. 2018) (proposed intervenor bank might be inadequately represented by defendant debt collector, because applicant's interest was "broader" than defendant's interest); *CEP Emery Tech Inv'rs LLC v. JPMorgan Chase Bank, N.A.*, No. 09-04409 SBA, 2010 WL 1460263, at *4–5 (N.D. Cal. Apr. 12, 2010) (proposed intervenor FDIC might be inadequately represented by defendant bank because applicant's interest was "broader").

A presumption of adequacy also applies where the government is a party, "is acting on behalf of a constituency that it represents," and the proposed intervenor is a member of that constituency. *Arakaki*, 324 F.3d at 1086; *City of L.A.*, 288 F.3d at 401. This presumption is overcome when the scope of the proposed intervenor's interest differs from that of the government party. Even where "both entities occupy the same posture in the litigation," the presumption may be overcome because "the government's representation of the public interest may not be identical" to the interest of a proposed intervenor. *Citizens for Balanced Use*, 647 F.3d at 899; *see also Gould*, 2015 WL 6951295, at *2. As relevant here, courts have found inadequate representation where the proposed intervenor's interests are broader than those of a government defendant.[2] *Cascadia Wildlands v. Kitzhaber*, No. 3:12-CV-00961-

---

[2] Courts have also upheld intervention because the intervenor's interest was narrower than that of the government party. *See, e.g., Californians For Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1189–90 (9th Cir. 1998); *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995), *overruled in part on other grounds by Wilderness Soc'y*, 630 F.3d 1173.

11

AA, 2012 WL 13055400, at *2–3 (D. Or. Aug. 29, 2012) (proposed intervenor might be inadequately represented by defendant state, even if it had "same ultimate objective," because applicant had "broader interest" than government defendant).

Proposed Intervenors here overcome these presumptions. As an initial matter, the presumption based on government representation of constituents does not apply because Proposed Intervenors are national organizations that represent hundreds of thousands of members outside California, including abroad. Jackson Decl. ¶ 3; Fine Decl. ¶ 2. Indeed, although they have staff and offices in California, neither organization is headquartered here. Jackson Decl. ¶ 3; Fine Decl. ¶ 2. Neither the organizations, nor their members outside California, are "constituents" of the State.

For the same reason, Proposed Intervenors' interests are "not sufficiently congruent" with the State's interests. *Sw. Ctr. for Biological Diversity,* 268 F.3d at 823. Their interests in promoting subnational cooperation are broader than those of the State of California or the work of Western Climate Initiative, Inc. Proposed Intervenors engage in advocacy work throughout the United States, promoting GHG emissions regulation at the state, regional, and national level. Intervenors thus have an interest in preserving the ability of jurisdictions beyond California to develop viable cap-and-trade programs and develop coordinated emissions-trading markets. In addition to supporting the development of California's cooperation with Quebec, Intervenors also advocate for the expansion of the Regional Greenhouse Gas Initiative ("RGGI"), an interstate emissions trading market in the northeastern United States. Jackson Decl. ¶ 15; Fine Decl. ¶ 13.

In addition, Proposed Intervenors' interest in promoting international coordination of cap-and-trade programs is broader than those of the State of California or the Western Climate Initiative, Inc. Both EDF and NRDC have a significant international presence and advocate for GHG regulation in Canada and other countries. NRDC maintains an office in China, and EDF has offices in China, England, Mexico and Indonesia. NRDC is extensively involved in environmental advocacy work throughout Canada, including in Quebec. *See* NRDC, *Canada,* <https://www.nrdc.org/canada> (last visited December 20, 2019). EDF and NRDC advocate for the expansion and interjurisdictional coordination of cap-and-trade emissions regulation in other Canadian provinces beyond Quebec (such as

UNOPPOSED MOTION TO INTERVENE
Case No. 2:19-cv-02142-WBS-EFB

Ontario, which briefly linked to the California and Quebec emissions trading markets in 2018) and in other countries around the world. Jackson Decl. ¶ 10, 15; Fine Decl. ¶ 12.

In short, although Proposed Intervenors may share Defendants' "ultimate objective" of defending the coordination of California's and Quebec's carbon markets, Proposed Intervenors' broad interests encompass impacts on their members in other states beyond California and their work in other states and countries. These broad interests are not fully congruent with those of the existing Defendants and are sufficient to overcome any presumption of adequate representation.

## II. The Court should allow permissive intervention.

Even if the Court concludes that Proposed Intervenors have not demonstrated entitlement to intervene as of right, it should allow them to intervene because they meet the criteria for permissive intervention under Rule 24(b).

