1    XAVIER BECERRA
     Attorney General of California
2    MICHAEL P. CAYABAN
     Supervising Deputy Attorney General
3    PHILLIP M. HOOS, SBN 288019
     MICHAEL S. DORSI, SBN 281865
4    M. ELAINE MECKENSTOCK, SBN 268861
     Deputy Attorneys General
5      1515 Clay Street, 20th Floor
     Oakland, CA 94612-1492
6      Telephone: (510) 879-0299
     Fax: (510) 622-2270
7      E-mail: Elaine.Meckenstock@doj.ca.gov
     *Attorneys for State Defendants[1]*

8

DELFINO, MADDEN, O'MALLEY, COYLE &
KOEWLER LLP
MONICA HANS FOLSOM, SBN 227379
KRISTIN IVANCO, SBN 294993
   500 Capitol Mall, Suite 1550
   Sacramento, CA 95814
   Telephone: (916) 661-5700
   Fax: (916) 661-5701
   E-mail: mfolsom@delfinomadden.com
          kivanco@delfinomadden.com
*Attorneys for WCI, Inc. Defendants[2]*

9              IN THE UNITED STATES DISTRICT COURT

10           FOR THE EASTERN DISTRICT OF CALIFORNIA

---

THE UNITED STATES OF AMERICA,

                    Plaintiff,

     v.

THE STATE OF CALIFORNIA; GAVIN C.
NEWSOM, in his official capacity as
Governor of the State of California; THE
CALIFORNIA AIR RESOURCES BOARD;
MARY D. NICHOLS, in her official capacity
as Chair of the California Air Resources Board
and as Vice Chair and a board member of the
Western Climate Initiative, Inc.; WESTERN
CLIMATE INITIATIVE, INC.; JARED
BLUMENFELD, in his official capacity as
Secretary for Environmental Protection and as
a board member of the Western Climate
Initiative, Inc.; KIP LIPPER, in his official
capacity as a board member of the Western
Climate Initiative, Inc., and RICHARD
BLOOM, in his official capacity as a board
member of the Western Climate Initiative, Inc.,

                 Defendants.

2:19-cv-02142-WBS-EFB

**NOTICE OF MOTION AND MOTION
TO DISMISS BY THE WCI, INC.
DEFENDANTS AND DEFENDANT
BLUMENFELD IN HIS OFFICIAL
CAPACITY AS SECRETARY FOR
ENVIRONMENTAL PROTECTION**

[Fed. Rules of Civ. Proc., Rules 12(b)(1) and
12(b)(6)]

Date:         February 10, 2020
Time:         1:30 PM
Courtroom:   5
Judge:       Hon. William B. Shubb
Trial Date:    Not Set
Action Filed:   October 23, 2019

---

[1] The State Defendants are State of California; Gavin C. Newsom, in his official capacity as Governor of the State of California; the California Air Resources Board; Mary D. Nichols, in her official capacity as Chair of the California Air Resources Board; and Jared Blumenfeld, in his official capacity as Secretary for Environmental Protection.

[2] The WCI Defendants are the Western Climate Initiative, Inc. ("WCI, Inc."), Mary D. Nichols, in her official capacity as Vice Chair and a board member of WCI, Inc., and Jared Blumenfeld, Kip Lipper, and Richard Bloom, in their official capacities as board members of WCI, Inc.

1

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that, on February 10, 2020, or as soon thereafter as the matter

3    may be heard, in Courtroom 5 of the Robert T. Matsui Courthouse at 501 I Street, Sacramento

4    CA, the Defendants the Western Climate Initiative, Inc. (WCI, Inc.), WCI, Inc.'s officer and

5    board members named in those capacities (Mary Nichols, Jared Blumenfeld, Kip Lipper and

6    Richard Bloom), and Jared Blumenfeld in his official capacity as Secretary for Environmental

7    Protection will and hereby do respectfully jointly and severally move this Court to dismiss them,

8    with prejudice, from this case.

9    This Motion to Dismiss is brought pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal

10   Rules of Civil Procedure on the grounds that Plaintiff lacks standing to sue these Defendants and

11   that Plaintiff has not pleaded, and cannot plead, a claim upon which relief against these

12   Defendants could be granted.

13   This Motion to Dismiss is based on this Notice of Motion and Motion, the accompanying

14   Memorandum of Points and Authorities, Defendants' Request for Judicial Notice, and the

15   pleadings and papers on file herein, and such other matters as may be presented to the Court at the

16   time of the hearing.

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28

2

1    Dated:  January 6, 2020                    Respectfully submitted,

2                                               XAVIER BECERRA
                                                Attorney General of California
3                                               MICHAEL P. CAYABAN
                                                Supervising Deputy Attorney General
4

5                                               /s/ M. Elaine Meckenstock
                                                M. ELAINE MECKENSTOCK
6                                               Deputy Attorney General
                                                Attorneys for State Defendants
7

8
                                                DELFINO, MADDEN, O'MALLEY, COYLE &
9                                               KOEWLER LLP

10                                              /s/ Monica Hans Folsom (as authorized on
                                                January 6, 2020)
11                                              MONICA HANS FOLSOM
                                                Attorneys for WCI, Inc. Defendants
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS  (2:19-cv-02142-WBS-EFB)

| | |
|---|---|
| XAVIER BECERRA<br>Attorney General of California<br>MICHAEL P. CAYABAN<br>Supervising Deputy Attorney General<br>MICHAEL S. DORSI, SBN 281865<br>RYAN R. HOFFMAN, SBN 283297<br>PHILLIP M. HOOS, SBN 288019<br>M. ELAINE MECKENSTOCK, SBN 268861<br>Deputy Attorneys General<br>  1515 Clay Street, 20th Floor<br>  Oakland, CA 94612-1492<br>  Telephone: (510) 879-0299<br>  Fax: (510) 622-2270<br>  E-mail: Elaine.Meckenstock@doj.ca.gov<br>*Attorneys for State Defendants*[1] | DELFINO, MADDEN, O'MALLEY, COYLE &<br>KOEWLER LLP<br>MONICA HANS FOLSOM, SBN 227379<br>KRISTIN IVANCO, SBN. 294993<br>  500 Capitol Mall, Suite 1550<br>  Sacramento, CA 95814<br>  Telephone: (916) 661-5700<br>  Fax: (916) 661-5701<br>  E-mail: mfolsom@delfinomadden.com<br>    kivanco@delfinomadden.com<br>*Attorneys for WCI, Inc. Defendants*[2] |

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>                                      Plaintiff,<br><br>       v.<br><br>THE STATE OF CALIFORNIA; GAVIN C. NEWSOM, in his official capacity as Governor of the State of California; THE CALIFORNIA AIR RESOURCES BOARD; MARY D. NICHOLS, in her official capacity as Chair of the California Air Resources Board and as Vice Chair and a board member of the Western Climate Initiative, Inc.; WESTERN CLIMATE INITIATIVE, INC.; JARED BLUMENFELD, in his official capacity as Secretary for Environmental Protection and as a board member of the Western Climate Initiative, Inc.; KIP LIPPER, in his official capacity as a board member of the Western Climate Initiative, Inc., and RICHARD BLOOM, in his official capacity as a board member of the Western Climate Initiative, Inc.,<br><br>                                      Defendants. | 2:19-cv-02142-WBS-EFB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS BY THE WCI, INC. DEFENDANTS AND DEFENDANT BLUMENFELD IN HIS OFFICIAL CAPACITY AS SECRETARY FOR ENVIRONMENTAL PROTECTION**<br><br>[Fed. Rules of Civ. Proc. 12(b)(1), (b)(6)]<br><br>Date:            February 10, 2020<br>Time:            1:30 PM<br>Courtroom:   5<br>Judge:           Honorable William Shubb<br>Trial Date:    Not Set<br>Action Filed:  10/23/2019 |

---

[1] The State Defendants are State of California; Gavin C. Newsom, in his official capacity as Governor of the State of California; the California Air Resources Board; Mary D. Nichols, in her official capacity as Chair of the California Air Resources Board; and Jared Blumenfeld, in his official capacity as Secretary for Environmental Protection.

[2] The WCI, Inc. Defendants are the Western Climate Initiative, Inc. ("WCI, Inc."), Mary D. Nichols, in her official capacity as Vice Chair and a board member of WCI, Inc., and Jared Blumenfeld, Kip Lipper, and Richard Bloom, in their official capacities as board members of WCI, Inc.

