1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
2      Including Professional Corporations
   NICHOLAS W. VAN AELSTYN, Cal. Bar No. 158265
3  nvanaelstyn@sheppardmullin.com
   ZACHARY NORRIS, Cal. Bar No. 268616
4  znorris@sheppardmullin.com
   Four Embarcadero Center, 17th Floor
5  San Francisco, California 94111-4109
   Telephone:  415.774.2970
6  Facsimile:  415.434.3947

7  Attorneys for Intervenor
   INTERNATIONAL EMISSIONS TRADING
8  ASSOCIATION

9

10              UNITED STATES DISTRICT COURT

11            EASTERN DISTRICT OF CALIFORNIA

12  THE UNITED STATES OF          Case No. 2:19-cv-02142-WBS-EFB
    AMERICA,
13                                The Hon. William B. Shubb
                Plaintiff,
14                                _____
         v.                      UNOPPOSED MOTION OF
15                                INTERNATIONAL EMISSIONS
    THE STATE OF CALIFORNIA;      TRADING ASSOCIATION TO
16  GAVIN C. NEWSOM, in his official  INTERVENE AS A DEFENDANT
    capacity as Governor of the State of
17  California; THE CALIFORNIA AIR  Date:         January 27, 2020
    RESOURCES BOARD; MARY D.      Time:         1:30 p.m.
18  NICHOLS, in her official       Courtroom:    5
    capacities as Chair of the California Air
19  Resources Board and as Vice Chair and
    a board member of the Western Climate
20  Initiative, Inc.; WESTERN CLIMATE
    INITIATIVE, INC.; JARED
21  BLUMENFELD, in his official
    capacities as Secretary for
22  Environmental Protection and as a
    board member of the Western Climate
23  Initiative, Inc.; KIP LIPPER, in his
    official capacity as a board member of
24  the Western Climate Initiative, Inc., and
    RICHARD BLOOM, in his official
25  capacity as a board member of the
    Western Climate Initiative, Inc.,
26
                Defendants.
27

28
                                        Case No. 2:19-cv-02142-WBS-EFB

## NOTICE OF MOTION AND RELIEF REQUESTED

TO ALL PARTIES AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE that on January 27, 2020, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 5 of the United States District Court for the Eastern District of California, at 501 I Street, Sacramento, California, Proposed Defendant-Intervenor International Emissions Trading Association ("Proposed Intervenor") will move this Court for an order granting Proposed Intervenor' leave to intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure.  This motion is noticed for January 27 pursuant to the Stipulation to Shorten Time for Scheduling Hearing Date filed concurrently herewith in accordance with Eastern California Local Rule 144(e).  This motion is based on this Unopposed Motion and Notice of Motion, the following Memorandum of Points and Authorities, the [Proposed] Answer in Intervention filed concurrently herewith, all pleadings and papers filed in this action, and such arguments as counsel may offer at the hearing of this Unopposed Motion.

Dated:  January 6, 2020          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By: _____ */s/ Nicholas W. van Aelstyn* _____
        NICHOLAS W. VAN AELSTYN
        ZACHARY M. NORRIS

        Attorneys for Intervenor
        INTERNATIONAL EMISSIONS TRADING
        ASSOCIATION

# **TABLE OF CONTENTS**

**Page(s)**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

I.      INTRODUCTION .................................................................................... 1

II.     BACKGROUND ....................................................................................... 2

    A.      California's Cap-and-Trade System ......................................... 2

    B.      The Linkage of the Programs and the Related Agreement .................... 4

    C.      The DOJ Lawsuit ................................................................... 5

    D.      IETA's Interests .................................................................... 6

III.    ARGUMENT ........................................................................................... 8

    A.      IETA Is Entitled to Intervene As Of Right. ........................................ 8

        1.      The DOJ Lawsuit Threatens to Impede or Impair IETA's Members' Significant Protectable Interest In the Linkage ........... 8

        2.      IETA's Application Is Timely ................................................ 10

        3.      IETA's Interests Are Not Adequately Represented By the Existing Parties ................................................................ 11

    B.      Alternatively, This Court Should Grant IETA Permissive Intervention ......................................................................... 14

