1  JEFFREY BOSSERT CLARK
   Assistant Attorney General
2  JONATHAN D. BRIGHTBILL
   Principal Deputy Assistant Attorney General
3  PAUL E. SALAMANCA
   R. JUSTIN SMITH
4  PETER J. MCVEIGH
   STEVEN W. BARNETT
5  Attorneys
   Environment & Natural Resources Division
6  U.S. Department of Justice
   950 Pennsylvania Ave., N.W., Room 2139
7  Washington, D.C. 20530

8  Attorneys for the United States

9              UNITED STATES DISTRICT COURT

10         FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12  UNITED STATES OF AMERICA,            )    No. 2:19-cv-02142-WBS-EFB
                                         )
13              Plaintiff,               )
                                         )
14         v.                            )    **PLAINTIFF UNITED STATES OF**
                                         )    **AMERICA'S OPPOSITION TO WCI, INC.**
15  THE STATE OF CALIFORNIA; GAVIN       )    **DEFENDANTS AND DEFENDANT**
    C. NEWSOM, in his official capacity as )   **BLUMENFELD'S MOTION TO DISMISS[1]**
16  Governor of the State of California; THE )
    CALIFORNIA AIR RESOURCES BOARD; )
17  MARY D. NICHOLS, in her official     )
    capacities as Chair of the California Air )
18  Resources Board and as Vice Chair and a board )
    member of the Western Climate Initiative, Inc.; )
19  WESTERN CLIMATE INITIATIVE, INC.; )
    JARED BLUMENFELD, in his official    )
20  capacities as Secretary for Environmental )
    Protection and as a board member  of the )
21  Western Climate Initiative, Inc.; KIP LIPPER, in )
    his official capacity as a board member of the )
22  Western Climate Initiative, Inc., and RICHARD )
    BLOOM, in his official capacity as a board )
23  member of the Western Climate Initiative, Inc., )
                                         )
24              Defendants.              )
                                         )
   _____  )

25  _____

26  [1]Movants include Western Climate Initiative, Inc. ("WCI"), certain officers of the State of
    California, in their capacity as members of WCI's board (collectively the "WCI
27  Defendants"), and Jared Blumenfeld, in his capacity as California's Secretary for
    Environmental Protection (collectively "Movants").

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION................................................................................................................1

LEGAL STANDARDS.......................................................................................................2

I.     Standing................................................................................................................2

II.    Pleading................................................................................................................3

ARGUMENT......................................................................................................................3

I.     The WCI Defendants are state actors.................................................................4

       A.    California, Quebec, and WCI have interlocking directorates....................5

       B.    California's program, Quebec's program, the integrated program, and WCI have a demonstrably shared history..........................7

       C.    The WCI Defendants are state actors, fully subject to the Constitution.............................................................................10

II.    Because WCI and the Officer Defendants are state actors they are proper subjects for the United States' suit.................................................14

III.   The United States alleges plausible claims against the WCI Defendants............................................................................................16

IV.   Secretary Blumenfeld is a proper defendant....................................................17

CONCLUSION.................................................................................................................18

# TABLE OF AUTHORITIES

## Cases

*American Insurance Ass'n v. Garamendi*,
539 U.S. 396 (2003)...........................................................................4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................3

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1988)...............................................................3

*Barker v. Riverside Cty. Office of Educ.*,
584 F.3d 821 (9th Cir. 2009)...............................................................3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).........................................................................3, 4

*Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*,
531 U.S. 288 (2001)....................................................................*passim*

*Ex parte Young*
209 U.S. 123 (1908)...........................................................................4

*Fabbrini v. City of Dunsmuir*,
544 F.Supp.2d 1044 (E.D. Cal. 2008)..................................................14

*Hines v. Davidowitz*,
312 U.S. 52 (1941)............................................................................1

*Jackson v. Metropolitan Edison Co.*,
419 U.S. 345 (1974)......................................................................10, 11

*Lebron v. National Railroad Passenger Corporation*,
513 U.S. 374 (1995)..................................................................5, 12, 17

*Lee v. Katz*,
276 F.3d 550 (9th Cir. 2002)..........................................................12, 14

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014)..........................................................2, 15

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)........................................................................3, 14

*National Collegiate Athletic Ass'n v. Tarkanian*,
488 U.S. 179 (1988)..........................................................................11

*Robinson v. Sheriff of Cook County*,
    167 F. 3d 1155 (7th Cir. 1999)..................................................................16

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004)....................................................................2

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013)......................................................................3

*St. Clair v. City of Chico*,
    880 F.2d 199 (9th Cir. 1989)......................................................................8

*U.S. Term Limits v. Thornton*,
    512 U.S. 779 (1995)..................................................................................13

*United States Steel Corp. v. Multistate Tax Commission*,
    434 U.S. 452 (1978)...........................................................................11, 15

*United States v. S. Cal. Edison Co.*,
    300 F.Supp.2d 964 (E.D. Cal. 2004)........................................................14

*Zivkovic v. Southern California Edison Co.*,
    302 F.3d 1080 (9th Cir.2002)...................................................................16

**Statutes**

2 U.S.C. § 25a..............................................................................................7

Cal. Gov. Code § 12812.6.........................................................................17

Cal. Health & Safety Code § 12894(b)(1) ................................................6