### A. Proposed Intervenors meet the threshold criteria for permissive intervention.

Under Rule 24(b), the Court "may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law of fact." Fed. R. Civ. P. 24(b). The motion to intervene must also be timely, and the Court must have an independent ground for jurisdiction. *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011); *see also Pac. Shipping Ass'n*, 2007 WL 1080789, at *1; *Missouri v. Harris*, No. 2:14-CV-00341-KJM-KJ, 2014 WL 2506606, at *4 (E.D. Cal. June 3, 2014). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). That the existing parties to the action do not oppose intervention indicates a lack of prejudice and weighs in favor of intervention. *See, e.g.*, *Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989) (citing *Cal. ex rel. State Lands Comm'n v. United States*, 805 F.2d 857, 865–66 (9th Cir.1986), *aff'd sub nom. Venegas v. Mitchell*, 495 U.S. 82 (1990)); *Ctr. for Biological Diversity v. U.S. Army Corps of Eng'rs*, No. CV 03-29-M-DWM, 2006 WL 8435850, at *2 (D. Mont. July 31, 2006) (finding permissive intervention appropriate in part because "prejudice is not a factor," since "Plaintiff and Defendant do not oppose the motions"); *Gould*, 2015 WL 6951295, at *2.

Proposed Intervenors readily meet the threshold criteria for permissive intervention: jurisdiction, timeliness, and common question of law or fact. *See Freedom from Religion Found.*, 644 F.3d at 843.

13

First, this Court has jurisdiction, as Proposed Intervenors merely assert new defenses to the same federal claims already asserted by a federal plaintiff. *See* 28 U.S.C. §§ 1331, 1345. Second, as described above, this motion is timely, as the proceedings are still at an early stage and defendants have not yet answered the complaint. Moreover, the existing parties have stated that they will not oppose the motion. Zinn Decl. ¶¶ 3-5 & Ex. 1. Thus, allowing intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). *See supra* Section I.A. Third, Proposed Intervenors' defenses share common questions of law and fact with the main action. Indeed, they are based on the same facts and relate directly and solely to the question before the Court: whether California's coordination of its cap-and-trade program with Quebec is unconstitutional. This relationship between Proposed Intervenors' defenses and the main action suffices for finding a common question of law or fact. *See Venegas,* 867 F.2d at 529-30 (overturning denial of permissive intervention when there was a clear relationship between intervenor's claims and existing case).

## B.    Other discretionary factors weigh in favor of allowing intervention.

In addition to the three threshold criteria for permissive intervention, the court "may also consider other factors. . . . including the nature and extent of the intervenors' interest and whether the intervenors' interests are adequately represented by other parties." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 955 (9th Cir. 2009); *see also Venegas*, 867 F.2d at 530; *Furia v. McGrew*, No. 219CV00942JAMKJN, 2019 WL 6321202, at *1 (E.D. Cal. Nov. 26, 2019); *Harris*, 2014 WL 2506606, at *7–8 (granting permissive intervention where applicant's interests are "germane" to the action and because applicant "will bring a unique perspective . . . . that will enable the court to make a well informed decision"). However, the movant need not show a "legally protectable interest" for permissive intervention. *Emp. Staffing Servs., Inc. v. Aubry*, 20 F.3d 1038, 1042 (9th Cir. 1994). Where the criteria of Rule 24(b) are satisfied, adequacy of representation should not be determinative. *See Harris*, 2014 WL 2506606, at *7–8 ("[T]he question here is not…whether [existing parties] will adequately represent [proposed intervenor's] interests, but rather whether [applicant] satisfies the requirements under Rule 24(b).").

Here, the same factors that entitle EDF and NRDC to intervention as of right also weigh strongly in favor of permissive intervention. As discussed above, Proposed Intervenors have significant interests

14

in protecting California's cap-and-trade program and preserving the ability of jurisdictions beyond California to cooperate in achieving emission reductions through coordinated cap-and-trade programs, which may be impaired if they are not permitted to intervene in this suit. Moreover, as discussed, Proposed Intervenors' interests are not adequately represented by existing parties, as their interests are broader than those of the Defendants. Further, Proposed Intervenors both have "expertise apart from that" of the present parties and a materially different perspective on the issues at stake in the case. *Sagebrush Rebellion,* 713 F.2d at 528. Drawing on their substantial expertise in cap-and-trade emissions regulation and their materially different perspectives from working with jurisdictions outside California, Proposed Intervenors will "significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977).

## CONCLUSION

For the foregoing reasons, the Court should grant this unopposed motion. The Court should allow Proposed Intervenors to intervene as a matter of right under Rule 24(a). Alternatively, the Court should permit them to intervene under Rule 24(b).

DATED:  December 23, 2019          SHUTE, MIHALY & WEINBERGER LLP


                                   By:      /s/ Matthew D. Zinn
                                        MATTHEW D. ZINN

                                        Attorneys for [Proposed] Defendant-Intervenors
                                        ENVIRONMENTAL DEFENSE FUND and
                                        NATURAL RESOURCES DEFENSE COUNCIL

UNOPPOSED MOTION TO INTERVENE
Case No. 2:19-cv-02142-WBS-EFB