1

**TABLE OF CONTENTS**

2

**Page**

3

INTRODUCTION ...................................................................................................... 1

4

BACKGROUND ........................................................................................................ 2

5

      A.    How Cap-and-Trade Programs, Including California's, Work ................. 2

6

      B.    California's Cap-and-Trade Program's Linkage to Quebec's Program and the Resulting Market Expansion ........................................ 4

7

      C.    Western Climate Initiative, Inc. ............................................................. 5

      D.    Procedural History ................................................................................. 6

8

LEGAL STANDARD ................................................................................................ 7

9

ARGUMENT .............................................................................................................. 8

    I.    The Claims against the WCI, Inc. Defendants Should Be Dismissed ................... 8

10

11

      A.    Plaintiff Lacks Standing to Sue the WCI, Inc. Defendants Because It Has Not Alleged that They Caused Plaintiff Any Injuries or that a Judgment against Them Would Provide Redress....................................... 8

12

      B.    Plaintiff Cannot State a Valid Claim against the WCI, Inc. Defendants ........................................................................................... 10

13

14

            1.    Plaintiff Cannot State a Valid Treaty or Compact Clause Claim against the WCI, Inc. Defendants....................................... 11

15

            2.    Plaintiff Cannot State a Valid Foreign Affairs Preemption or Dormant Foreign Commerce Clause Claim against the WCI, Inc. Defendants ............................................................... 13

16

17

      C.    Plaintiff's Claims against the WCI, Inc. Defendants Are Not Saved by the Conclusory and Unsupported Allegation that WCI, Inc. Is a "State Actor" ........................................................................................ 15

18

    II.    At a Minimum, the WCI, Inc. Board Members Should Be Dismissed................. 18

19

    III.    Jared Blumenfeld Should Be Dismissed in his Official Capacity as Secretary for Environmental Protection................................................................ 20

20

CONCLUSION ......................................................................................................... 22

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

*Ashcroft v. Iqbal*
556 U.S. 662 (2009)...............................................................................12, 21

5

6

*Austin v. Univ. of Oregon*
925 F.3d 1133 (9th Cir. 2019)..............................................................11, 13

7

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007)........................................................................7, 18, 21

8

9

*Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*
531 U.S. 288 (2001)...............................................................................16, 17

10

11

*Cal. Chamber of Commerce v. State Air Res. Bd.*
10 Cal. App. 5th 604 (2017) .........................................................................22

12

*Chandler v. State Farm Mut. Auto. Ins. Co.*
598 F.3d 1115 (9th Cir. 2010)........................................................................7

13

14

*E.V. v. Robinson*
906 F.3d 1082 (9th Cir. 2018).................................................................13, 16

15

16

*Easter v. Am. W. Fin.*
381 F.3d 948 (9th Cir. 2004)...............................................................8, 10, 20

17

18

*Golden Gate Transactional Independent Service, Inc. v. California*
2019 WL 4222452 (C.D. Cal. May 1, 2019) .................................................10, 20

19

20

*Hall v. Am. Nat. Red Cross*
86 F.3d 919 (9th Cir. 1996)........................................................................15

21

*Hall v. Norton*
266 F.3d 969 (9th Cir. 2001)......................................................................10

22

23

*In re Carrier IQ, Inc.*
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .........................................................10

24

*In re Citigroup Inc. Shareholder Derivative Litigation*
964 A.2d 106 (Del. 2009) .........................................................................19

25

*In re Gilead Sciences Securities Litigation*
536 F.3d. 1049 (9th Cir. 2008)......................................................................7

26

27

*Kirtley v. Rainey*
326 F.3d 1088 (9th Cir. 2003).....................................................................16

28

ii

## TABLE OF AUTHORITIES
### (continued)

Page

*Lee v. Katz*
   276 F.3d 550 (9th Cir. 2002)....................................................................................15

*Lujan v. Defenders of Wildlife*
   504 U.S. 555 (1992).................................................................................................8

*Naoko Ohno v. Yuko Yasuma*
   723 F.3d 984 (9th Cir. 2013)...................................................................................15

*National Collegiate Athletic Ass'n v. Tarkanian*
   488 U.S. 179 (1988).................................................................................................16

*Ochoa v. Serv. Employees Int'l Union Local 775*
   No. 2:18-CV-0297-TOR, 2019 WL 1601361 (E.D. Wash. Apr. 15, 2019)..............18

*Our Children's Earth Found. v. State Air Res. Bd.*
   234 Cal. App. 4th 870 (2015) ..................................................................................22

*Pryer v. Character Judy*
   No. CIVS09-2895, 2010 WL 1660242 (E.D. Cal. Apr. 23, 2010) ...................12, 20

*Rendell-Baker v. Kohn*
   457 U.S. 830 (1982).................................................................................................18

*Roberts v. AT&T Mobility LLC*
   877 F.3d 833 (9th Cir. 2017)...................................................................................15

*Sacks v. Office of Foreign Assets Control*
   466 F.3d 764 (9th Cir. 2006)..............................................................................19, 20

*Safe Air for Everyone v. Meyer*
   373 F.3d 1035 (9th Cir. 2004)..................................................................................7

*Schmier v. U.S. Court of Appeals for Ninth Circuit*
   279 F.3d 817 (2002).................................................................................................21

*Shroyer v. New Cingular Wireless Servs., Inc.*
   622 F.3d 1035 (9th Cir. 2010)..................................................................................14

*Simon v. E. Kentucky Welfare Rights Org.*
   426 U.S. 26 (1976)...................................................................................................10

*Simpson v. Hite*
   36 Cal. 2d 125 (1950) ..............................................................................................15

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Sutton v. Providence St. Joseph Med. Ctr.*
    192 F.3d 826 (9th Cir. 1999)...........................................................................15

*United States v. Ritchie*
    342 F.3d 903 (9th Cir. 2003).........................................................................2, 12

*Woods v. U.S. Bank N.A.*
    831 F.3d 1159 (9th Cir. 2016).............................................................................7

### STATUTES

42 U.S.C. §§ 14501-14505.......................................................................................19

Cal. Code Regs., Title 17
    § 95801.............................................................................................................3
    § 95802(a).........................................................................................................3
    § 95821.............................................................................................................3
    § 95841.............................................................................................................3
    § 95850(b).........................................................................................................3
    § 95851(b).........................................................................................................3
    § 95854.............................................................................................................3
    § 95856(a).........................................................................................................3
    § 95856(f).........................................................................................................9
    § 95856(g).....................................................................................................9, 14
    § 95910.............................................................................................................3
    § 95911.............................................................................................................4
    § 95940.....................................................................................................4, 5, 6
    § 95941.............................................................................................................9
    § 95943(a).......................................................................................................6, 9
    § 95943(a)(1)....................................................................................................5
    § 95943(a)(2)....................................................................................................5
    § 95945.............................................................................................................4
    § 96014.............................................................................................................9
    § 96022.............................................................................................................3

Cal. Gov. Code
    § 12800...........................................................................................................21
    § 12812...........................................................................................................21
    § 12812.6........................................................................................................21
    § 12850.6........................................................................................................21
    § 12894(f).......................................................................................................14

MEMO. OF POINTS & AUTHORITIES IN SUPP. OF MOTION TO DISMISS (2:19-cv-02142-WBS-EFB)

## TABLE OF AUTHORITIES
### (continued)

Page

Cal. Health & Safety Code
    § 38505(l) ............................................................................................22
    § 38560 ..............................................................................................22
    § 38562(c)(2) ......................................................................................22
    § 39510(g) ..........................................................................................22

Del. Code Title 8
    § 122(2) (2020) ..................................................................................19

**CONSTITUTIONAL PROVISIONS**

U.S. Const., Article I, § 10, cl. 1 .......................................................11, 15

U.S. Const., Article I, § 10, cl. 3 .......................................................11, 15

U.S. Constit. Article IV, § 4.2 (a) ............................................................16

**COURT RULES**

Fed. R. Civ. P.
    12(b)(1) ....................................................................7, 10, 19, 20
    12(b)(6) ......................................................................... *passim*
    17(b)(2) ..............................................................................19
    21 ......................................................................................20
    65(d) ..................................................................................10
    65(d)(2)(C) ........................................................................20

**OTHER AUTHORITIES**

http://westernclimateinitiative.org/ .............................................................5

**INTRODUCTION**

The United States (Plaintiff) challenges the California Air Resources Board's decision to link its cap-and-trade program to a similar program adopted independently by the Canadian province of Quebec.  Under California's cap-and-trade program, regulated entities must acquire and surrender tradeable compliance instruments sufficient to cover their greenhouse gas emissions.  The linkage between the California and Quebec programs simply allows regulated parties to acquire and surrender instruments from either program, expanding the markets for trading these instruments and providing regulated entities increased opportunities to reduce the costs of compliance.  The linkage does not otherwise alter compliance obligations under either program and does not change the level of emissions reductions required under either program.  Despite this limited scope, Plaintiff alleges that the linkage between the two programs is unconstitutional.  Specifically, Plaintiff claims that an agreement between California and Quebec related to the linkage of the two programs is an unconstitutional Treaty or Compact under Article I of the Constitution.  Plaintiff also claims that this agreement, and the provisions of California law that effectuate the linkage, are preempted under the foreign affairs doctrine and violate the dormant Foreign Commerce Clause.