SMRH:4850-1059-9344.5

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

<u>Federal Cases</u>

4

*Arakaki v. Cayetano*

5

    324 F.3d 1078 (9th Cir. 2003) .......................................................................... 8, 11

6

*Brumfield v. Dodd*

7

    749 F.3d 339 (5th Cir. 2014) ........................................................................... 11, 12

8

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*

    647 F.3d 893 (9th Cir. 2011) ................................................................................. 11

9

*County of Fresno v. Andrus*

10

    622 F.2d 436 (9th Cir. 1980) ................................................................................... 8

11

*Freedom from Religion Found., Inc. v. Geithner*

12

    644 F.3d 836 (9th Cir. 2011) ................................................................................. 14

13

*League of United Latin Am. Citizens v. Wilson*

14

    131 F.3d 1297 (9th Cir. 1997) ............................................................................... 10

15

*New York Pub. Interest Research Grp. v. Regents of the Univ. of New York*

16

    516 F.2d 350 (2d Cir 1975) .................................................................................... 13

17

*Nw. Forest Res. Council v. Glickman*

18

    82 F.3d 825 (9th Cir. 1996) ............................................................................. 11, 13

19

*Perry v. Schwarzenegger*

20

    630 F.3d 989 (9th Cir. 2011) ................................................................................... 8

21

*S. Cal. Edison Co. v. Lynch*

22

    307 F.3d 794 (9th Cir. 2002) ........................................................................... 8, 9, 10

23

*Smith v. L.A. Unified School Dist.*

24

    830 F.3d 843 (9th Cir. 2016) ................................................................................. 11

25

*Wilderness Soc'y v. U.S. Forest Serv.*

26

    630 F.3d 1173 (9th Cir. 2011) (*en banc*) ............................................................ 10

27

28

SMRH:4850-1059-9344.5

UNOPPOSED MOTION OF INTERNATIONAL EMISSIONS TRADING ASSOCIATION
TO INTERVENE AS A DEFENDANT

State Cases

*California Chamber of Commerce v. State Air Resources Bd.*
   10 Cal. App. 5th 604 (Cal. Ct. App. 2017)......................................................7, 9

*Our Children's Earth Foundation v. California Air Resources Bd.*
   234 Cal. App. 4th 870 (Cal. Ct. App. 2015)............................................7

Federal: Statutes, Rules, Regulations, Constitutional Provisions

Federal Rules of Civil Procedure
   Rule 24(a)(2)........................................................................................8
   Rule 24(b)(1)(b)..................................................................................14
   Rule 24(b)(3)......................................................................................14

Title IV 1990 Clean Air Act Amendment ............................................4

United States Constitution ...................................................................5

Art. 1, § 8, cl. 3 (the Foreign Commerce Clause)................................5

Art. 1, §10, cl. 1 (the "Treaty Clause")...............................................5

Art. 1, §10, cl. 3 (the Compact Clause) ..............................................5

Amendment V......................................................................................10

Amendment XIV.................................................................................10

State: Statutes, Rules, Regulations, Constitutional Provisions

California Code of Regulations
   § 95801 *et seq*...................................................................................3
   §§ 95940 – 95945 ...............................................................................4

California Health and Safety Code
   §§ 38500 *et seq*. (California Global Warming Solutions Act of
   2006) ....................................................................................................2
   § 38501(a) ...........................................................................................2
   § 38501(b) ...........................................................................................2
   § 38501(h) ...........................................................................................3
   § 38550 ................................................................................................3
   § 38566 ................................................................................................3

<u>Other Authorities</u>

7C Charles Alan Wright, *et al*.,
    Federal Practice & Procedure § 1908.2 (3d ed.) ..................................................... 9

SMRH:4850-1059-9344.5

UNOPPOSED MOTION OF INTERNATIONAL EMISSIONS TRADING ASSOCIATION
TO INTERVENE AS A DEFENDANT

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3        In 2013, the California Air Resources Board ("CARB") and the

4    *Gouvernement Du Québec* ("Québec") linked their respective cap-and-trade

5    programs for reducing greenhouse gas ("GHG") emissions.  In the nearly seven

6    years since then a robust private market has developed for the trading of GHG

7    emission allowances issued by (and offsets certified by) the governments of

8    California and Québec – instruments that confer a right to emit one metric ton of

9    carbon dioxide equivalent ("$CO_{2e}$") under California's and Québec's respective cap-

10   and-trade regulations.[1]  Many private entities, including the members of intervenor

11   International Emissions Trading Association ("IETA"), have invested billions of

12   dollars in GHG emission allowances in reliance upon the interconnectedness of the