Cal. Health & Safety Code § 12894(b)(1)(A)...........................................6

Cal. Health & Safety Code § 12894(b)(1)(D)...........................................6

Cal. Health & Safety Code § 38564..........................................................8

**Court Rules**

Fed. R. Civ. P. 8(a)(2).................................................................................3

Fed. R. Evid. 801(d)(2)..............................................................................14

**Other Materials**

State of California, Air Resources Board, Linkage Readiness Report Nov. 1, 2013),
    *available at* https://ww3.arb.ca.gov/cc/capandtrade/linkage/arb_linkage_
    readiness_report.pdf (last visited Jan. 27, 2020)........................................14

The Federalist No. 4, (John Jay) (Clinton Rossiter ed., Signet 2003 ............17

**INTRODUCTION**

Defendant Western Climate Initiative, Inc. ("WCI") claims to be "the largest carbon market in North America, and the *only* one *developed* and *managed by governments* from two different countries."[2]  This admission succinctly captures how and why WCI and its directors are state actors.  As such, they are as liable to suit as the government they serve. *See*, *e.g.*, *Brentwood Acad. v. Tennessee Secondary School Athletic Ass'n,* 531 U.S. 288, 295 (2001).  The unlawful acts of that government can be redressed by and through them.

For WCI is no independent, private enterprise.  It does not just happen to serve California and Quebec as two customers among many.  It is a nonprofit entity, governed by its participatory jurisdictions in accordance with its by-laws.  Its Officer Defendants are appointed by and serve on behalf of California.  Indeed, the *State's* lawyers are also *WCI's* lawyers in this case—having put their names to the instant motion to dismiss.[3]

The Constitution gives the federal government full and exclusive responsibility to conduct our nation's foreign affairs. *See Hines v. Davidowitz*, 312 U.S. 52, 63 (1941).  This exclusive assignment enables the United States to speak with one voice on the international stage and to negotiate competitive agreements on behalf of the nation as whole.  *See Baker v. Carr*, 369 U.S. 186, 211 (1962).  Despite the Constitution's command, California has entered into an integrated cap-and-trade program with Quebec.[4]  To preserve the federal government's flexibility to act in this area, and to uphold the clear text and structure of the Constitution, the United States brought suit against California and certain inextricably

---

[2]Amended Complaint ¶ 151 (hereinafter "Am. Compl.") (ECF 7) (citing WCI, Annual Report – 2018: Activities and Accomplishments, which includes the quoted language at 1) (hereinafter "WCI's 2018 Annual Report") (emphasis added).

[3]*Compare* Motion to Dismiss at 1 *with* Answer to Amended Complaint of State of California et al. at 1 (ECF 24).

[4]Agreement on the Harmonization and Integration of Cap-and-Trade Programs for Reducing Greenhouse Gas Emissions (hereinafter "Agreement").

1  related defendants that California uses to violate the Constitution.  The United States asks

2  this Court to declare this agreement unlawful.[5]

3       Movants primarily seek to excuse WCI, a key organ of California's foreign policy,

4  from suit.  They attack the United States' standing to sue.  They assert the insufficiency of

5  its claims against the supposedly independent WCI.  On similar grounds, they seek dismissal

6  of several individuals sued in their capacity as members of WCI's board.  Relatedly, they

7  seek dismissal of Defendant Jared Blumenfeld in his capacity as California's Secretary for

8  Environmental Protection.  But in its amended complaint, the United States more than

9  plausibly alleges a coordinated effort on Defendants' part to establish a single, jointly

10 operated carbon market.  The WCI Defendants are state actors.  They wittingly aid and serve

11 as California's tools to implement its constitutional violations.  In other words, both Moving

12 and Non-Moving Defendants are, in law and fact, the *same* state parties carrying out the

13 *same* illegal acts and pursuing the *same* unconstitutional Agreement.  This motion should

14 be denied.

**LEGAL STANDARDS**

15

16 **I.    Standing**

17     "A Rule 12(b)(1) jurisdictional attack may be facial or factual."  *Safe Air for*

18 *Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  This attack is facial.  Movants

19 submit no external evidence in their challenge to standing.  Instead, they focus on whether

20 the United States' allegations "are insufficient on their face to invoke federal jurisdiction."

21 *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone*, 373

22 F.3d at 1039).  The Court should therefore "[a]ccept[] the plaintiff's allegations as true and

23 draw[] all reasonable inferences in the plaintiff's favor."  *Leite*, 749 F.3d at 1121.  To

24 _____

25 [5]In a pending motion, the United States asks this Court to declare the Agreement

26 unconstitutional.  *See* United States of America's Notice of Motion, Motion for Summary
   Judgment, and Brief in Support Thereof (ECF 12) (hereinafter "Motion for Summary
   Judgment").

27

28

Plaintiff United States of America's Opposition to WCI, Inc. Defendants and Defendant Blumenfeld's
Motion to Dismiss                                                                    Page 2

establish standing, the United States must show (1) injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice . . . ." *Id.* at 561.[6]

## II.    Pleading

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Such a statement need not include "detailed factual allegations" but must be sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted). When evaluating a complaint's sufficiency, a court must "accept as true the facts alleged in the complaint," and "draw inferences in the light most favorable to the plaintiff." *Barker v. Riverside Cty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009). Dismissal is appropriate only if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S at 570. "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## ARGUMENT

The detailed allegations in the amended complaint are more than adequate to establish the United States' standing for each claim and against each defendant. The United

---

[6]The United States respectfully submits that, even if this Court were to construe Movants' attack as factual, which it is not, it has provided a more than adequate basis for denying the motion under Rule 12(b)(1).