Although the linkage of California's cap-and-trade program with Quebec's is effectuated through regulations adopted and enforced exclusively by Defendant California Air Resources Board (CARB), Plaintiff has sued numerous other Defendants.  This motion seeks to dismiss those Defendants that do not implement or enforce those regulations and are not parties to the challenged agreement between California and Quebec—namely, the Western Climate Initiative, Inc. (WCI, Inc.), a private, non-profit corporation; the WCI, Inc. officer and board members named in those capacities (Mary Nichols, Jared Blumenfeld, Kip Lipper, and Richard Bloom); and the Secretary for Environmental Protection for California, Jared Blumenfeld, who is also named in that official capacity.

WCI, Inc. provides technical and administrative support services to CARB under a contract and for remuneration.  WCI, Inc. and its board members do not control whether California and Quebec's cap-and-trade programs are linked, are not parties to the agreement Plaintiff claims is

1   an unconstitutional Treaty or Compact, and do not adopt or enforce laws that could violate the

2   Supremacy or dormant Foreign Commerce Clauses of the Constitution.  Accordingly, all of the

3   WCI, Inc. Defendants—WCI, Inc. and its named board members—should be dismissed because

4   Plaintiff has no standing to sue them and cannot state a claim against them.

5        Even if Plaintiff somehow had standing to sue, and could state a claim against, the entity

6   WCI, Inc., the WCI, Inc. board members should still be dismissed because the amended

7   complaint does not connect these board members in their capacities as such to any allegedly

8   wrongful acts, or, indeed, offer any clue why it names *non-voting* board members as defendants.

9   The board members are neither proper nor necessary parties.

10        Finally, the Secretary of Environmental Protection should be dismissed in his official

11   capacity because Plaintiff cannot allege facts showing his involvement in that capacity.

12   **BACKGROUND**

13   **A.    How Cap-and-Trade Programs, Including California's, Work**

14        As the United States Environmental Protection Agency (EPA) recognized in 2003,

15   "governments are increasingly using market-based pollution control approaches, such as emission

16   trading, to reduce harmful emissions."  Defendants' Request for Judicial Notice (RJN), Exh. A at

17   1-1.[3]  Cap-and-trade programs are one type of market-based program.  *Id.*  Cap-and-trade

18   programs control emissions through the setting of "an aggregate emission cap that specifies the

19   maximum quantity of emissions authorized from sources included in the program."  *Id.* at 1-1, 1-

20   2.  The implementing agency then issues tradeable compliance instruments, often called

21   "allowances."  *Id.* at 1-2.  Each of these allowances represents authorization "to emit a specific

22   quantity (e.g., 1 ton) of a pollutant," and regulated entities "must surrender allowances equal to

23   [their] actual emissions."  *Id.*  To ensure emissions do not exceed the cap, "[t]he total number of

24   allowances equals the level of the cap."  *Id.*

25

26        [3] Judicially noticeable materials are cognizable on a motion to dismiss, without
transforming it into a motion for summary judgment.  *E.g.*, *United States v. Ritchie*, 342 F.3d 903,

27   908 (9th Cir. 2003).  In any event, references to these materials are intended simply to aid the
Court in understanding the background of this case not as necessary bases for deciding the

28   questions presented in this motion.

2

1    Because allowances may be traded, regulated entities with inexpensive ways to "reduce

2    their emissions" may sell "excess allowances," while other entities may choose to purchase

3    allowances when the cost of doing so "is lower than the cost to reduce a unit of pollution at their

4    facility."  *Id.* at 1-3.  In this way, each regulated entity has the flexibility to "design its own

5    compliance strategy," using whatever combination of "emission reductions and allowance

6    purchases or sales … minimize[s] its compliance cost."  *Id.* at 1-2.

7    California's cap-and-trade program for greenhouse gas emissions, adopted in 2011 by

8    CARB, follows this basic structure.  *See* Cal. Code Regs., tit. 17, §§ 95801 to 96022.  CARB

9    establishes yearly caps, called "budgets," for the total greenhouse gas emissions of all regulated

10   sources (called "covered entities").  *Id.* §§ 95841, 95802(a).  The emission budgets decline each

11   year in order to require emission reductions from covered entities.  *See id.* § 95841.[4]  CARB

12   issues allowances—"authorization[s] to emit up to one metric ton of carbon dioxide equivalent"

13   greenhouse gases—in quantities equal to the emissions budget for a given year.  *Id.* §§ 95802(a),

14   95820(a)(1).  The majority are made available through quarterly auctions.  *See id.* § 95910.

15   Covered entities are required to acquire and surrender allowances or other eligible compliance

16   instruments equivalent to the metric tons of greenhouse gases they emit.  *Id.* §§ 95850(b),

17   95856(a).[5]  The declining cap (i.e., decreasing annual allowance budget), combined with an

18   increasing price signal established by the auctions, ensure that statewide emissions are reduced.

19   The market, in turn, ensures that these reductions are achieved efficiently and cost-effectively.

20

21

22

23          [4] The budget set by CARB in 2015 was actually larger than the 2014 budget, but this
     enlargement did not indicate an increase in emissions.  Rather, it reflected expansion of the
24   program to include suppliers of natural gas and transportation fuels in the program (and the
     budget) beginning in 2015.  *See* Cal. Code of Regs., tit. 17, §§ 95841, 95851(b).
25          [5] Covered entities may surrender "offsets" for a small portion (four to eight percent) of
     their compliance obligation.  Cal. Code of Regs., tit. 17, §§ 95821, 95854.  Like an allowance, an
26   "offset" authorizes a metric ton of emissions, but, unlike an allowance, an offset corresponds to
     emissions reductions by a source not covered by the program.  *See* Cal. Code Regs., tit. 17, §
27   95802(a).  In essence, an offset is a mechanism that allows a covered entity to pay a non-covered
     entity to reduce or remove emissions. Because the use of offsets is limited under California's
28   program, and for purposes of brevity and simplicity, the discussion here focuses on allowances.

3

**B.    California's Cap-and-Trade Program's Linkage to Quebec's Program and the Resulting Market Expansion**

As noted above, cap-and-trade programs utilize markets—specifically, the trade in allowances and other compliance instruments—to increase flexibility for regulated parties, permitting them to design and implement the most cost-effective compliance strategies for their individual businesses.  This flexibility generally increases as the number of regulated sources increases and the trading markets expand, thereby making available more lower-cost opportunities to abate emissions.  *See* RJN, Exh. A at 2-2 to 2-3.

Recognizing the economic benefits of expanded trading markets, CARB designed California's cap-and-trade program so that it could be linked to similar programs in other jurisdictions.  *See* Cal. Code Regs., tit. 17, § 95940.  When effectuated, this linkage simply means that CARB accepts the allowances (or other compliance instruments) issued by the other jurisdiction as essentially equivalent to CARB-issued allowances and that CARB may conduct coordinated allowance auctions with the other jurisdiction.  *Id.*; *see also id.* § 95911.  In this way, linkage expands the size of the markets, while ensuring that covered entities in both linked programs continue to reduce emissions under the respective, declining emission caps set by each jurisdiction.  Linkage does not change anything else about California's program, including the level of the State's emissions budget (or cap), the types of businesses in California that have compliance obligations, or the way those compliance obligations are determined.  *See id.* §§ 95940-95945.

In 2013, CARB completed a rulemaking proceeding to link its cap-and-trade program with a similar program developed by Quebec.  *See* Cal. Code Regs., tit. 17, § 95943(a)(1).  Later in 2013, California, by and through the Governor and CARB, and Quebec signed an agreement, reflecting both jurisdictions' intentions to coordinate with respect to the linked programs.  *See* Am. Compl., ¶ 57; *see also* Request for Judicial Notice in Support of Motion to Dismiss (RJN), Exh. F.  By operation of the regulatory amendments CARB adopted, the linkage with Quebec took effect January 1, 2014.  Cal. Code Regs., tit. 17, § 95943(a)(1).  As a result, CARB accepts Quebec-issued compliance instruments for compliance with CARB's cap-and-trade program, and

1   parties regulated under either program may buy and sell allowances and other instruments with

2   each other.  *Id.*; *see also id.* § 95940.

3       In 2017, CARB completed a similar rulemaking proceeding to link its cap-and-trade

4   program with Ontario's.  *See* Cal. Code Regs., tit. 17, § 95943(a)(2).  That linkage took effect on

5   January 1, 2018.  *Id.*  Related to that linkage, the governments of California, Quebec, and Ontario

6   signed an agreement in 2017, again reflecting all three jurisdictions' intentions to increase cost-

7   reduction opportunities and expand trading markets by coordinating their respective programs.