13   California and Québec programs.

14       Despite sitting idly by for over six years after the linkage was initially

15   established and while this integrated market matured, the United States Department

16   of Justice ("DOJ") has now filed a lawsuit seeking to declare the regulations that

17   constitute the linkage between the programs, and a related agreement,

18   unconstitutional.  If successful, the DOJ lawsuit would sever the linkage, thereby

19   threatening a valuable property right for IETA's members that hold Québec

20   emission allowances (as well as offsets certified by Québec), a property right that is

21   protected under California law.  DOJ's lawsuit could cause a significant

22   depreciation in the value of the reasonable expectation-backed investments that

23   IETA's members have made in emission allowances and it would result in

24   significantly increased costs for those with compliance obligations under

---

[1] For the sake of brevity, we generally refer to allowances only instead of allowances and offsets; it should be understood that the references to the market for allowances includes both allowances and offsets.

SMRH:4850-1059-9344.5    UNOPPOSED MOTION OF INTERNATIONAL EMISSIONS TRADING ASSOCIATION
TO INTERVENE AS A DEFENDANT

California's cap-and-trade program.  In short, the DOJ lawsuit would have direct and potentially very significant consequences for many of IETA's members.

To protect its members' interests, IETA therefore moves to intervene in this action in support of the California entities and officials that are named defendants in DOJ's Amended Complaint.  Although the State defendants share IETA's ultimate litigation goal – to defeat DOJ's lawsuit and uphold the validity of California's cap-and-trade linkage regulations – IETA's interests in this litigation are quite different from those of the State defendants.  While California's interests are purely as a regulator, IETA's members have a legally-protectable property interest in the emission allowances that they hold.  Consequently, due process necessitates that IETA on behalf of its members have an opportunity to be heard in this lawsuit in which the United States Government seeks relief that could deprive them of those property rights or otherwise undermine these interests.  Furthermore, as a trade association representing private market participants, IETA will raise issues and present facts that California, as a regulator, simply cannot in defending this lawsuit.

Because DOJ's lawsuit threatens to impede or impair the significant, legally protectable interests of IETA's members, and because the existing defendants in this action cannot adequately represent those interests, this Court should grant IETA's Motion to Intervene.

## II.   BACKGROUND

### A.   California's Cap-and-Trade System

In 2006, the California Legislature enacted the California Global Warming Solutions Act of 2006, California Health and Safety Code sections 38500 *et seq*., popularly known as "AB 32."  AB 32 is supported by legislative findings that global warming poses a "serious threat" to the "economic well-being, public health, natural resources, and the environment of California," and that global warming will have "detrimental effects on some of California's largest industries."  Cal. Health and Safety Code § 38501(a), (b).  To counter those threats to California's economy and

1   environment, AB 32 requires California to reduce its GHG emissions to 1990 levels

2   by the year 2020.  *Id*., § 38550.  In 2016, the California Legislature set a more

3   ambitious goal, requiring GHG reductions to 40 percent below 1990 levels by 2030.

4   *Id*., § 38566.

5       AB 32 designated CARB as the state agency charged with monitoring and

6   regulating sources of GHG emissions in California, and instructed CARB to "design

7   emissions reduction measures to meet the statewide emissions limits for greenhouse

8   gases . . . in a way that minimizes costs and maximizes benefits for California's

9   economy . . . ."  Cal. Health & Safety Code § 38501(h).  Pursuant to this statutory

10   mandate, after a three-year public process that included hundreds of stakeholder

11   meetings, workshops and comments, CARB promulgated regulations that created a

12   cap-and-trade system for reducing GHG emissions from California sources effective

13   January 2012.  17 Cal. Code Regs. § 95801 *et seq*.

14       "Cap-and-trade" is a market-based approach to reducing pollution.  The "cap"

15   creates a limit on the total amount of GHG emissions from regulated sources in

16   California.  That total limit declines over time to ensure that predetermined

17   emissions targets are met.  The "trade" aspect of the cap-and-trade system creates an

18   incentive for businesses within a market to seek out emission reductions in a cost-

19   effective manner.  CARB issues emission allowances to regulated entities, either for

20   free or through auctions.  Regulated entities must surrender one emission allowance

21   for each ton of their allowed level of $CO_2e$ emissions within a compliance period.  If,

22   however, a regulated entity does not need all the allowances it has for a given

23   compliance period (because, for example, it has succeeded in reducing its GHG

24   emissions below its allowed level), it can either "bank" those allowances or sell

25   them to another party.  The ability to sell allowances to other businesses creates a

26   market price for pollution reductions.  This in turn allows businesses within the

27   market to achieve the maximum reductions possible at the lowest cost.