1   States also presents clear and identifiable claims upon which relief can be granted.

2   Defendants have ample notice of "what the . . . claim is and the grounds upon which it rests."

3   *Twombly*, 550 U.S. at 555.  Movants' arguments under Rules 12(b)(1) and 12(b)(6) rely on

4   the unsustainable assumption that WCI is not a state actor.  The United States has plausibly

5   alleged that they are.  Once this assumption is rejected—as it should be—the motion

6   proffered by WCI becomes untenable.

7        **I.        The WCI Defendants are state actors.**

8            The United States brought this action against California, its Governor, the California

9   Air Resources Board ("CARB"), CARB's Chair, California's Secretary for Environmental

10  Protection, WCI, and four people who serve on WCI's board.  Of these defendants, ***only*** the

11  last six now ask to be dismissed as parties.  The first four have *not* moved to dismiss.[7]  But

12  close analysis reveals they are not relevantly distinguishable from the non-moving

13  Defendants in a way that would justify such relief.  As signatories to the agreement,

14  California and CARB are obviously suable.  Under *Ex parte Young*, officers of the State

15  who are responsible for violating the Constitution may also be sued.[8]  209 U.S. 123, 155–

16  56 (1908); *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396 (2003).  Thus the Governor and

17  CARB's Chair may be sued, as may the Secretary for Environmental Protection, given his

18  supervisory responsibilities for CARB.[9]

19

20

21

22  [7]The State of California, the Governor, CARB, and the Chair of CARB answered the
    amended complaint on January 6, 2020, the same day that Movants asked to be dismissed.
23  See Answer to Amended Complaint of State of California et al. at 1.

24  [8]Because the Eleventh Amendment is no bar where the United States sues on its own behalf,
    suit pursuant to *Ex parte Young* against individual state agents is not required.  But nothing
25  precludes the United States from suing both the entity WCI and its responsible officers (in
    their official capacities) for relief.  Moreover, because the United States brings this action
26  against these Officer Defendants in their official capacity, any concern about personal
    liability is misplaced.  *See* Motion to Dismiss at 19.

27  [9]See *infra* Part IV.

28  Plaintiff United States of America's Opposition to WCI, Inc. Defendants and Defendant Blumenfeld's
    Motion to Dismiss                                                                    Page 4

The WCI Defendants argue that they should be dismissed because they are outside California's governmental structure. But such simple formalities do not control in this area of the law. As the Supreme Court observed in *Brentwood Academy*, "[i]f the [Constitution] is not to be displaced, . . . its ambit cannot be a simple line between States and people operating outside formally governmental organizations . . . ." 531 U.S. at 295. *See also Lebron v. Nat'l R.R. Passenger Corporation*, 513 U.S. 374, 392 (1995) ("If Amtrak is, by its very nature, what the Constitution regards as the Government, congressional pronouncement that it is not such can no more relieve it of its First Amendment restrictions than a similar pronouncement could exempt the Federal Bureau of Investigation from the Fourth Amendment.").

Although Movants describe WCI as a mere private vendor, the facts of this case, as plausibly alleged by the United States, and as confirmed in many respects by Defendants, refute this. These facts fall in two categories. First is the overwhelming evidence of an interlocking directorate between California, Quebec, and WCI. Second is the demonstrably shared history of California's program, Quebec's program, the integrated program, and WCI. To a large extent, these phenomena are fruits of the same poisonous tree.

**A. California, Quebec, and WCI have interlocking directorates.**

To an outside observer, it is not possible to tell precisely who among the officers of California and WCI does what, while wearing what hat. Take, for example, the issue of signatories. Although Movants argue that "WCI, Inc and its board members . . . are not parties to the agreement,"[10] to say this they must minimize the fact that Defendant Mary D. Nichols actually *is* a signatory to the agreement. Ms. Nichols is also a Class A (voting) director of WCI. Ms. Nichols may argue—and indeed she does argue—that she wears one hat as Chair of the California Air Resources Board ("CARB") and another as a Class A

---

[10]Notice of Motion and Motion to Dismiss by the WCI, Inc. Defendants and Defendant Blumenfeld in his Official Capacity as Secretary for Environmental Protection at 1 (ECF 25) (hereinafter "Motion to Dismiss").

1  director of WCI.  Motion to Dismiss at 8 n. 8.  But even this claim fights the facts.  California

2  *requires* CARB's Chair, or her designee, to serve on WCI's board.  *See* CAL. HEALTH &

3  SAFETY CODE § 12894(b)(1) ("The California membership of the board of directors of the

4  Western Climate Initiative, Incorporated, shall be modified as follows . . . (C) The

5  Chairperson of the State Air Resources Board or her or his designee.").  And WCI's by-

6  laws explicitly provide that its "Board shall consist of two Class A directors *from each of*

7  *the Participating Jurisdictions*."  By-Laws of Western Climate Initiative, Inc. § 4.2 at 5

8  (emphasis added).  The by-laws go on to provide that "California's Class A directors "shall

9  be two individuals, each of whom is *an employee or officer of the state*, named in accordance

10  with *the state's requirements*."  *Id.* § 4.2(a) at 6 (emphasis added).  Thus, far from being a

11  member of WCI's board *despite* her status as CARB's Chair, Ms. Nichols actually serves

12  in that second capacity *because* she holds that position.  This reveals Ms. Nichols' purported

13  two hats to be a single one that she can turn around.