8   Am. Compl., Attachment B (ECF No. 7-2).  That 2017 agreement replaced the 2013 agreement

9   between California and Quebec.  *See id.* at 3.

10      The linkage with Ontario was terminated when a newly elected Ontario government

11  unilaterally unlinked its program.  *See* Cal. Code Regs., tit. 17, § 95943(a)(2).  Although the 2017

12  agreement states that a party intending to withdraw "shall endeavour to give 12 months notice of

13  intent to withdraw," Am. Compl., Attachment B at 11, Ontario did not do so.  The linkage

14  between California's and Quebec's programs remains in effect, despite Ontario's departure.  Cal.

15  Code Regs., tit. 17, § 95943(a)(1).

16      **C.    Western Climate Initiative, Inc.**

17      WCI, Inc. is a non-profit corporation created to provide administrative support and

18  technical services to jurisdictions with cap-and-trade programs.  *See* Am. Compl., ¶ 14;

19  Attachment C (ECF Doc. 7-3) at 3; *see also* RJN, Exh. B at 4.[6]  WCI, Inc.'s Board is comprised

20  of members from the jurisdictions to which it provides services—currently California, Quebec,

21  and Nova Scotia.  RJN, Exh. B at 5-6.  WCI, Inc. provides administrative and technical services

22  to support implementation of participating jurisdictions' cap-and-trade programs, including

23  through a technical platform for joint allowance auctions and a system to track compliance

24  instruments in entity accounts.  *See id.* at 4; *see also* Am. Compl. ¶ 14; Attachment C (ECF Doc.

25  _____

26      [6] WCI, <u>Inc</u>. is distinct from the Western Climate Initiative, a somewhat informal "collaboration of independent jurisdictions working together to identify, evaluate, and implement emissions trading policies to tackle climate change at a regional level" that began in 2007.  *See*

27  <u>http://westernclimateinitiative.org/</u>, *last visited* January 6, 2020.  The jurisdictions then within the Western Climate Initiative established WCI, Inc. as a non-profit corporation in 2011.  *See id.*

28  ("History" section).

7-3) at 1, 3.  WCI, Inc. performs these services for CARB for remuneration under an agreement

(Agreement 11-415).  *Id.*, Attachment C at 1, 3, 5.  WCI, Inc. has no policy-making, regulatory,

or enforcement authority, and plays no role in deciding whether California or Quebec will accept

each other's compliance instruments.  *See id.* (describing services WCI, Inc. provides to CARB);

*see also* Cal. Code of Regs., tit. 17, §§ 95940, 95943(a).

### D.   Procedural History

The United States filed its Complaint on October 23, 2019, alleging that the linkage

between California's cap-and-trade program and Quebec's is unconstitutional.  ECF Doc. 1.  The

Complaint names multiple defendants, including the State of California, CARB, WCI, Inc.,

several California officials in their official capacities, and four members of the WCI, Inc.

Board—two voting members and two non-voting members—in their capacities on that Board.

Two Defendants are named in two capacities:  Mary Nichols and Jared Blumenfeld are both

named in their capacities on WCI, Inc.'s Board and are also named in their official capacities,

respectively, as the Chair of CARB and Secretary for Environmental Protection.[7]

On October 23, 2019, this Court issued a Minute Order setting the initial scheduling

conference for March 2, 2020.  ECF Doc. 3.  On November 19, 2019, the United States filed an

Amended Complaint, adding a number of new factual allegations.  *See* ECF Doc. 7.  That same

day, the parties filed a stipulation and proposed order seeking to set January 6, 2020 as the

deadline for Defendants' responsive pleadings.  ECF Doc. 8.  The Court (Judge Mendez) signed

the proposed order on November 22, 2019.  ECF Doc. 11.

On December 11, 2019, Plaintiff moved for summary judgment on its Treaty Clause and

Compact Clause causes of action.  ECF Doc. 12.  On December 16, 2019, at Defendants' request,

the Court extended the time for Defendants to respond to that motion until February 10, 2020.

---

[7] While Ms. Nichols is referred to throughout this motion as a WCI, Inc. board member, this motion seeks the dismissal of Ms. Nichols as Vice Chair of WCI, Inc., an officer position under its Bylaws, as well as in her capacity as a board member.  Am. Compl. ¶ 13; RJN, Exh. B at 9.  As such, all references to the WCI, Inc. board members include Ms. Nichols in her capacity as Vice Chair of WCI, Inc.

6

1

**LEGAL STANDARD**

2      On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "[t]he Court

3  determines whether Plaintiffs pled 'enough facts to state a claim to relief that is plausible on its

4  face.'" *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016) (quoting *Bell Atl. Corp. v.*

5  *Twombly*, 550 U.S. 544, 547 (2007)).  "[A] plaintiff's obligation … requires more than labels and

6  conclusions, and a formulaic recitation of a cause of action's elements will not do."  *Twombly*,

7  550 U.S. at 545.  Thus, while the Court must generally "accept the plaintiffs' allegations as true

8  and construe them in the light most favorable to plaintiffs," the Court need not "accept as true

9  allegations that contradict matters properly subject to judicial notice" or "allegations that are

10  merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead*

11  *Sciences Securities Litigation*, 536 F.3d. 1049, 1055 (9th Cir. 2008) (internal quotations omitted).

12  "A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by

13  lacking sufficient facts alleged under a cognizable legal theory."  *Woods*, 831 F.3d at 1162.

14      "Because standing … pertain[s] to federal courts' subject matter jurisdiction, [it is] properly

15  raised in a Rule 12(b)(1) motion to dismiss."  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598

16  F.3d 1115, 1122 (9th Cir. 2010).  "The party asserting federal subject matter jurisdiction bears the

17  burden of proving its existence."  *Id.*  "A Rule 12(b)(1) jurisdictional attack may be facial or

18  factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In a facial

19  attack, the challenger asserts that the allegations contained in a complaint are insufficient on their

20  face to invoke federal jurisdiction."  *Id.*  "By contrast, in a factual attack, the challenger disputes

21  the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Id.*

22  "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the

23  complaint without converting the motion to dismiss into a motion for summary judgment," and

24  "[t]he court need not presume the truthfulness of the plaintiff's allegations."  *Id.*

25

26

27

28

7

1

**ARGUMENT**

2

**I.     THE CLAIMS AGAINST THE WCI, INC. DEFENDANTS SHOULD BE DISMISSED**

3

        The WCI, Inc. Defendants—the entity WCI, Inc. and the four named WCI, Inc. board

4

members—should be dismissed without leave to amend because Plaintiff lacks standing to name

5

them as Defendants and, in any event, cannot state a valid claim against them.

6

        **A.     Plaintiff Lacks Standing to Sue the WCI, Inc. Defendants Because It Has
                Not Alleged that They Caused Plaintiff Any Injuries or that a Judgment
                against Them Would Provide Redress**

7

8

        To establish Article III standing, a plaintiff must satisfy three requirements.  *Lujan v.*

9

*Defenders of Wildlife,* 504 U.S. 555, 560 (1992).  First, the plaintiff must show "an invasion of a

10

legally protected interest" constituting an "injury in fact."  *Id.*  "Second, there must be a causal

11

connection between the injury and the conduct complained of."  *Id.*  "Third, it must be 'likely,' as

12

opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"  *Id.*

13

at 561 (internal quotation marks omitted).  A plaintiff must satisfy these requirements for each

14

named defendant.  *Easter v. Am. W. Fin.*, 381 F.3d 948, 961 (9th Cir. 2004).  Plaintiff has not

15

alleged, and cannot allege, facts that could establish the second and third requirements as to the

16

WCI, Inc. Defendants.

17

        Plaintiff cannot satisfy the causation requirement because Plaintiff cannot allege that the

18

WCI, Inc. Defendants commit any of the alleged constitutional violations that purportedly injure

19

Plaintiff.  First, Plaintiff repeatedly asserts that a 2017 agreement between California and Quebec

20

is the cause of its alleged injuries.  Am. Compl., ¶¶ 3, 5, 92, 93, 131-133, 135, 176-177, 183-187.

21

But the WCI, Inc. Defendants did not enter into this agreement, and they are neither signatories

22

nor parties to it.  *Id.*, Attachment B at 14-17 (signatures); 18 (listing parties).[8]  Plaintiff does not,

23

and cannot, allege otherwise.  In fact, Plaintiff alleges the opposite—namely, that "[t]he

24

Agreement is one of political cooperation *between California and Quebec*" and that "[t]he

25

Agreement binds *California* and *Quebec* and memorializes a series of undertakings *between the*

26

        [8] While Mary Nichols did sign the challenged agreement, she did so in her capacity as
the Chair of CARB.  Am. Compl., Attachment B at 15.  Defendants do not move to dismiss Chair
Nichols in that capacity.  Rather, Defendants move to dismiss Ms. Nichols only in her capacity on
WCI, Inc.'s Board and as an officer of WCI, Inc., which are not the capacities in which she
signed the challenged agreement.