28

1   The flexible compliance aspect of the cap-and-trade system enables those

2   subject to pollution regulations, as well as society as a whole, to minimize the costs

3   of achieving a given overall statewide emissions target relative to more

4   conventional, command-and-control regulatory approaches.  This is supported by

5   well-accepted economic theory and the observed results of other cap-and-trade

6   systems, including the very successful program established under Title IV of the

7   1990 Clean Air Act Amendment to combat acid rain on the eastern seaboard.[2]

8   **B.    The Linkage of the Programs and the Related Agreement**

9   CARB's cap-and-trade regulations implementing AB 32 included the ability

10  to "link" California's cap-and-trade regulations with other emission trading

11  programs.  17 Cal. Code Regs. §§ 95940 – 95945.  Following a lengthy public

12  process in which many stakeholders including IETA participated, CARB and the

13  Governor of California made a series of findings required by statute concerning

14  linkage with Québec's program.  These included a finding that establishing a

15  linkage between California's and Québec's cap-and-trade programs would

16  maximize total benefits to California including emissions reductions and cost-

17  effectiveness.  CARB Resolution 13-7 (available at

18  https://ww3.arb.ca.gov/cc/capandtrade/linkage/resolution13-7.pdf, last accessed

19  December 30, 2020).  This process culminated with the CARB Board adopting

20  regulatory amendments that linked California's program with Quebec's, meaning

21  that California would accept Quebec-issued compliance instruments for compliance

22  with California's program.  *Id.*

23  In September 2013, CARB and Québec signed an agreement expressing the

24  parties' intentions to continue working collaboratively and jointly to harmonize and

25  integrate the California and Québec cap-and-trade programs.  It provides for

26

27

28

[2] The cap-and-trade system, with its market-based focus, was once popular with conservative lawmakers.  Indeed, the Title IV Program was enacted during the Presidency of George H. W. Bush.

-4-

ongoing consultation to promote continued harmonization and integration of the parties' respective cap-and-trade programs while acknowledging their respective legislative and regulatory processes for programmatic changes. *Id*., Arts. 3-4. It acknowledges that the parties' respective cap-and-trade programs provide for mutual recognition of compliance instruments, but also that either party can void compliance instruments issued by the other party should it fail to adhere to regulatory requirements. *Id*., Art. 6.[3]

## C.   **The DOJ Lawsuit**

The United States Department of Justice ("DOJ") initiated this lawsuit on October 23, 2019, over six years after CARB promulgated its linkage regulation related to Québec. Complaint, ECF #1. DOJ's Amended Complaint alleges four causes of action arising from various provisions of the U.S. Constitution: (1) the Treaty Clause (Art. I, § 10, cl. 1), (2) the Compact Clause (Art. I, § 10, cl. 3), (3) the Foreign Affairs Doctrine (based on case law interpreting various provisions of the U.S. Constitution), and (4) the Foreign Commerce Clause (Art. 1, §8, cl. 3). *See generally*, Amended Complaint, ECF #7. The crux of DOJ's lawsuit is that the Agreement frustrates the Executive Branch's ability to conduct foreign affairs and interferes with Congress' authority over foreign commerce. DOJ's lawsuit seeks a declaration that the Agreement and relevant portions of California law linking California's cap-and-trade program with Québec's are unlawful and a permanent injunction against any actions pursuant to that Agreement or those laws. Amended Complaint, ECF #7 at pp. 31-32.

---

[3] That 2013 agreement was updated in 2017 primarily to recognize the passage of regulations adding the Province of Ontario to the linkage. Although Ontario has subsequently withdrawn from the linkage and the 2017 agreement appears to be otherwise substantively identical to the 2013 agreement, DOJ's lawsuit purports to challenge the 2017 agreement rather than the 2013 agreement.