14        Much the same can be said about Defendant Jared Blumenfeld.  Although he is not

15  a signatory to the agreement, he also wears a single hat that he turn two ways—one as

16  California's Secretary for Environmental Protection (and Ms. Nichols' supervisor in many

17  respects), and another as a Class A (voting) member of WCI's board.  California requires

18  him as well, or his designee, to serve on WCI's board.  *See* CAL. HEALTH & SAFETY CODE

19  § 12894(b)(1)(D).  *See also id.* § 12894(c) (describing the Chair of CARB and the Secretary

20  for Environmental Protection as "the California voting representatives on the Western

21  Climate Initiative, Incorporated").

22        Likewise, Defendants Kip Lipper and Richard Bloom serve as Class B (non-voting)

23  members of WCI's board.  They do not serve *in spite of* their role in California's legislature,

24  but *because of* it.  California requires an appointee of each chamber of its legislature to serve

25  on WCI's board.  *See* CAL. HEALTH & SAFETY CODE § 12894(b)(1)(A) ("One appointee or

26  his or her designee . . . shall serve as an ex officio nonvoting member [and] shall be

27  appointed by the Senate Committee on Rules."); *id.* § 12894(b)(1)(B) (One appointee or his

28

1   or her designee . . . shall serve as an ex officio nonvoting member [and] shall be appointed

2   by the Speaker of the Assembly.").    Additionally, WCI's by-laws accommodate this

3   requirement, providing that "each Participating Jurisdiction shall have the right to name up

4   to two individuals, each of whom is *an employee, officer or elected officer of the jurisdiction*

5   as Class B directors . . . ."  By-Laws of Western Climate Initiative, Inc. § 4.2 at 6 (emphasis

6   added).  This bicameral representation is more than curious.  The District of Columbia sends

7   a non-voting delegate to the House of Representatives.  *See* 2 U.S.C. § 25a.  But no one

8   thinks of this person as a non-governmental actor.

9        Quebec too has an interlocking relationship with WCI.  Under WCI's by-laws, its

10  Class A (voting) directors "shall be two *employees of the province* named by the Deputy

11  Minister for Environment . . . ."  *Id.* § 4.2(c) at 6 (emphasis added).  As with California, it

12  is hard to know where the political jurisdiction ends and the ostensibly private vendor

13  begins.[11]

14       These interlocking directorates by themselves establish that WCI is as much a joint

15  instrumentality of California and Quebec as CARB is an instrumentality of California alone.

16  The blended history of WCI and the various programs at issue in this case, including the

17  integrated program, provide further plausible and specific evidence of WCI's service as a

18  state actor for California.

19       **B. California's program, Quebec's program, the integrated program, and
20           WCI have a demonstrably shared history.**

21       Movants strain to describe California's and Quebec's programs as "adopted

22  independently."  Motion to Dismiss at 1.  The facts on the ground set forth by the United

23  States, and as confirmed in many respects by Defendants, tell a much different story:

24

25

26  _____

27  [11]The United States refers to Quebec solely to describe the parties' relationships.  It does
    not suggest that Quebec is subject to the Constitution.

28

(1)   In 2006, California enacted the "*Global* Warming Solutions Act" (AB 32) (emphasis added), which requires the state to "facilitate the development of *integrated* . . . *international* greenhouse gas reduction programs."   Am. Compl. ¶ 58 (quoting CAL. HEALTH & SAFETY CODE § 38564) (emphasis added).   Thus, from as long ago as 2006, California has sought to project itself, in law, beyond the borders of the United States.

(2)   From 2007 to 2010, California and Quebec collaborated under the auspices of WCI's predecessor, the Western Climate Initiative, to develop a regional cap-and-trade program.   *See id.* ¶ 137.   *See also* State of California, Air Resources Board, Linkage Readiness Report at 13–14 (Nov. 1, 2013) ("California and Québec have a long track record collaborating on their respective program regulations and regulatory changes, dating back to the 2008 and 2010 WCI program design recommendations . . ., and the regulatory actions that followed.").[12]

(3)   In October 2011, California adopted a cap-and-trade program explicitly contemplating that "compliance instrument[s] issued by an *external* greenhouse gas emissions trading scheme . . . may be used to meet" the state's regulatory requirements. Am. Compl. ¶ 61 (quoting CAL. CODE REGS. ("CCR"), tit. 17, § 95940 (2019) (emphasis added).

(4)   In November 2011, the participants in the Western Climate Initiative formed Defendant WCI to promote a regional cap-and-trade program.   *See id.*   ¶¶ 141–42, 14 (quoting Defendant WCI's charter).[13]

---

[12]This document is available at https://ww3.arb.ca.gov/cc/capandtrade/linkage/arb_linkage_readiness_report.pdf (last visited Jan. 27, 2020).   This document is attached as Exhibit A to the United States' Request for Judicial Notice, etc., submitted herewith.  The United States may advert to "any other evidence necessary" to establish this Court's jurisdiction.  *See St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

[13]Movants concede that "[t]he jurisdictions then within the Western Climate Initiative established WCI, Inc as a non-profit corporation in 2011."  Motion to Dismiss at 5 n.6.