27

28

*two jurisdictions*." Am. Compl., ¶¶ 68, 83 (emphasis added, internal quotation marks omitted); *see also id.* ¶¶ 69-70, 79, 82, 90, 95-96, 98-99, 119, 124, 127-130. The WCI, Inc. Defendants are not the cause of any injuries that result from this agreement.

Second, the WCI, Inc. Defendants are not the cause of any injuries Plaintiff alleges result from CARB's decision to accept Quebec-issued instruments as a means of compliance with California's cap-and-trade program. *See, e.g.*, Am. Compl., ¶¶ 61, 73-80, 85, 176. That decision was and is California's to make, and the WCI, Inc. Defendants had, and have, no control over it. *See* Cal. Code of Regs., tit. 17, § 95941 (providing that CARB may approve a linkage after certain conditions are satisfied). In addition, CARB, not WCI, Inc., adopted the regulatory provisions to which Plaintiff objects. *See* Am. Compl., ¶¶ 73-78. And it is CARB, not WCI, Inc., that assesses a regulated party's compliance with California's cap-and-trade program, enforces the requirements of that program, and accepts Quebec-issued instruments. *See* Cal. Code Regs., tit. 17, §§ 95856(f),(g), 96014, 95943(a). The WCI, Inc. Defendants have no control over those activities, or the authorizing regulations or statutes; thus, they do not cause the injuries Plaintiff alleges result from these activities or these regulations. Moreover, while Plaintiff alleges that WCI, Inc. "'provid[es] administrative and technical services to'" California "'to support and facilitate the implementation of [its] cap-and-trade program[],'" Am. Compl., ¶ 136, there is no allegation that these services cause Plaintiff's alleged injuries, much less that these services are unique and could not be provided by another organization or performed by CARB itself. Indeed, Plaintiff has conceded that "WCI could be replaced by another entity." ECF No. 18 at 9:17. Because Plaintiff has failed to allege any causal connection between the constitutional violations it asserts and the conduct of the WCI, Inc. Defendants, Plaintiff cannot establish that the WCI, Inc. Defendants cause any injuries that purportedly flow from the alleged constitutional violations.

Plaintiff similarly cannot establish redressability, the third requirement for standing. The WCI, Inc. Defendants have no control over CARB's decisions regarding whether to accept compliance instruments issued by another jurisdiction or whether to sign or withdraw from agreements. Thus, no order directed at the WCI, Inc. Defendants would require CARB to

9

1    withdraw from the agreement to which Plaintiff objects or prevent CARB from accepting

2    Quebec-issued allowances.  Consequently, no order against the WCI, Inc. Defendants would

3    redress the injuries Plaintiff asserts flow from this conduct.  This is only underscored by the fact

4    that any order against the WCI, Inc. Defendants would not prevent CARB from replacing WCI,

5    Inc. with another vendor.[9]

6         In sum, Plaintiff has not established, and cannot establish, that the WCI, Inc. Defendants

7    engage in any of the alleged constitutional violations that purportedly injure Plaintiff or that a

8    judgment against the WCI, Inc. Defendants would redress such injuries. Plaintiff, thus, lacks

9    standing to sue these Defendants.  *See Easter*, 381 F.3d at 961 (where "plaintiffs have failed to

10   link their causes of action with specific actions of [particular] defendants," the plaintiffs "lack

11   standing to sue" those defendants); *see also Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S.

12   26, 41 (1976) ("[Article III] requires that a federal court act only to redress injury that fairly can

13   be traced to the challenged action of the defendant."); *Hall v. Norton*, 266 F.3d 969, 976–77 (9th

14   Cir. 2001) ("The purpose of the standing doctrine is to ensure that the plaintiff has a concrete

15   dispute with the defendant.").  Accordingly, the Court should dismiss Plaintiff's claims against

16   the WCI, Inc. Defendants under Federal Rule of Civil Procedure 12(b)(1).  *Golden Gate*

17   *Transactional Independent Service, Inc. v. California*, 2019 WL 4222452, at *6 (C.D. Cal. May

18   1, 2019) ("[T]here must exist at least one named plaintiff with Article III standing as to each

19   defendant and each claim."); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1069 (N.D. Cal. 2015)

20   ("to hold each defendant in the case, there must be at least one named plaintiff with standing to

21   sue said defendant").

22        **B.    Plaintiff Cannot State a Valid Claim against the WCI, Inc. Defendants**

23        Even if Plaintiff could establish standing to sue the WCI, Inc. Defendants, those Defendants

24   should still be dismissed because Plaintiff has not stated a valid claim against them.

---

25   [9] Plaintiff's entirely conclusory allegation that WCI, Inc. "is an 'other person[] … in
     active concert or participation … with the other Defendants … and is aiding and abetting the
26   other Defendants' unlawful actions" does not help Plaintiff here.  *See* Am. Compl., ¶ 149.
     Indeed, this allegation implicitly supports dismissal of the WCI, Inc. Defendants because the rule
27   upon which Plaintiff relies in making it, Federal Rule of Civil Procedure 65(d), allows *non-
     parties* who are "in active concert or participation" with parties to be bound by injunctions.  Thus,
28   if Plaintiff's allegation is correct, the WCI, Inc. Defendants need not be parties to this case.

1

**1.     Plaintiff Cannot State a Valid Treaty or Compact Clause Claim
against the WCI, Inc. Defendants**

2

3          In its first and second causes of action, Plaintiff claims that a 2017 agreement signed by

4     CARB, California's Governor, and Quebec is an unconstitutional treaty or compact.  Am.

5     Compl., ¶¶ 159-160; ¶¶ 163-164; *see also id.* ¶ 57 (identifying Attachment B, ECF No. 7-2, as

6     "the Agreement" challenged in the first and second causes of action).  As shown above, however,

7     this agreement is between California and Quebec, and the WCI, Inc. Defendants neither signed

8     the agreement nor caused California to enter into the agreement.  Plaintiff does not, and cannot,

9     allege otherwise.  Moreover, both the Treaty and the Compact Clauses are directed against States,

10    not private actors.  *See* U.S. Const., art. I, § 10, cl. 1 ("No *State* shall enter into any Treaty,

11    Alliance or Confederation .…") (emphasis added); *id.*, art. I, § 10, cl. 3 ("No *State* shall, without

12    the Consent of Congress, … enter into any Agreement or Compact … with a foreign Power .…")

13    (emphasis added).  Thus, Plaintiff cannot state a valid claim under either the Treaty Clause or the

14    Compact Clause against the WCI, Inc. Defendants.

15          It makes no difference that Plaintiff alleges that the parties to the challenged agreement

16    "acknowledge that they are 'participants'" in WCI, Inc. and that WCI, Inc. "'provid[es]

17    administrative and technical services to its participants to support and facilitate the

18    implementation of their cap-and-trade programs.'"  Am. Compl., ¶ 136.  Providing administrative

19    and technical support services to a state agency cannot make a private actor liable under

20    constitutional provisions that prohibit *States* from entering into certain kinds of agreements.   And

21    even if there were some way in which providing support services could subject a private actor to

22    liability under the Treaty or Compact Clause, the Amended Complaint provides no basis for

23    liability here because it does not even specify the services WCI, Inc. provides, let alone connect

24    those services to a violation of the Treaty or Compact Clause.  As a consequence, Plaintiff's

25    conclusory allegation that the WCI, Inc. Defendants provide "administrative and technical

26    services" fails to support even an inference that the services WCI, Inc. provides could establish its

27    liability.  *See, e.g., Austin v. Univ. of Oregon*, 925 F.3d 1133, 1138 (9th Cir. 2019).

28

Further, WCI, Inc.'s 2018 Annual Report does describe the services WCI, Inc. provides, and the nature of these services underscores the absence of any Treaty or Compact Clause liability.[10]   WCI, Inc. has worked with contractors and others to develop and support the "Compliance Instrument Tracking System Service" or "CITSS"—a computer system that "is used to register market participants and track compliance instruments (e.g., emissions allowances and offsets)."  RJN, Exh. E at 1, 3.  In essence, CITSS keeps track of transactions among registered market participants, including who holds allowances and offsets, and in what quantities.  *See id.*  WCI, Inc. also "execut[es] coordinated auctions … of GHG allowances that conform to each jurisdictions' requirements" and, through a contract with another private entity, provides other auction-related services, including "the evaluation and management of financial bid guarantees from auction applicants and qualified bidders through the provision of escrow services for the financial settlement and distribution of proceeds."  *Id.* at 3, 5.  These services may "support and facilitate the implementation" of cap-and-trade programs in WCI, Inc.'s participant jurisdictions, including California and Quebec.  *See* Am. Compl., ¶ 136.  But they cannot make any of the WCI, Inc. Defendants liable for violating the Treaty or Compact Clause's prohibitions against States entering into certain kinds of agreements.