**D.    IETA's Interests**

IETA is a non-profit trade organization representing over 125 businesses worldwide, including numerous entities that have compliance obligations under California's and Québec's cap-and-trade programs. A list of IETA's full membership as of January 6, 2020 is appended hereto as Appendix A.  (An up-to-date list is available at https://www.ieta.org/Our-Members, last accessed January 5, 2020.)  IETA's members include some of North America's – and the world's – largest power, industrial, and financial corporations, including leaders in the oil and gas, electricity, manufacturing, mining, chemicals, and paper industries.  In addition to those members with GHG-reduction obligations under California and Québec law, IETA's members include others that offer a variety of services in the carbon market that has emerged under the linkage between California's and Québec's cap-and-trade systems, including allowance-trading brokerages and generators of offsets. IETA and its members have a shared goal of developing an emission trading regime that results in real and verifiable GHG emission reductions, thereby balancing economic efficiency with environmental integrity and social equity in a way that is both more efficient and more effective than traditional command-and-control regulatory regimes.

IETA is the leading voice of the business community on the design, implementation, and evaluation of mechanisms that harness the marketplace and private sector innovation to address climate change.  IETA's staff and multi-sector membership work closely with governments, leading academics, and environmental groups to inform the design, expansion, and overall functionality of these critical market mechanisms.  Indeed, IETA was active in advocating for the State's development of the cap-and-trade program.  It actively participated in the innumerable stakeholder processes that CARB has undertaken over the years to develop and modify the program.  IETA also has intervened or filed *amicus* briefs in

1    support of the State in two previous state lawsuits that challenged critical aspects of

2    the cap-and-trade program.[4]

3    Most, if not all, of IETA's members have a direct interest in both the outcome

4    of this litigation and the continued viability of the linkage with Québec.  The

5    business enterprises of many IETA members are subject to substantial compliance

6    obligations and costs under California's and Québec's cap-and-trade programs.

7    Other IETA members are part of the carbon value chain, bringing jobs into

8    California while creating real and verifiable GHG emission reductions by creating

9    and marketing compliance offsets.  Other IETA members are commercial entities

10   that facilitate the carbon market, thereby furthering the goals of AB 32, while

11   generating substantial employment and business opportunities within the State.

12   Included within IETA's membership are many businesses that are either based in

13   California or that have significant operations in the State, including large oil

14   companies; small and mid-sized energy businesses; many California public utilities

15   (both those regulated by the California Public Utilities Commission and Municipal

16   Utilities); offset generators; international non-governmental organizations; and a

17   variety of other businesses.

18   Many IETA members have made substantial investments in reliance upon the

19   continued viability of the linkage between California's and Québec's cap-and-trade

20   programs.  DOJ's lawsuit threatens to sever that linkage.  In the case of those IETA

21   members with compliance obligations in California that hold Québec allowances,

22   severance could jeopardize their ability to meet their California compliance

23   obligations.  In the case of those IETA members that have compliance obligations in

24   both jurisdictions and those that hold allowances for investment purposes, that result

25

26   [4] Those critical aspects were the offsets program, challenged in *Our Children's Earth Foundation v. California Air Resources Bd.*, 234 Cal. App. 4th 870 (Cal. Ct. App. 2015), in which IETA intervened, and

27   the allowance auctions program, challenged in *California Chamber of Commerce v. State Air Resources Bd.*, 10 Cal. App. 5th 604 (Cal. Ct. App. 2017), in which IETA filed an *amicus curiae* brief in the

28   California Court of Appeal.

SMRH:4850-1059-9344.5     UNOPPOSED MOTION OF INTERNATIONAL EMISSIONS TRADING ASSOCIATION
                          TO INTERVENE AS A DEFENDANT

could substantially depreciate the value of their holdings.  For those IETA members that provide services to the market, DOJ's lawsuit threatens the continued viability of their businesses.  In short, the private entities and businesses that constitute IETA's membership have a significant stake in DOJ's lawsuit.

## III.  ARGUMENT

### A.  IETA Is Entitled to Intervene As Of Right.

Federal Rule of Civil Procedure 24(a)(2) allows "anyone . . . who . . . claims an interest relating to the property or transaction that is the subject of the action" to intervene as a matter of right, if "disposing of the action may as a practical matter impair or impede" the prospective intervenor's "ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).  The Ninth Circuit applies a four-part test, allowing a party to intervene if it can show: "(1) it has a 'significant protectable interest' relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interests."  *Perry v. Schwarzenegger*, 630 F.3d 989, 903 (9th Cir. 2011).  In this inquiry, "[c]ourts are guided primarily by practical and equitable considerations," which "favor applicants for intervention."  *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003).