(5)  Quebec adopted its program in December 2011, only two months after California did so, and only one month after Defendant WCI was formed.  Motion for Summary Judgment at 6 (citing Regulation Respecting a Cap-and-Trade System for Greenhouse Gas Emission Allowances (chapter Q-2, r. 46.1, Appendix B.1(2) (s. 37)).

(6)  The Attorney General of California advised the Governor that "[a]ny jurisdiction that wishes to link with the California program . . . will need to be a member of WCI, Inc. . . . ."  Am. Compl. ¶ 145 (quoting Letter from Robert W. Byrne, Senior Assistant Attorney General, to Peter Krause, Legal Affairs Secretary, Mar. 16, 2017, at 9) (hereinafter "Byrne Letter").  In this way, California expressly positioned WCI as its state-sanctioned and state-controlled conduit for joining with foreign jurisdictions.

(7)  CARB entered into an agreement with WCI in February 2012, shortly after California and Quebec adopted their programs.  *See id.* ¶ 142 (describing Agreement 11-415 Between Air Resources Board and Western Climate Initiative, Incorporated).[14]

(8)  California and Quebec first integrated their programs in 2013, the following year.  *See id.* ¶ 57.

(9)  California and Quebec have a controlling stake in WCI.  *See id.* ¶ 15 (citing WCI's by-laws, which provide that "[t]he Board shall consist of two Class A directors from each Participating Jurisdiction . . . .").[15]

(10)  WCI represents to the world that such a thing as "the *WCI carbon market*" exists, even as it tells this Court that it merely provides services to California and Quebec. *See id.* ¶ 151 (citing WCI, Annual Report – 2018: Activities and Accomplishments, which

---

[14]Movants appear to ask for the dismissal of Agreement 11-415 as if it were a defendant. *See* Motion to Dismiss at 13–14.  The United States relies on Agreement 11-415 only to establish the inextricable connection between the various defendants in this matter.

[15]Movants essentially concede this point.  *See* Motion to Dismiss at 16 ("WCI Inc.'s Board currently has six voting members and is permanently set up so that all participating jurisdictions [including Nova Scotia] have an equal number of representatives on the Board.").

1   includes the quoted language at 1) (emphasis added) (hereinafter "WCI's 2018 Annual

2   Report").

3       This shared history refutes any claim that California and Quebec adopted their

4   programs "independently." This is no mere parallelism by happenstance. This is classic

5   *coordinated* conduct. It also highlights the difficulty, if not impossibility, of knowing

6   exactly who causes what, while wearing what hat (or the same hat turned around). Movants

7   try to claim WCI as a mere vendor. But the facts as plausibly alleged by the United States,

8   and as confirmed in many respects by Defendants, instead suggest that California and

9   Quebec control, coordinate, and drive the train *through* WCI, rendering WCI a state actor.[16]

10      **C.  The WCI Defendants are state actors, fully subject to the Constitution.**

11      Against overwhelming evidence that WCI is an actor implementing the

12  governmental policies of California and Quebec, Movants cherry-pick among tests for state

13  action. They rely most heavily on those that support their argument that the WCI

14  Defendants are not state actors, while sidestepping those that do not. To be sure, there are

15  many tests for state action, and they are not models of clarity. But behind each test is an

16  inquiry into whether there is a "close nexus between the State and *the challenged action*,"

17  such that seemingly private behavior "'may be fairly treated as that of the State itself.'"

18  *Brentwood Acad.,* 531 U.S. at  295 (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345,

19  351 (1974)). The facts as plausibly alleged easily satisfy that test. As explained above,

20  California, Quebec, and WCI have visibly interlocking directorates, to the point where no

21  outside observer can tell where the overtly political jurisdictions leave off and the ostensibly

22  private (non-profit) "vendor" begins. In addition, the various programs at issue in this case,

23

24

25

26  [16]The United States concedes that "'WCI could be replaced by another entity,'" in the sense
    that another entity with its precise characteristics, but another name, could replace it.
    Motion to Dismiss at 9 (quoting ECF No. 18 at 9:17). If this were the case, however, that
27  new entity would be a state actor.

28

1    including the integrated program, have such interrelated origins that no observant person

2    could conclude that they arose truly "independently."

3        Movants cannot dislodge these well-supported and legally weighty allegations.

4    They contend that WCI cannot possibly be an instrumentality of California because it

5    controls only a third of WCI's board. *See* Motion to Dismiss at 16. But the relevant question

6    is not whether California *alone* controls WCI, but instead whether the *parties to the*

7    *agreement* control WCI. Not only is the answer to this question obviously "yes," but

8    Movants essentially concede it. *See id.* ("WCI's Board currently has six voting members

9    and is permanently set up so that all participating jurisdictions [including Nova Scotia] have

10   an equal number of representatives on the Board."). Because the parties to the Agreement

11   control WCI, and because the WCI entity embodies and implements the unlawful

12   agreement, WCI is plausibly a "state" actor subject to the Constitution.