In short, Plaintiff's Treaty and Compact Clause claims against the WCI, Inc. Defendants must be dismissed with prejudice because "Plaintiff has not … explained how any actions by [these] defendant[s] resulted in the deprivation of any constitutional right."  *See Pryer v. Character Judy*, No. CIVS09-2895, 2010 WL 1660242, at *2 (E.D. Cal. Apr. 23, 2010); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

---

[10] This Court may consider this Annual Report on this motion to dismiss both because Plaintiff's complaint references it, Am. Compl., ¶ 151, and because it is judicially noticeable. *E.g.*, *Ritchie*, 342 F.3d at 908.

12

1

### 2.     Plaintiff Cannot State a Valid Foreign Affairs Preemption or dormant Foreign Commerce Clause Claim against the WCI, Inc. Defendants

2

3        Plaintiff's claims against the WCI, Inc. Defendants under the foreign affairs preemption and

4   dormant Foreign Commerce Clause doctrines—the third and fourth causes of action—likewise

5   fail as a matter of law.  These claims also challenge "the Agreement" between California and

6   Quebec and, to that extent, fail as to the WCI, Inc. Defendants for the reasons discussed above.

7   *See* Am. Compl., ¶¶ 174, 176-177, 184-185, 187.  Moreover, while Plaintiff also purports to

8   challenge "Agreement 11-415" (between CARB and WCI, Inc.) and "supporting California law"

9   in these causes of action, *id.* ¶¶ 3, 5, 174, 185, 187, the inclusion of these additional elements

10  does not support a valid claim against the WCI, Inc. Defendants for two reasons.

11       First, Plaintiff has failed to allege any facts that could support a conclusion that Agreement

12  11-415—the contract for administrative and technical services between CARB and WCI, Inc.—

13  "interferes with the United States' foreign policy on greenhouse gas regulation" or discriminates

14  against foreign commerce such that it could be preempted or violate the foreign dormant

15  Commerce Clause.  *See* Am. Compl., ¶¶ 178, 184, 185, 187.  Indeed, Plaintiff omits Agreement

16  11-415 from many of the "factual" allegations that appear intended to support its third and fourth

17  causes of action, *id.* ¶¶ 3, 5, 131-133, 135, 176-177, 183, and where Plaintiff does make

18  allegations concerning Agreement 11-415, those allegations are entirely conclusory and, thus,

19  inadequate.  *See, e.g.*, *E.V. v. Robinson*, 906 F.3d 1082, 1098–99 (9th Cir. 2018) ("conclusory

20  allegations" that merely recite constitutional text and assert constitutional rights were violated

21  "are insufficient to state a claim").  For example, Plaintiff alleges that "Agreement 11-415 …

22  violate[s] the Constitution," Am. Compl*.*, ¶ 155, and that it "discriminate[s] among categories of

23  foreign commerce," *id.* ¶ 185.  *See also id.* ¶¶ 143, 144, 174, 184, 187.  "What is missing … are

24  sufficient, nonconclusory allegations plausibly linking" Agreement 11-415 to "each theory of

25  liability."  *See Austin*, 925 F.3d at 1138.

26       These omissions are not surprising in light of the nature of Agreement 11-415 and cannot

27  be addressed with leave to amend.  Agreement 11-415 is simply an agreement under which WCI,

28  Inc. will provide, and CARB will pay for, "administrative support … including developing,

13

implementing and maintaining a system for tracking compliance instruments" and the "capability to execute allowance auction[s]."  Am. Compl., Attachment C (ECF No. 7-3) at 1.  It is unclear how such an agreement, or the technical support services WCI, Inc. provides under this agreement, could interfere with the foreign policy of the United States or discriminate against foreign commerce, and Plaintiff makes no attempt to explain.  Plaintiff's conclusory allegations are entirely insufficient.  *See Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010) ("conclusory [and] barebone allegations" are insufficient to state "a plausible claim").

Second, while Plaintiff challenges "supporting California law," Plaintiff does not, and cannot, allege that the WCI, Inc. Defendants adopted any of the relevant laws (or any laws at all). *See* Am. Compl., ¶ 14.  Plaintiff likewise does not, and cannot, allege that the WCI, Inc. Defendants have the authority to implement or enforce any of the California law provisions Plaintiff challenges.  For example, it is CARB that "may approve a linkage with an external" program, via rulemaking proceeding, "after the Governor of California has made the findings required by [Cal. Gov. Code § 12894(f)]."  Am. Compl., ¶ 74 (internal quotation marks omitted, modification in original).  Likewise, it is CARB's regulation that allows regulated parties to "use compliance instruments issued by [Quebec] to meet their compliance obligation under" California's program.  *Id.* ¶ 78 (internal quotation marks omitted).  And it is CARB that determines whether regulated parties are in compliance with California's cap-and-trade program. Cal. Code Regs., tit. 17, § 95856(g).  As the WCI, Inc. Defendants have no role in the adoption or enforcement of these provisions of California law, references to these provisions cannot support any claims against them.

In sum, the WCI, Inc. Defendants did not enter into, and are not parties to, the agreement Plaintiff claims is an unconstitutional treaty or compact, and Plaintiff has not tied, and cannot tie, Agreement 11-415 between WCI, Inc. and CARB, or any other actions of the WCI, Inc. Defendants, to any constitutional violation.  Thus, Plaintiff has failed to state a valid claim against these Defendants and could not do so even if given an opportunity to amend.  The WCI, Inc. Defendants should be dismissed with prejudice under Federal Rule of Civil Procedure 12(b)(6).

14

**C.    Plaintiff's Claims against the WCI, Inc. Defendants Are Not Saved by the Conclusory and Unsupported Allegation that WCI, Inc. Is a "State Actor"**

Apparently recognizing that its constitutional claims may only be brought against States, Plaintiff alleges that WCI, Inc. is a "state actor."[11]  This allegation cannot save Plaintiff's claims against the WCI, Inc. Defendants.  Indeed, Plaintiff has no cognizable legal theory under which the WCI, Inc. Defendants could be "state actors" with respect to conduct in which, as shown above, they are not actors at all.  *See Lee v. Katz*, 276 F.3d 550, 555 n.5 (9th Cir. 2002) (noting the importance of identifying the allegedly unconstitutional conduct for which the "state action" claim is made).[12]  Nor is it clear how a private actor may become a "state actor" with respect to the Treaty or Compact Clauses, which apply only apply to agreements *entered into by States*, U.S. Const. Art. I, § 10, cl. 1, 3, or foreign affairs preemption and the dormant Foreign Commerce Clause, both of which generally prohibit certain kinds of *state laws*.  In any event, as shown below, Plaintiff has failed to allege facts sufficient to support a "state actor" claim.  *See Lee*, 276 F.3d at 553–54 (9th Cir. 2002) (recognizing "plaintiffs bear the burden of establishing [these facts] by a preponderance of the evidence"); *Roberts v. AT&T Mobility LLC*, 877 F.3d 833, 8329 (9th Cir. 2017) (recognizing plaintiffs must "show the private defendants were 'state actors'").

In assessing claims that private actors are really "state actors," courts "start with the presumption that private conduct does not constitute governmental action." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999).  Of course, Plaintiff's conclusory

---

[11] Plaintiff also alleges that WCI, Inc. is an "instrumentality of the state."  Defendants do not understand Plaintiff to allege that WCI, Inc. is an actual government agency, in the sense that "instrumentality of the state" is sometimes used.  *See Simpson v. Hite*, 36 Cal. 2d 125, 129-130 (1950) (concluding that county board of supervisors was "instrumentality of the state"); *Hall v. Am. Nat. Red Cross*, 86 F.3d 919, 921 (9th Cir. 1996) ("[C]ourts sometimes use the phrase 'agency or instrumentality' when they are actually asking whether a particular institution is part of the government itself.").  Rather, Defendants understand Plaintiff to use "instrumentality of the state" as essentially a synonym for "state actor."  *See Lee v. Katz*, 276 F.3d 550, 555 (9th Cir. 2002).  Accordingly, and in the interests of brevity, Defendants use the phrase "state actor" in this brief, but Defendants' arguments apply equally to any allegation or contention that WCI, Inc. is an "instrumentality of the state."

[12] Further, where, as here, the complaint names actual state officials and agencies and alleges that they are the actors engaged in the offending conduct, it is not clear that the "state actor" inquiry even applies.  *See, e.g.*, *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 993 (9th Cir. 2013) (describing the inquiry's role as determining whether the offending conduct should be attributed to the State).