#### 1.  *The DOJ Lawsuit Threatens to Impede or Impair IETA's Members' Significant Protectable Interest In the Linkage*

"An applicant has a 'significant protectable interest' in an action if (1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims."  *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002).  The Ninth Circuit has "rejected the notion that Rule 24(a)(2) requires a specific legal or equitable interest.  *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980).  Rather, the 'interest test' is "a

practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *S. Cal. Edison Co*., 307 F.3d at 803.  "The relationship requirement is met if the resolution of plaintiff's claims actually will affect the applicant." *Id*.  The test for whether disposition of an action may impair or impede an applicant's interest has been characterized as "practical."  *See* 7C Charles Alan Wright, *et al*., Federal Practice & Procedure § 1908.2 (3d ed.) (citing, among other cases, *California ex rel. Lockyer v. United States*, 450 F.3d 436 (9th Cir. 2006) and *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001)).

Here, it cannot seriously be questioned that IETA's members have a significant protectable interest in the continued viability of the linkage.  Many of IETA's members hold emission allowances under either or both of California's and Québec's cap-and-trade regulations.  Those allowances are valuable, tradeable commodities on the secondary market and therefore confer upon IETA's members a property interest protected under California law.  Indeed, California's Court of Appeal has held that "emissions allowances consist of valuable, tradeable private property rights" that are protected by California law.  *California Chamber of Commerce v. State Air Resources Bd.*, 10 Cal. App. 5th 604, 649 (Cal. Ct. App. 2017) (emission allowance auction is not an illegal tax because "once purchased, either from [CARB] of the secondary market, the allowances are valuable, tradeable commodities, conferring on the holder the privilege to pollute").

Next, there is a definite and direct relationship between IETA's members' property interests and DOJ's claims.  DOJ's lawsuit seeks to sever the linkage between California's and Québec's cap-and-trade system, thus potentially rendering the Québec allowances held by IETA's members useless in California and *vice versa*.  For those IETA members with compliance obligations in California that currently hold Québec allowances, such a result would constitute a deprivation of private property rights conferred under California law.  Moreover, DOJ's lawsuit, if

-9-

successful, could result in a significant depreciation in the value of emission allowances held by IETA's members and would disrupt the market that undergirds the business model of IETA's members that operate as brokers and provide other financial and investment services in the emissions marketplace.  In short, it is manifest that DOJ's claims "actually will affect" IETA's members, and therefore "the relationship requirement is met."  *S. Cal. Edison Co.*, 307 F.3d at 803.  IETA's members should be afforded an opportunity to be heard in this lawsuit, lest they be deprived of their private property rights without due process of law.  *See*, U.S. Constitution, amend. V; *id.*, amend. XIV, § 1; *see also Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (*en banc*) ("[T]he interest test is primarily a practical guide to disposing of lawsuit by involving as many apparently concerned persons as it compatible with efficiency **and due process**.") (emphasis added).

### 2.   *IETA's Application Is Timely*

"Timeliness is 'the threshold requirement' for intervention as of right." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997). "To determine whether a motion to intervene is filed timely, the court considers:  (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Id.*

IETA's Motion to Intervene is filed at the earliest possible stage of this lawsuit.  In fact, the named defendants in this action have not yet answered DOJ's Amended Complaint.  DOJ filed this action on October 23, just over two months prior to IETA's filing of this Motion.  Although DOJ has filed a Motion for Summary Judgment, it did so less than one month after filing its Amended Complaint, and before any named defendant had responded to the Amended Complaint.  IETA has not delayed filing this Motion.

Moreover, there is no possibility of prejudice from IETA's intervention.  The only prejudice relevant to this analysis is that which results from a party's delay in

-10-

seeking to intervene, and "not from the fact that including another party might make resolution more difficult." *Smith v. L.A. Unified School Dist.*, 830 F.3d 843, 857 (9th Cir. 2016). Here, IETA's intervention will not cause any prejudice or undue delay and is unopposed.

### 3.   *IETA's Interests Are Not Adequately Represented By the Existing Parties*

In determining whether an applicant's interest would be represented adequately by a present party, a court considers: "(1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect." *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996). Intervention of right does not "require an absolute certainty that an applicant's interests will be impaired or that existing parties will not adequately represent its interests"; it only requires that the representation "may be" inadequate. *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 900 (9th Cir. 2011). Any doubt should be resolved in favor of intervention. *See Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003) (burden of showing inadequate representation is minimal).