13       Indeed, any other conclusion would turn *United States Steel* on its head. In that case,

14   21 states were members of the Multistate Tax Commission. *See United States Steel Corp.*

15   *v. Multistate Tax Comm'n*, 434 U.S. 452, 454 (1978). Were Movants' claim tenable—which

16   it is not—the Commission would not have qualified as a state actor because it was subject

17   to 21 different masters. Under Movant's impossible theory, the broader a joint

18   instrumentality's membership, the less susceptible it would be to attack. This cannot be—

19   and isn't. When the conduct that the Constitution prohibits is formal political association,

20   as here, the fact that the association has more than one member cannot be a defense. This

21   renders the *Tarkanian* case inapposite. The alleged violation in that case was a denial of

22   due process, not the formation of an association that the Constitution prohibits. *See Nat'l*

23   *Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 181 (1988). The fact that California

24   shares control of WCI with Quebec cannot bar a finding of state action.[17]

25   _____

26   [17]Nor should Quebec's status as a foreign jurisdiction preclude this result. Otherwise,
      instrumentalities subject to the joint control of states and foreign powers could
27   simultaneously violate the Constitution and be immune to attack. This would enable states

28

1    Movants next argue that WCI is not a state actor because it does not perform a

2  "traditional and exclusively governmental" function. Motion to Dismiss at 16. This

3  argument fails in two ways. First, it assumes the very point in controversy. If, as the United

4  States plausibly alleges, California and Quebec implement their integrated regime *through*

5  WCI, then WCI in fact is implementing the "traditionally and exclusively governmental"

6  function of regulating private conduct. Second, this argument incorrectly presupposes that

7  a plaintiff must satisfy every test for state action to prevail. As both the Ninth Circuit and

8  the Supreme Court have emphasized, however, a plaintiff need only satisfy one test,

9  provided no countervailing factors preclude such a finding, which is not a problem here.

10  *Lee v. Katz*, 276 F.3d 550, 554 (9th Cir. 2002) (citing *Brentwood Acad.*, 531 U.S. at 295).

11  As the Supreme Court has explained, the various tests for state action reflect the complexity

12  of this area of the law. "[W]hat is fairly attributable [to the government] is a matter of

13  normative judgment, and the criteria lack rigid simplicity." *Brentwood Acad.*, 531 U.S. at

14  296. A wide variety of circumstances can support a finding of state action, and "examples

15  may be the best teachers" in this area of the law. *Id.* For example, in *Lebron v. National*

16  *Railroad Passenger Corporation*, the Supreme Court held that Amtrak was bound by the

17  First Amendment because it was organized to satisfy the government's objectives and "its

18  board of directors [was] controlled by Government appointees." 513 U.S. at 391. As the

19  Court explained in that case, Amtrak was the government *despite* its characterization as a

20  private actor in federal statute. *Id.* at 384–85. Likewise, in *Brentwood Academy*, the Court

21  found state action where a non-profit association consisting mostly of public high schools

22  in Tennessee set and enforced rules for high school athletics. *See* 531 U.S. at 297–99.

23  Neither of these cases required, as Movants suggest, a finding that the entity exercise a

24

25  _____

26  to circumvent the provisions of the Constitution that allocate the field of the foreign affairs
   exclusively to the federal government.

27

28

1   "traditional and exclusively governmental" function.  Indeed, the entities in *Lebron* and

2   *Brentwood Academy* might well have failed this test.[18]

3       Movants' final claim, that WCI is not subject to the Constitution because its

4   activities are not entwined with the State's, is wide of the mark.  As Movants correctly note,

5   an organization's "private character" may be "overborne by [its] pervasive entwinement"

6   [with its member public entities] in its composition and workings."  Motion at 17 (quoting

7   *Brentwood Acad.*, 531 U.S. at 298).  Movants try to distinguish *Brentwood Academy* by

8   arguing that WCI stays afloat by providing services to its participants, not by "stepping into

9   California's shoes."  Motion to Dismiss at 17.

10      But this has it backwards. California and Quebec are stepping into and wearing

11  *WCI's* shoes.  WCI embodies and is the tool by which California implements the unlawful

12  agreement.  *See* Am. Compl. ¶ 145 (quoting Byrne Letter at 9) ("*Any jurisdiction that wishes*

13  *to link with the California Program . . . will need to be a member of WCI, Inc.* and will use

14  the California-developed infrastructure for the combined Programs.") (emphasis added).

15  Indeed, almost every dollar WCI receives comes from California or Quebec, with a small

16  contribution from Nova Scotia.  *See id.* ¶ 133 (citing WCI's 2018 Tax Return, which

17  includes this information).  That money facilitates "the WCI carbon market," which includes

18  joint auctions and the joint tracking of allowances and offsets. *Id.* ¶ 151 (citing WCI's 2018

19  Annual Report, which includes the quoted phrase at 1).  In fact, WCI proclaims in this report

20  that it "represents the largest carbon market in North America, and the only one developed

21  and managed by governments from two different countries." *Id.* ¶ 151 (quoting WCI's 2018

22  Annual Report at 1).  Though Movants are correct that the acts of private contractors do not

23  ordinarily constitute state action, WCI is not a private contractor in any sense.  It was created

24  _____

25  [18]Nor is legal novelty in the design of an unconstitutional scheme a defense.  "The
    Constitution nullifies sophisticated as well as simple-minded modes of infringing on
26  constitutional provisions."  *U.S. Term Limits v. Thornton*, 512 U.S. 779, 829 (1995) (internal
    quotation marks omitted).