15

1    allegation that WCI, Inc. "is a state actor and an instrumentality of the governments of California,

2    Quebec, and Nova Scotia" need not be accepted as true and cannot overcome this presumption.

3    *See* Am. Compl. ¶ 15; *see also Robinson*, 906 F.3d at 1098–99.  Moreover, none of the facts

4    Plaintiff alleges support those conclusions, and Plaintiff cannot allege facts that would.

5          First, Plaintiff's "state actor" theory appears to rest primarily on the fact that WCI, Inc.'s

6    bylaws provide that the "two voting members representing the State of California must be

7    'employee[s] or officer[s] of the state, named in accordance with the state's requirements.'"  Am.

8    Compl. ¶ 15 (quoting WCI, Inc.'s By-Laws, Article IV, § 4.2(a)) (modifications in original).[13]

9    But this does not give California control over WCI, Inc.  Indeed, WCI, Inc.'s Board currently has

10   six voting members and is permanently set up so that all participating jurisdictions have an equal

11   number of representatives on the Board.  RJN, ¶ 6, Exh. B at 6.  Thus, by design, no participating

12   jurisdiction, including California, appoints a majority of the board members or exercises more

13   control over the Board than any other jurisdiction.  WCI, Inc.'s actions are, thus, not fairly

14   attributable to California.  *See National Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 193

15   (1988) (rejecting state actor argument where "the source of the [challenged action] was the

16   collective membership, speaking through an organization that is independent of any particular

17   State.").  As the Supreme Court has indicated, where a private actor is not a "surrogate for … one

18   State," the "connection with [that State is] too insubstantial to ground a state-action claim."

19   *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 297-98 (2001);

20   *see also id.* at 298 (reiterating that state action may be found where private organization's

21   "membership consisted *entirely* of institutions *located within the same State*") (emphasis added).

22         Second, Plaintiff does not, and cannot, allege that the WCI, Inc. Defendants "are endowed

23   by the State" with "function[s] … both traditionally and exclusively governmental"—facts that

24   can support a "state actor" conclusion.  *See Kirtley v. Rainey*, 326 F.3d 1088, 1093 (9th Cir. 2003)

25

26         [13] Plaintiff alleges as well that "non-voting board members representing the State of
     California also must be 'employee[s], officer[s] or elected officer[s] of the jurisdiction.'"  Am.
27   Compl., ¶ 15 (quoting WCI, Inc.'s By-Laws, Article IV, § 4.2(a)) (modifications in original).  But
     it is unclear how *non-voting* board members, who, by definition, exert no actual control over the
28   organization's activities, could be proper defendants at all, let alone how they could be "state
     actors" here.  *See, infra*, Section II.

16

1   (internal quotation marks omitted).  As discussed above, WCI, Inc. develops, operates and

2   maintains a computer system that keeps track of instrument holdings (or balances) and of

3   instrument transactions.  This system is somewhat analogous to the systems used by banks and

4   other financial institutions to keep track of their customers' account balances and transactions.

5   This is plainly not a traditionally and exclusively governmental function.  Likewise, the auction

6   services WCI, Inc. provides are not traditional and exclusive government functions.  Indeed,

7   private auction houses abound, and some of them, like WCI, Inc., provide auction services to

8   government agencies.  *See* RJN, Exhs. C, D.  None of the services WCI, Inc. provides to CARB

9   qualify as traditionally and exclusively governmental functions or support the contention that

10   WCI, Inc. is a "state actor."

11          Third, there is no allegation that the WCI, Inc. Defendants exercised California's authority

12   such that the operations of WCI, Inc. are pervasively entwined with those of the State.  In

13   contrast, in *Brentwood Academy*, the Supreme Court held that "[t]he nominally private character

14   of the Association [was] overborne by the pervasive entwinement [with its member public

15   schools] in its composition and workings."  *Brentwood Acad.*, 531 U.S. at 298.  This

16   "entwinement" was "shown in any number of ways," including by the facts that the Association

17   exercised the authority of the public schools themselves by "produc[ing] rules and regulat[ing]

18   competition" in interscholastic sports and by "charg[ing] for admission to their games" and, thus,

19   "enjoy[ing] the schools' moneymaking capacity as its own."  *Id.* at 299; *see also id*. at 300

20   (noting that public school officials "overwhelmingly perform[ed] all but the purely ministerial

21   acts by which the Association exists and functions in practical terms").  Quite the opposite is true

22   here.  WCI, Inc. derives its budget from "payments for services rendered," *id.* at 299, not by

23   stepping into California's shoes; WCI, Inc.'s functions include operating an instrument tracking

24   system and auctions, not making rules and enforcing regulations; and WCI, Inc. and its

25   contractors, not its board members, perform those administrative and technical services.  *See,*

26   *supra,* at 5-6, 12; *see also* RJN, Exh. E at 1 (describing "administrative support provided …

27   through the use of specialized contractors").  In addition, of course, "[a]cts of … private

28   contractors do not become acts of the government by reason of their significant or even total

17

1  engagement in performing public contracts." *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982)).

2  Indeed, that is "a dubious proposition that would convert every contractor into a state actor."

3  *Ochoa v. Serv. Employees Int'l Union Local 775*, No. 2:18-CV-0297-TOR, 2019 WL 1601361, at

4  *5 (E.D. Wash. Apr. 15, 2019).  Plaintiff has failed to state, and cannot state, its constitutional

5  claims against the WCI, Inc. Defendants because they are neither States nor "state actors."

6      As shown above, Plaintiff cannot establish standing to sue the WCI, Inc. Defendants and

7  cannot state a valid claim against them.  These Defendants should be dismissed without leave to

8  amend.

9  **II.   AT A MINIMUM, THE WCI, INC. BOARD MEMBERS SHOULD BE DISMISSED**

10      Even if a claim could be stated against WCI, Inc.—and, as shown above it cannot—

11  Plaintiff has not stated, and cannot state, a claim against the individual WCI, Inc. board members.

12  Plaintiff alleges no facts in the Amended Complaint that describe specific wrongful acts of the

13  WCI, Inc. board members in their capacities as such.  Indeed, the Amended Complaint is devoid

14  of any facts regarding the role of such WCI, Inc. board members in the linkage between the

15  respective cap-and-trade programs of California and Quebec.  There are no allegations that any of

16  these individuals participated in any of the challenged activities or even had the ability to do so.

17  *See Twombly*, 550 U.S. at 555 (requiring that a complaint "give the defendant fair notice of what

18  the ... claim is and the grounds upon which it rests") (internal quotation marks omitted).  The sole

19  mention of WCI, Inc. board members in the Amended Complaint consists of naming them as

20  Defendants in their official capacities as board members and/or an officer of WCI, Inc.  Am.

21  Compl. ¶¶ 13, 16-18.  This is true despite the fact that Plaintiff amended its complaint one time

22  already to clarify the sparse allegations against the WCI, Inc. board members.  As such, the WCI,

23  Inc. board members should be dismissed without leave to amend, for lack of standing or failure to

24  state a valid claim.

25      This is especially true with respect to the two WCI, Inc. board members, Kip Lipper and

26  Richard Bloom "sued solely in [their] official capacit[ies] as *non-voting* board member[s]" of

27  WCI, Inc.  Am. Compl. ¶¶ 17-18 (emphasis added).  By Plaintiff's own admission, Mr. Lipper

28  and Mr. Bloom as non-voting board members of WCI, Inc. are not entitled to vote on any matter

and shall not act on behalf of WCI, Inc. or its Board. *Id.*; RJN Ex. B at 5.  Not only does the

Amended Complaint fail to allege facts sufficient to state a claim against Mr. Lipper and Mr.

Bloom; it also contains no factual allegations that could support Plaintiff's standing to bring

claims against them.  *See Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 774 (9th Cir.

2006).  Because Plaintiff has not, and cannot, state a claim against or establish standing as to

these WCI, Inc. board members, Mr. Lipper and Mr. Bloom should be dismissed without leave to

amend under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).

     The WCI, Inc. board members should also be dismissed because they are not proper

defendants, even assuming arguendo a claim could be stated against WCI, Inc.  Directors and

officers of a corporation do not incur personal liability for conduct of the corporation merely

because they hold official positions.  *See In re Citigroup Inc. Shareholder Derivative Litigation*,

964 A.2d 106, 118, 131 (Del. 2009) ("Oversight duties under Delaware law are not designed to

subject directors, even expert directors, to *personal liability* for failure to predict the future and to

properly evaluate business risk.").  And Plaintiff has not alleged any facts that would subject the

WCI, Inc. board members to personal liability for any corporate wrongdoing.[14]  For example, no

reasonable inference can be made from the pleadings that the WCI, Inc. board members

consciously disregarded their duty to be informed about business risk (assuming such a duty

exists).  As such, they are not proper parties to this action.