Because a governmental entity such as the State of California represents broad public interests, a private intervenor with specific, narrow interests will usually be able to meet the "minimal" burden of showing inadequacy of representation by the governmental entity. *Brumfield v. Dodd*, 749 F.3d 339, 346 (5th Cir. 2014). *Brumfield* presented a situation remarkably similar to the present case. There, a parents' group sought to intervene on the side of the State of Louisiana in litigation brought by the United States Government over the state's school-voucher Scholarship Program. In analyzing whether the State adequately represented the parents' interests, the Fifth Circuit focused on the parents' interest in

-11-

"keeping their vouchers," an interest not shared by the State defendant. *Id*. While the court could not "say for sure that the state's more extensive interests will *in fact* result in inadequate representation, [ ] surely they might, which is all the rule requires." *Id*. (emphasis in original).

The same reasoning holds true here. California's broad interest in this lawsuit is unmistakably different than that of IETA's members, and those differences may limit the State parties' ability to defend IETA's interests. The State's interest in defending the linkage with Quebec arises from its responsibility to protect the public health and welfare of Californians, and to advance the economic well-being of California businesses. IETA's members, on the other hand, have a concrete and definite property interest in the allowances they hold, an interest that is above and beyond the State's broader and more abstract interest in defending its policy agenda.

As a result of these divergent interests, although IETA and the State likely share the same litigation goal (*i.e.*, to defeat DOJ's lawsuit and uphold the validity of the linkage), the State is not capable of raising some of the issues that IETA will. As just one example, while California and IETA may both argue that the linkage results in lower cost emission reductions, IETA's members will be able to support this position with evidence of concrete, real-world examples that show the linkage poses no "burden" to foreign commerce, but rather that it constitutes a significant benefit. In support of its equitable arguments against DOJ's position, IETA also will present evidence of its members significant investments in the integrated marketplace for allowances and thereby show that it is the DOJ lawsuit that would burden foreign commerce. Lastly, IETA will argue that the DOJ lawsuit seeks to deprive its members of their personal property, recognized by California law, without just compensation. IETA alone can advance these positions, among many others, and defend its members' rights arising from their significant monetary investment in emission allowances since 2013. California cannot advocate those positions.

SMRH:4850-1059-9344.5

Moreover, IETA's involvement would offer "necessary elements to the proceedings that other parties would neglect." *Nw. Forest Res. Council*, 82 F.3d at 838. DOJ's Amended Complaint portrays this dispute as one between "environmental" interests and "economic" interests, but the reality is much more nuanced. IETA's involvement will demonstrate that the business community is not unanimously aligned behind DOJ's position, but rather that the cap-and-trade system is one of sound economic policy that enjoys support from a broad range of stakeholders, particularly when the alternative is a more centralized, command-and-control style regulatory scheme.

Lastly, IETA's expertise in the field counsels that it should be granted leave to intervene. Simply put, IETA is a global leader in the design and implementation of market-based solutions to combat global warming. This is reflected and bolstered by the fact that IETA has over many years actively participated at every stage of the regulatory processes by which the State has developed and modified the cap-and-trade program challenged in this suit *and* has actively participated in two previous state court challenges to the program, once as an intervenor and once as an *amicus curiae,* both times in support of the State.

In *New York Pub. Interest Research Grp. v. Regents of the Univ. of New York*, 516 F.2d 350, 352 (2d Cir 1975), for example, the court permitted a group of pharmacists to intervene in a suit challenging a rule prohibiting price advertising of prescription drugs because the group was likely to "make a more vigorous presentation of the economic side of the argument than would the Regents." While IETA does not doubt the considerable resources and expertise of the California Attorney General's Office in defending this action, it is highly likely that IETA's members, as private participants in the emissions marketplace, will make a "more vigorous presentation of the economic side of the argument" than will California. *Id*. IETA's expertise has been demonstrated many times over the years through its active role in advocating for the State's development and reinement of the cap-and-

-13-

trade program and its role as an intervenor or *amicus curiae* in support of the State in previous lawsuits challenging the program.