27

28

to implement California's statutes and international relations and to serve "the WCI carbon market." And it is in fact controlled by the signatories to the unconstitutional agreement through its Officer Defendants.[19] For these reasons, the Court should hold that the WCI and its Officer Defendants are state actors.[20]

## II.    Because WCI and the Officer Defendants are state actors, they are proper subjects for the United States' suit.

Movants claim that they do not cause the United States' injury, and that no relief against them would redress that injury. This depends entirely on the misplaced notion that they are something other than actors for the state's execution of an unconstitutional agreement. As explained above, this is not the case. California cannot use a non-profit corporation to shield its enterprise. As the Supreme Court observed in *Brentwood Academy*, "[i]f the [Constitution] is not to be displaced, . . . its ambit cannot be a simple line between States and people operating outside formally governmental organizations . . . ." 531 U.S. at 295.

To establish standing, a plaintiff must show (1) injury in fact, (2) a causal connection between the injury and the conduct at issue, and (3) likelihood that the requested relief, if granted, would redress that injury. *See Lujan*, 504 U.S. at 560–61. Where standing is

---

[19]Movants purport to extract from WCI's by-laws an exhaustive list of its functions. *See* Motion to Dismiss at 5–6. But "documents are judicially noticeable only for the purpose of determining what statements are contained therein, not to prove the truth of the contents or any party's assertion of what the contents mean." *Fabbrini v. City of Dunsmuir*, 544 F. Supp. 2d 1044, 1048 (E.D. Cal. 2008) (citing *United States v. S. Cal. Edison Co*., 300 F. Supp. 2d 964, 975 (E.D. Cal. 2004) (internal citations omitted)). The United States plausibly pleads that more is going on. Moreover, unlike Movants, the United States may rely on such materials as WCI's by-laws in response to the instant motion as they constitute statements by a party opponent. *See* Fed. R. Evid. 801(d)(2).

[20]Movants improperly suggest that the United States must establish state action at this stage of the litigation "'by a preponderance of the evidence.'" Motion to Dismiss at 15 (quoting *Lee v. Katz*, 276 F.3d 550, 553–54 (9th Cir. 2002). But the court in *Lee v. Katz* was reviewing a judgment after a bench trial, not an order granting a motion to dismiss. *See id.* at 552.

attacked on facial grounds, as here, a court "[a]ccept[s] the plaintiff's allegations as true and draw[s] all reasonable inferences in the plaintiff's favor." *Leite,* 749 F.3d at 1121.   The United States easily meets this standard.   It has established that California, Quebec, and WCI have interlocking directorates.  *See supra* Part I-A.  It has also specifically alleged that the parties' cap-and-trade programs, including the integrated program, have a closely shared history.  *See supra* Part I-B.  In addition, WCI proclaims that it "represents the largest carbon market in North America, and the only one developed and managed by governments from two different countries."  Am. Compl. ¶ 151 (quoting WCI's 2018 Annual Report at 1).  In this respect, the United States only alleges what WCI tells the world.  Because the United States plausibly and specifically alleges that WCI is an actor for California and *source* of its injury, both causation and redressability are established.

In a very real sense, we have seen this phenomenon before.   In a famous case involving the Compact Clause, *United States Steel*, the plaintiffs did not bring their case against the states that formed the Commission.   They sued the Commission itself, "its individual Commissioners, and its Executive Director."   434 U.S. at 458.  Nowhere in its opinion did the Court suggest that the Commission and its officers were not proper defendants.    To be sure, the agreement in that case specifically provided for the establishment of the Commission.  *See id.* at 456.  But here the parties acknowledge that they are "participants of the Western Climate Initiative, Inc. . . . ."  Agreement at 2 (second WHEREAS clause).  The parties also agree to "continue coordinating administrative and technical support through the WCI, Inc., an entity which was created to perform such services."  Agreement, Art. 12.  In addition, we know that California requires any counter-party in an integrated cap-and-trade agreement to join WCI.  *See* Am. Compl. ¶ 145 (quoting Byrne Letter at 9) ("Any jurisdiction that wishes to link with the California Program . . . will need to be a member of WCI, Inc. and will use the California-developed infrastructure for the combined Programs.").  WCI is thus as much baked into the cake of the agreement as the Multistate Tax Commission was in *United States Steel*.