     Nor are these Defendants necessary parties.  In the event Plaintiff could state a claim and

establish standing as to WCI, Inc., any judgment obtained in this action for equitable relief is

sufficient to bind WCI, Inc. absent the WCI, Inc. board members.  A corporation's capacity to be

sued is determined by the law under which it was organized, Fed. R. Civ. P. 17(b)(2), and under

Delaware law, a corporation has the capacity to be sued in its corporate name, Del. Code tit. 8, §

122(2) (2020).  In addition, as discussed above, the named WCI, Inc. board members are not

parties to any of the agreements at issue in the Amended Complaint.  As a result, the WCI, Inc.

board members are not necessary parties to this action even if a claim could be stated against

---

[14] *See, e.g.*, Volunteer Protection Act of 1997 (42 U.S.C. §§ 14501-14505) ("VPA") (affords immunity to volunteer directors from personal liability).

1    WCI, Inc.  *See* Fed. R. Civ. P. 65(d)(2)(C) (injunction binds other persons who are in active

2    concert or participation with the parties); Fed. R. Civ. P. 21 (providing the court discretion, on

3    just terms, to dismiss a party).  Therefore, the WCI, Inc. board members should be dismissed

4    without leave to amend.

5    **III.   JARED BLUMENFELD SHOULD BE DISMISSED IN HIS OFFICIAL CAPACITY AS
         SECRETARY FOR ENVIRONMENTAL PROTECTION**

6

7         Finally, Plaintiff lacks standing to sue, and has failed to state a valid claim against,

8    Defendant Blumenfeld in his official capacity as Secretary for Environmental Protection.

9         Secretary Blumenthal should be dismissed in his official capacity under Federal Rule of

10   Civil Procedure 12(b)(1) because the complaint contains no factual allegations establishing

11   Plaintiff's standing to bring claims against the Secretary.  The Amended Complaint is silent as to

12   Secretary's Blumenfeld role in the linkage between the respective cap-and-trade programs of

13   California and Quebec.  There are no allegations that the Secretary is a party to either agreement

14   Plaintiff challenges.  Nor are there any allegations that the Secretary adopted, implements, or

15   enforces any of the "supporting California law[s]" to which Plaintiff objects.  *See* Am. Compl., ¶

16   174.  Indeed, throughout the entire Amended Complaint, Secretary Blumenfeld is mentioned only

17   twice, and both times simply identify him, in his official capacity, as a defendant.  *Id.* ¶¶ 16, 19.

18   Because the Amended Complaint fails to establish that Secretary Blumenfeld caused any harm to

19   Plaintiff or "played a role in any of [the allegedly offending conduct]," the claims against him

20   should be dismissed for lack of standing.  *See Golden Gate Transactional Indep. Serv., Inc.*, 2019

21   WL 4222452, at *7 (dismissing claim against defendant to whom the complaint referred "only

22   once to describe his occupation"); *see also Sacks*, 466 F.3d at 771, 774-75 (affirming dismissal

23   where plaintiff failed to allege causation); *Easter*, 381 F.3d at 961 (holding plaintiffs lack

24   standing to sue defendants where "plaintiffs have failed to link their causes of action with specific

25   actions of [particular] defendants").

26        Secretary Blumenfeld also should be dismissed in his official capacity under Federal Rule

27   of Civil Procedure 12(b)(6).  Plaintiff has failed to allege "sufficient factual matter to state a

28   facially plausible claim to relief" against Secretary Blumenfeld.  *See Pryer*, 2010 WL 1660242, at

20

1    *2 (dismissing defendant where "Plaintiff has not … explained how any actions by that defendant

2    resulted in the deprivation of any constitutional right"); *see also Iqbal*, 556 U.S. at 678 ("A claim

3    has facial plausibility when the plaintiff pleads content that allows the court to draw the

4    reasonable inference that the defendant is liable for the misconduct alleged.").  Moreover,

5    Plaintiff's failure to allege *any* facts connecting the Secretary to the alleged constitutional

6    violations cannot satisfy the requirement that a complaint "give the defendant fair notice of what

7    the ... claim is and the grounds upon which it rests."  *See Twombly*, 550 U.S. at 555 (internal

8    quotation marks omitted).  Accordingly, Secretary Blumenfeld should be dismissed under Federal

9    Rule of Civil Procedure 12(b)(6).  *See id.*

10       Dismissal of Secretary Blumenfeld in his official capacity should be without leave to

11    amend because any attempt to amend the complaint would be futile.  *See Schmier v. U.S. Court of*

12    *Appeals for Ninth Circuit*, 279 F.3d 817, 824-825 (2002) (leave to amend unwarranted where

13    plaintiff "could not have possibly amended his complaint to allege" necessary facts).  Plaintiff's

14    claims relate to conduct such as the agreement between California and Quebec, the agreement

15    between CARB and WCI, Inc., and the linkage between the California and Quebec programs.

16    Plaintiff cannot allege any facts establishing a valid claim against Secretary Blumenfeld based on

17    such conduct.

18       It makes no difference that CARB is a component agency within the California

19    Environmental Protection Agency (CalEPA)—the agency led by the Secretary for Environmental

20    Protection.  *See* Cal. Gov. Code § 12812.  The Secretary's general supervision of component

21    agencies does not extend to implementing or enforcing those agencies' regulatory programs.

22    Rather, the Secretary is generally responsible for the "sound fiscal management of each

23    [component] department, office, or other unit," but "hold[s] *the head of each department, office,*

24    *or other unit* responsible for management control over the administrative, fiscal, and program

25    performance of his or her department, office, or other unit."  *Id.* § 12800 (emphasis added); *see*

26    *also id.* §§ 12850.6 (same), 12850 (providing Secretaries with "the power of general supervision

27    over… each department, office, and unit within the agency"), 12812.6 (assigning the Secretary

28    cross-agency coordination of greenhouse gas reduction activities).  That the units retain

1  management responsibilities over their programs is particularly true of CARB, where many of

2  those responsibilities lie with a Board, the composition of which has been carefully specified by

3  the Legislature and whose members are required to "exercise their independent judgment as

4  officers of the state on behalf of the interests of the entire state."  Cal. Health & Safety Code §

5  39510(g).

6      Indeed, California law delegates to CARB, not the Secretary for Environmental Protection,

7  authority to adopt and implement a cap-and-trade program for greenhouse gas emissions.  Cal.

8  Health & Safety Code §§ 38560 ("*The state board* shall adopt rules and regulations in an open

9  public process to achieve the maximum technologically feasible and cost-effective greenhouse

10  gas emission reductions from sources or categories of sources.") (emphasis added), 38562(c)(2)

11  ("*the state board* may adopt a regulation that establishes a system of market-based declining

12  annual aggregate emissions limits"—e.g., a cap-and-trade program) (emphasis added); *see also*

13  *id*. § 38505(l) (defining "state board" as CARB).  Accordingly, previous challenges to

14  California's cap-and-trade program have been directed at CARB.  *See Cal. Chamber of*

15  *Commerce v. State Air Res. Bd.*, 10 Cal. App. 5th 604, 622 (2017) ("The Legislature obviously

16  intended the [cap-and-trade] program to be a creature of the Board."); *Our Children's Earth*

17  *Found. v. State Air Res. Bd.*, 234 Cal. App. 4th 870, 873-876 (2015).

18      The claims against Secretary Blumenfeld in his official capacity should be dismissed

19  without leave to amend.

20                    **CONCLUSION**

21      For the reasons discussed above, Defendants respectfully request that this Court dismiss all

22  the WCI, Inc. Defendants—WCI, Inc. and its board members.  Defendants also respectfully

23  request that this Court dismiss Jared Blumenfeld in his official capacity as Secretary for

24  Environmental Protection.

25

26

27

28

22

1   Dated:  January 6, 2020                    Respectfully Submitted,

2                                              XAVIER BECERRA
                                               Attorney General of California
3                                              MICHAEL P. CAYABAN
                                               Supervising Deputy Attorney General
4

5                                              */s/ M. Elaine Meckenstock*
                                               M. ELAINE MECKENSTOCK
6                                              Deputy Attorney General
                                               *Attorneys for State Defendants*
7

8

9                                              DELFINO, MADDEN, O'MALLEY, COYLE &
                                               KOEWLER LLP
10

11                                             */s/ Monica Hans Folsom* (as authorized on
                                               January 6, 2019)
12                                             MONICA HANS FOLSOM
                                               *Attorneys for WCI, Inc. Defendants*
13

14   OK2019105727
     82255429.docx
15

16

17

18

19

20

21

22

23

24

25

26

27

28