### B.   Alternatively, This Court Should Grant IETA Permissive Intervention

In the alternative, should the Court find that IETA is not entitled to intervention as of right, the Court should grant IETA permissive intervention pursuant to Rule 24(b)(1)(b).  A party may be permitted to intervene if it has a claim of defense predicated on a question of law or fact common to the action.  Fed. R. Civ. P. 24(b)(1)(B); *see also Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011).  As discussed in detail above, IETA's defenses in this action are predicated on common questions of law and fact.  Additionally, as discussed above, IETA's intervention will not "unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  IETA's intervention will not cause undue delay or prejudice because Defendants have not yet responded to DOJ's Amended Complaint and no discovery has yet been propounded in this action.  Accordingly, if this Court concludes IETA is not entitled to intervene as of right, the Court should grant permissive intervention.

Dated:  January 6, 2020          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By:   _____
                     */s/ Nicholas W. van Aelstyn*
                   NICHOLAS W. VAN AELSTYN
                   ZACHARY M. NORRIS

                   Attorneys for Intervenor
              INTERNATIONAL EMISSIONS TRADING
                          ASSOCIATION

## APPENDIX A

**IETA MEMBERS AS OF JANUARY 6, 2020**

| |
|---|
| 3Degrees |
| ACT Financial Solutions |
| ACWA Power |
| AirCarbon |
| Aither CO2 |
| Allcot Group |
| American Carbon Registry, an enterprise of Winrock International |
| APX Inc. |
| Arbor Day Foundation |
| Argus |
| ATCO Group |
| Baker McKenzie |
| Bank of America Merrill Lynch |
| BGC Environmental Brokerage Services |
| BHP Billiton |
| Bloomberg New Energy Finance |
| Bluesource |
| BNP Paribas |
| BP |
| BP Target Neutral |
| BV Rio |
| C-Quest Capital |
| Canadian Standards Association Group |
| Capital Power Corporation |
| Carbon Credit Solutions Inc. |
| Carbon Sink Group |
| Carbonbay |
| CEZ Group |
| Chevron |
| China Light & Power (CLP) |
| ClearBlue Markets |
| Climate Action Reserve |
| Climate Care |
| Climate Neutral Group |
| ClimeCo |
| co2balance |

| |
|---|
| CO2logic |
| Commerzbank |
| CPE Cell Co. |
| DeMarco Allan |
| Dentons |
| DNV Global |
| DOW Chemical Company |
| Drax Group |
| EcoAct Group |
| Ecoeye |
| EcoMetrix |
| Ecosphere+ |
| EDF Trading |
| EKI Energy Services |
| Elbow River Marketing Ltd. |
| Enbridge |
| Enbridge Gas |
| Enel |
| Enerkey |
| Engie |
| ENI |
| Enviro-Mark Solutions |
| Environmental Commodity Partners |
| Equinor |
| European Energy Exchange |
| First Climate |
| Fortum Power and Heat |
| Green Assets |
| Gulf Organisation for Research & Development |
| Guotai Junan Securities |
| Hartree Partners |
| Hydro |
| Iberdrola Generacion Espana |
| ICIS |
| IHS |
| Inlandsis |
| Intercontinental Exchange (ICE) |
| KliK |
| Koch Supply & Trading |
| KOEN |

| |
|---|
| LafargeHolcim |
| Latham & Watkins |
| Linklaters |
| LNG Canada |
| Marubeni |
| Michelin |
| MicroEnergy Credits |
| Mitsui |
| Natural Capital Partners |
| Naturgy |
| Norton Rose Fulbright |
| Nova Chemicals |
| Nutrien |
| Ontario Power Generation |
| Permian Global Research |
| Petro China International |
| Pollination Capital |
| Powerex |
| PwC |
| Quimobasicos |
| ReedSmith |
| Refinitiv |
| Repsol |
| Rio Tinto |
| Ruby Canyon Engineering |
| RWE Supply and Trading |
| Shanghai Zhixin Carbon Asset Management |
| Shell |
| SheppardMullin |
| Sol Systems |
| Solvay Energy Services |
| South Pole Group |
| Statkraft Markets |
| Suncor Energy |
| SVD 38 (Dalkia) |
| TDR Energy |
| Terra Global Capital |
| The Climate Trust |
| The Delphi Group |
| Total |

| |
|---|
| Tradewater |
| TransCanada |
| Uniper |
| Vattenfall |
| Veolia Environnement Finance |
| VERRA |
| Vertis Environmental Finance |
| Vivid Economics |
| VNV Advisory Services |
| Woodside Energy |
| Xpansiv Data Systems |
| YC Consultants |