It is also true that the Multistate Tax Commission itself was intent on subjecting the plaintiffs in *United States Steel* to audits.  But the facts here, as confirmed in many respects by Defendants, are not materially different.  California, Quebec, and WCI have visibly interlocking directorates, precluding an outsider from knowing exactly who does what, while wearing what hat.  As far as any outsider can tell, "the WCI carbon market" is exactly what it says it is: "*the largest carbon market in North America*, and the only one developed and managed *by governments* from two different countries."  Am. Compl. ¶ 151 (quoting WCI's 2018 Annual Report at 1) (emphasis added).[21]  Thus, the United States has properly and plausibly alleged that the WCI Defendants are a link in the chain that causes its injury, and that relief against them would thereby redress that injury.[22]

## III.    The United States alleges plausible claims against the WCI Defendants.

This Court should also deny Movants' motion under Rule 12(b)(6).  Like the motion under Rule 12(b)(1), this motion depends entirely on the misplaced assumption that Movants are not state actors, and therefore not subject to relief this Court can provide pursuant to the Constitution.  As explained above, however, they clearly act on behalf of California and Quebec in the execution of "the WCI carbon market."  WCI's interlocking directorates, its shared history with the various regimes, including the integrated regime, and its own representations to the world foreclose any claim WCI wields no governmental

---

[21]The phrase "the WCI carbon market" appears in WCI's 2018 Annual Report at 1.

[22]In a pending motion, the United States asks this Court to declare the agreement unconstitutional.  *See* Motion for Summary Judgment at 14, 27.  The Court could easily reach this conclusion, which the United States submits is fully justified, without deciding precisely what remedy to award against any particular defendant, including the WCI Defendants. "Rule 42(b) of the Federal Rules of Civil Procedure confers broad discretion upon the district court to bifurcate a trial, thereby deferring costly and possibly unnecessary proceedings pending resolution of potentially dispositive preliminary issues." *Zivkovic v. So. Cal. Edison Co.*, 302 F.3d 1080 (9th Cir. 2002).  "Separate trials on liability and relief are . . . the most common application of rule 42(b)." *Robinson v. Sheriff of Cook Cnty.*, 167 F.3d 1155, 1157 (7th Cir. 1999) (Posner, J.).

1    power and is therefore unable to serve as a tool to violate the Constitution.  See *supra* Part

2    I-A (interlocking directorates); Part I-B (shared history and WCI's representations).

3        The Treaty and Compact Clauses of Article I are not such trivial components of the

4    Constitution as to be evaded by clever artifices.  As John Jay wrote in 1787, if foreign

5    powers found "each State doing right or wrong, as to its ruler may seem convenient[,] or

6    split into three or four independent and probably discordant republics or confederacies, . . .

7    what a poor, pitiful figure will America make in their eyes!"  THE FEDERALIST NO. 4, at 44

8    (Clinton Rossiter ed., Signet 2003) (internal parentheses omitted).  What a state may not do

9    in its own name it may not do through an ostensibly private entity.  *See Brentwood Academy*,

10   531 U.S. at 295; *see also Lebron*, 513 U.S. at 391.

11       Much the same can be said about the Foreign Affairs Doctrine and the Dormant

12   Foreign Commerce Clause. As with the Treaty and Compact Clauses of Article I, these

13   doctrines presuppose action by one or more states.  Because the United States has more than

14   plausibly alleged that WCI in fact is a surrogate for California (and Quebec), it has pleaded

15   an adequate and viable claim against the WCI Defendants.[23]

16   **IV.    Secretary Blumenfeld is a proper defendant.**

17       The Court should also deny Movants' request to dismiss Jared Blumenfeld.  He is

18   sued in his capacity as the California's Secretary for Environmental Protectiont.  As the

19   head of the California Environmental Protection Agency ("CalEPA"), Defendant

20   Blumenfled is the state's top official charged with "coordinat[ing] greenhouse gas emission

21   reductions and climate-change activities in state government."  CAL. GOV. CODE § 12812.6.

22   In leading CalEPA, Defendant Blumenfeld oversees and is responsible for the activities of

23   CARB.  *See id.* § 12800(b).  This includes authority over Defendant Nichols, the Chair of

24   CARB.  *Id.* ("The secretary shall hold the head of each department, office, or other unit

25

26   _____

27   [23]Although the United States has moved for summary judgment on only two of its causes of
     action at this time, Movants must overcome all of its theories for their motion to be granted.

28   Plaintiff United States of America's Opposition to WCI, Inc. Defendants and Defendant Blumenfeld's
     Motion to Dismiss                                                                    Page 17

1  responsible for management control over the administrative, fiscal, and program

2  performance of his or her department, office, or other unit."). In addition to the "power of

3  general supervision over [CalEPA and CARB]," Defendant Blumenfeld is "directly

4  responsible to the Governor for, the operations of each department, office, and unit within

5  the agency." *Id*. § 12850.

6  **CONCLUSION**

7  The individual movants are public officials, implementing state action, barely

8  disguised as private parties. They cannot escape their identification and interconnection

9  with California. They are required by law to serve on WCI's board. Their obligations to

10  WCI are simply extensions of their official duties. WCI is thus a surrogate for California

11  and Quebec, whose control renders WCI inseparable from their agreement to create "the

12  WCI carbon market." The United States clearly has standing to sue, and has alleged

13  plausible claims against, each moving party. The motion should be denied.

14

15  Dated: January 27, 2020.

16

17  Respectfully submitted,

18  /s/ Paul E. Salamanca
    JEFFREY BOSSERT CLARK
19  Assistant Attorney General
    JONATHAN D. BRIGHTBILL
20  Principal Deputy Assistant Attorney
    General
21  PAUL E. SALAMANCA
    R. JUSTIN SMITH
22  PETER J. MCVEIGH
    STEVEN W. BARNETT
23
    Attorneys
24  Environment & Natural Resources
    Division
25  U.S. Department of Justice

26

27

28